1              IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

3

4

11:40:23
     _____
5                                    )
UNITED STATES OF AMERICA,            )
6                                    )
                                     )
11:40:23  7          Plaintiff,      )
                                     )
8                                    )
          vs.                        ) Case No. 2:18-CR-365
9                                    )
11:40:23                             )
10   JACOB ORTELL KINGSTON, ISAIAH   )
     ELDEN KINGSTON and LEV ASLAN    )
11   DERMAN,                         )
                                     )
11:40:23  12          Defendants.    )
     _____)
13

14

11:40:23  15

16           BEFORE THE HONORABLE BROOKE WELLS

17              DATE:  AUGUST 29, 2018

18          REPORTER'S TRANSCRIPT OF PROCEEDINGS

19                  STATUS CONFERENCE

11:40:23  20

21

22

23

24

11:40:23  25          Reporter:  REBECCA JANKE, CSR, RMR
                                 (801) 521-7238

```
 1
 2                       A P P E A R A N C E S
 3
 4    FOR THE PLAINTIFF:   U.S. DEPARTMENT OF JUSTICE
 5                         TAX DIVISION
 6                         BY:  LESLIE A. GOEMAAT, ESQ.
 7                              ARTHUR J. EWENCZYK, ESQ.
 8                              RICHARD ROWLING, ESQ.
 9                         601 D STREET, NW, SEVENTH FLOOR
10                         WASHINGTON, D.C., 20530
11
12
13
14    FOR JACOB KINGSTON:  BUGDEN & ISAACSON
15                         BY:  TARA ISAACSON, ESQ.
16                         445 EAST 200 SOUTH, SUITE 150
17                         SALT LAKE CITY, UTAH 84111
18
19
20    FOR ISAIAH KINGSTON:  SCOTT C. WILLIAMS, LLC
21                          BY:  SCOTT C. WILLIAMS, ESQ.
22                          46 EAST 400 SOUTH
23                          SALT LAKE CITY, UTAH 84111
24
25
```

```
 1   AUGUST 29, 2018                    SALT LAKE CITY, UTAH

 2                      P R O C E E D I N G S

 3                              * * *

 4            THE COURT:  Counsel, ready?  All right.  Calling

 5   now the United States of America vs. Jacob Ortell

 6   Kingston, Isaiah Elden Kingston and Lev Aslan Derman.  The

 7   United States is represented by -- and, counsel, if you'll

 8   please state your appearances.

 9            MS. GOEMAAT:  Leslie Goemaat from the Department

10   of Justice on behalf of the United States, here with

11   Arthur Ewenczyk and Richard Rolwing also of the Department

12   of Justice.

13            THE COURT:  I note that Mr. Jacob Kingston is

14   here.

15            Mr. Williams, are you -- have you made an

16   appearance in this matter?

17            MR. WILLIAMS:  Yes, Your Honor.  I made an

18   appearance on Friday, and I'm here to inform Your Honor

19   that I am retained -- and my appearance will remain.

20            THE COURT:  All right.  And that issue is

21   resolved.  Mr. Isaiah Kingston is also present.

22            Ms. Isaacson, are you making --

23            MR. WILLIAMS:  Oh, I'm sorry.  I thought you had

24   called Isaiah Kingston when you referred to me, since

25   that's who I was related to and appeared on, on behalf of
```

on Friday.  If you said Jacob Kingston then I misheard you.

THE COURT:  I did.  So, with regard to Jacob Kingston, who is present?

11:42:18   MS. ISAACSON:  Your Honor, Tara Isaacson appearing on an interim basis for Mr. Kingston.  Previously Mr. Gregerson was temporarily appointed.  What we expect, Your Honor, the family is in the process of retaining private counsel.  We expect to be local counsel.

11:42:36   He's going to be retaining John Brownly and Matheson Beta, who are Washington, D.C. Lawyers.  We expect that the formal appearances by local counsel, Mr. Bugden and myself, as well as the counsel from DC, will be made by Friday.  And so, at that time, once we enter our formal

11:42:53   appearance, I'm sure Mr. Gregerson will want to formally withdraw from the case.

But our request today, Judge, I have spoken with opposing counsel and with the attorneys in D.C., and our request with respect to Jacob Kingston would be to

11:43:08   continue the detention hearing today until next Wednesday, which is the 5th, where all the retained counsel can be present, the lawyers from D.C. can be present and we can address the issue of detention with respect to Mr. Jacob Kingston.

11:43:25   THE COURT:  All right.  And so now, as to Isaiah

Kingston, you're making that appearance, Mr. Williams?

MR. WILLIAMS:  Yes, Your Honor.

THE COURT:  All right.  And so, Mr. Gregerson, I appreciate your participation thus far, but I think, under the circumstances, you will not have any further responsibility.  Please submit your request for payment under the CJA for these two appearances.

MR. GREGERSON:  Thank you, Your Honor.

THE COURT:  All right.  So the question of representation seems to be resolved, and, Ms. Isaacson, your appointment -- are you entering an appearance now as local counsel?

MS. ISAACSON:  Not formally yet, Judge.  We think we will have that resolved by Friday.

THE COURT:  You will need to have it resolved by Friday.

MS. ISAACSON:  We will, Judge.

THE COURT:  He is either to submit his financial affidavit or to have counsel retained no later than Friday at noon.

MS. ISAACSON:  Understood.

THE COURT:  All right?  And an appearance needs to be entered.  All right.  So that resolves that issue.  This is the time that was also scheduled for consideration of a detention hearing.  You've asked for a continuance of

that.  I see today just a few minutes earlier, a document
entitled Memorandum in Opposition to Detention Hearing and
Request for Immediate Relief that was filed by
Mr. Williams.

11:45:21  Mr. Williams, I note on the front of this, and
I'll let you argue, which I'm sure you will, that this
does not deserve a detention hearing.  However, that
statute does allow me to, sui sponte, make a
determination, should I determine that there is either a
11:45:42  risk of danger or a risk of non-appearance.  Go ahead and
argue, but I think that's a losing one.

MS. ISAACSON:  Your Honor, would you mind
addressing the issue of Jacob Kingston and maybe we can
set a date on -- for the further detention hearing and we
11:46:01  could end that portion of the hearing and let Mr. Williams
address Isaiah.

THE COURT:  That's fine.  All right.

MS. ISAACSON:  Does the Court have time?

THE COURT:  But I anticipate them -- the hearing
11:46:15  being the same for both, all right?

MR. WILLIAMS:  We will be objecting to that.

THE COURT:  I know.  So that's why I'm saying,
Ms. Isaacson, let's wait a minute and let me hear from
Mr. Williams.

11:46:31  MS. ISAACSON:  Understood.

|          |    |                                                              |
|----------|----|--------------------------------------------------------------|
|          | 1  | MR. WILLIAMS:  I guess I'm not unused to |
|          | 2  | having -- being told before argument that I'm going to |
|          | 3  | lose, but I believe that the motion that we filed today is |
|          | 4  | brought with merit.  And I think that, at least in this |
| 11:46:51 | 5  | district, especially, and especially based on recent |
|          | 6  | holdings by other Courts, including Judge Nuffer and |
|          | 7  | Magistrate Judge Furse's recent memorandum decision, which |
|          | 8  | I have attached to the pleading today, that, at least in |
|          | 9  | this district, the position is that a preliminary |
| 11:47:13 | 10 | threshold finding is required under the relevant statutory |
|          | 11 | law in order to determine whether immediate release is |
|          | 12 | appropriate or a detention hearing is warranted. |
|          | 13 | And I submit to Your Honor that that threshold |
|          | 14 | finding -- if the detention hearing is going to be set |
| 11:47:33 | 15 | based on a sui sponte order of this Court, as you |
|          | 16 | referenced, rather than the present motion by the |
|          | 17 | government, I don't think that changes the standard from |
|          | 18 | the very well-written and reasoned, it seems to me, |
|          | 19 | opinion of Judge Furse one month ago. |
| 11:47:53 | 20 | The position is, according to law applying the |
|          | 21 | relevant statutory provisions that we're dealing with, |
|          | 22 | that there's a threshold determination that ought to be |
|          | 23 | met because of all of the presumptions of release that |
|          | 24 | apply.  The considerations are justice, that this case, by |
| 11:48:12 | 25 | charge, by nature and by factual basis doesn't qualify for |

1    detention in any of the basic iterated portions of the

2    detention statute.  It doesn't.

3         We can tick down through those, which is

4    preliminary because I'm not going about a threshold

11:48:34    5    hearing, and I will say that even Judge Furse acknowledges

6    it's not clear what the quantum of evidence that's

7    necessary to make the threshold finding is, but it ought

8    to be undertaken, and in that -- in her ruling, she did.

9    Of course she found a threshold.  That was a rather

11:48:52    10    remarkable case where she ultimately released the

11    defendant, who was a convicted bank robber on new robbery

12    charges and hadn't appeared at his last Court hearing.

13         But I don't see any distinction.  If a threshold

14    finding is required, I don't see any distinction between

11:49:11    15    the requirement that this Court articulate the basis for

16    it.  I don't see any distinction between a sui sponte

17    ruling that a detention hearing ought to be had or the

18    government's motion -- based on the government's motion.

19    So we believe that Your Honor ought to have to articulate

11:49:33    20    findings of facts, and we would like to be able to respond

21    to those.

22         By the way, I think that the starting position as

23    well, and a critical one in this particular case for

24    Isaiah Kingston, is that -- and I have referenced relevant

11:49:51    25    law.  And frankly, in that law, it indicates that it would

1   even be a violation of Rule 46 not to consider each

2   defendant entirely separately on the merits of detention

3   considerations.

4            The government's -- I don't know what this Court

11:50:06   5   would find -- make a threshold finding on.  I can only

6   presume it would be something in the government's motion.

7            THE COURT:  Well, and I have reviewed the

8   government's motion.

9            MR. WILLIAMS:  And our position is, anything that

11:50:19   10   is proffered in that, that would support a detention

11   argument, is wrong or false and that the document is --

12   clearly argues that Isaiah Kingston ought to be detained

13   in relation to a whole variety of acts of other people,

14   including his two co-defendants.  It is remarkable in the

11:50:49   15   nature of the proffer.  There is one sentence in the

16   government's memo that is astonishing to me in terms of

17   the proposition that the government would think any Court

18   of Law would give it weight.

19            And that is a reference -- and this is

11:51:12   20   characteristic of the entire proffer of the government,

21   especially as it applies to Isaiah Kingston:  Another

22   witness told investigators that an employee of WRE heard

23   from Jacob Kingston's brother-in-law -- three hearsay

24   levels -- that -- and then it doesn't have quotes or

11:51:30   25   anything else -- that Jacob Kingston and Isaiah Kingston

1    had just returned from a two-week trip to Turkey where

2    they purchased a home and that Jacob Kingston and Isaiah

3    Kingston intended to flee to Turkey.

4            I mean, that triple hearsay proffer out of

11:51:47    5    context, with no date associated with it or anything, I

6    mean, if a party to a lawsuit really has the audacity to

7    suggest that a Court could consider that, I submit to Your

8    Honor, you should hold that you're not.  I mean, that's

9    outrageous.  Imagine a proffer being made about your or my

11:52:07   10    conduct on that sort of basis.  I mean, it's outrageous.

11    And that is the tenor and nature -- and I can go

12    line-by-line through the government's memorandum and

13    proffer in that regard.

14            And proffers are just that.  They are acceptable,

11:52:24   15    but they are acceptable to be given whatever weight they

16    merit.  And a proffer of a triple hearsay statement out of

17    context, without a date, in relation to a case where the

18    criminal conduct alleged is over two years prior, and the

19    two years since the raid of relevant entities, which there

11:52:43   20    were five in 2016, by the way, five entities raided.

21    Mr. Isaiah Kingston's house was not one of them.  And the

22    fact that the last two years of Mr. Isaiah Kingston's

23    life, vis-a-vis the raid and the Grand Jury investigation

24    that followed it, has been to comply with and help to

11:53:07   25    fulfill the Grand Jury discovery requirements and order

1       for the Grand Jury.  That's been his life two years.

2           The omission of things like that in this document

3       as they apply to Isaiah Kingston is very concerning in

4       terms of candor to the Court.  So I think that -- and that

11:53:22    5   applies to the raid itself, where the government talks

6       about a raid two years ago that didn't warrant,

7       apparently, any charges against Mr. Kingston in the last

8       two years, and fails to tell the government and the

9       public, since it's not a sealed document and it's received

11:53:41    10  lots of attention in recent press articles of course, that

11      the raid was successful in obtaining apparently over two

12      terabytes of documents and information that the Grand Jury

13      process has been engaged with and Mr. Isaiah Kingston has

14      been cooperating through a lawyer in responding to.

11:54:02    15          I can go on and on about every single proffer, so

16      in this particular instance -- and let's keep in mind, by

17      the way, he is charged with two counts, 13 and 15, money

18      laundering, from 2013.  That, in terms of weight of

19      evidence and nature of the case circumstances that Your

11:54:22    20  Honor will eventually deal with if we have a detention

21      hearing, it seems to me is relevant to the question about

22      whether we should.

23          I would like to let Your Honor know again,

24      relative to the question of whether we should have a

11:54:33    25  detention hearing, that there are a great deal of hardship

1    issues involved.  Mr. Isaiah Kingston suffers a cancer

2    diagnosis, and he suffers from severe ulcerative colitis.

3    Incarceration is especially impactful to him, and, as of

4    today, we learned that our efforts to get his medication

11:54:53    5    that he has been referred to taking by a doctor, with a

6    letter from that doctor that we had provided to the

7    marshal and the jail that he is in right now, have

8    responded to us today that they will not.  Of course they

9    maintain that they will assess him with their own medical

11:55:13    10    considerations.

11         But further, his wife is pregnant and due any

12    time.  Her official due date is in about three weeks, I

13    think.  She's historically early, and the signs are that

14    she would be early.  It would be an incredible hardship to

11:55:31    15    have something like the birth of a child occur under these

16    circumstances and the nature of this proffer to detain

17    Mr. Isaiah Kingston without consideration of specific

18    threshold factors.

19         Now, I didn't know whether the Court, on the

11:55:45    20    question of threshold, would be open to a complete counter

21    proffer to every single thing in this memorandum as it

22    applies to Isaiah Thompson.  For instance, he does not

23    have any access to a private jet and has been on one once

24    that had nothing to do with this case.  That omission

11:56:11    25    seems to me to be material and important.

1          THE COURT:  You seem to be arguing your detention

2     argument now.

3          MR. WILLIAMS:  Given that the -- according to the

4     well-reasoned opinion of Magistrate Furse on this very

11:56:25   5     subject last month, it suggests that it's not clear what

6     the quantum is and what the appropriate factors would be,

7     and I think there are appropriate factors.

8          THE COURT:  With all due respect to Magistrate

9     Furse, I'm not bound by her findings.

11:56:40   10          MR. WILLIAMS:  You are not, but it's a local

11     district memorandum that cites to law that is binding, or

12     at least is strongly -- something this Court should

13     strongly consider from other circuits.

14          THE COURT:  I'm happy to consider it, but I do

11:56:56   15     have -- and I want to hear from the government -- but I

16     can call for this in a sui sponte manner based upon the

17     information I have, so I will do so.

18          MR. WILLIAMS:  I understand.  I would like to ask

19     the Court -- it's our request that the Court articulate

11:57:16   20     the factual bases that the Court believes meets the

21     threshold requirement to set this for a detention hearing

22     and then allow a counter proffer by the defense in

23     relation to whatever specific, as you say, things before

24     you Your Honor would be utilizing because I think that we

11:57:33   25     are entitled to that in terms of -- frankly in terms of

|        |    |                                                                      |
|--------|----|----------------------------------------------------------------------|
|        |  1 | notice.  We don't know what Your Honor thinks about or              |
|        |  2 | has -- I mean, all we know that you have before you is a            |
|        |  3 | pretrial report.                                                     |
|        |  4 |         THE COURT:  That's what I have.                              |
| 11:57:47 | 5 |         MR. WILLIAMS:  And the memorandum.                           |
|        |  6 |         THE COURT:  And the memorandum.                              |
|        |  7 |         MR. WILLIAMS:  And the whole world has seen the             |
|        |  8 | memorandum and its contents.  And our position is and our          |
|        |  9 | general counter proffer is, it's false as it applies to            |
| 11:58:00 | 10 | Isaiah Kingston, misleading and terribly concerning in            |
|        | 11 | terms of its material omissions on the subjects that it           |
|        | 12 | brings up.  And therefore we believe, under these                 |
|        | 13 | particular circumstances, Mr. Isaiah Kingston has a right         |
|        | 14 | to know what it is that this Court would in fact rely upon        |
| 11:58:19 | 15 | to make the threshold finding and then be allowed an             |
|        | 16 | opportunity at least here on our feet, since we don't know        |
|        | 17 | yet, to offer counter proffers to that information.              |
|        | 18 |         THE COURT:  Thank you.                                      |
|        | 19 |         MS. GOEMAAT:  Good afternoon, Your Honor.  Based          |
| 11:58:42 | 20 | upon the statute, upon motion of the attorney of the             |
|        | 21 | government or the judicial officer's own motion in a case        |
|        | 22 | involving a serious risk that such person will flee or a         |
|        | 23 | serious risk that such person will obstruct or attempt to        |
|        | 24 | obstruct justice, threaten, injure, intimidate or attempt        |
| 11:58:57 | 25 | to do the same to a prospective witness or juror, a              |

hearing shall be held.

The United States submits that through its proffer and submitted evidence in the motion for detention, the government has met the threshold burden to show that Mr. Isaiah Kingston poses both a serious risk that he will flee, as well as a serious risk that he will obstruct or attempt to obstruct justice for the following reasons:

First.  Mr. Isaiah Kingston is a 50 percent owner and the chief financial owner of Washakie Renewable Energy.  As demonstrated in Exhibit B to the United States' motion, from 2013 through 2015, Washakie Renewable Energy wired in excess of at least $134,000,000 to various bank accounts in the country of Turkey.

As demonstrated by Exhibit C to the United States' motion for detention, it appears that Washakie Renewable Energy in concert with co-defendant Levon Termendzhyan's company Noil Energy and a third company SBK Holding, LLC, also involved in a charged money laundering count, have invested upwards of $450,000,000 in Turkey, according to the press release, with an intention to invest an additional $950,000,000.

Now, the timing of this press release and the timing of the additional $500,000,000 anticipated to be invested in Turkey coincide with the last two false and

fradulent Forms 8849 filed by the defendants' two
companies, Washakie Renewable Energy and United Fuel
Supply, which requested in excess of $600,000,000 in
refundable tax credits for tax year 2015.  Those tax
12:00:58   refunds were not paid.  That's detailed in Government's
Exhibit A..

So, first and foremost, the United States submits
that defendant Isaiah Kingston has an absolute 50 percent
equal right to the $134,000,000 that has been wired to the
12:01:16   country of Turkey.  As Your Honor is likely aware, as it
has been announced in the press in its calendar year,
President Erdogan has announced he will not be extraditing
U.S. persons from Turkey until the United States
extradites the Pennsylvania cleric Fethulla Gulen.

12:01:39   Secondly, the United States has interviewed a
witness who has stated, as Mr. Williams rightly noted,
that he heard from an employee of Washakie, through Jacob
Kingston's brother-in-law, that both Isaiah Kingston and
Jacob Kingston purchased a residence in Turkey and
12:01:53   intended to flee there should they face prosecution.

Now, we submit that all defendants in this case
have access to means to flee to Turkey, as money has been
invested in SPK Holdings AS, which is the Turkey SPK
Holdings.  Washakie Money, a company equally owned by
12:02:16   defendants Jacob Kingston and Isaiah Kingston were

1  invested in SPK Holdings AS, which then purchased a

2  private airline called Borajet.  Mr. Kingston's

3  co-defendant, Levon Termendzhyan, used a Borajet airplane

4  to flee California in August of 2017, when unrelated state

12:02:39  5  search warrants were being executed.

6         We submit that that is sufficient evidence to

7  show that these three defendants, through their companies

8  through which they have entered commingled funds, have

9  access to an airline which they could use to flee the

12:02:57  10  country.

11         Mr. Isaiah Kingston also has significant motive

12  to flee the country.  Here he is charged in two counts of

13  money laundering, and I need to correct this statement

14  from the initial appearance.  The statutory maximum for

12:03:11  15  Counts X through XIV, concealment money laundering, is 20

16  years.  Therefore, on this first Indictment, Mr. Isaiah

17  Kingston faces a maximum sentence of 30 years.  Mr. Jacob

18  Kingston faces a maximum sentence of 137 years.  The

19  guidelines calculate the relevant conduct, and the

12:03:32  20  guidelines range for money laundering, based upon the

21  specified unlawful activity that is the source of the

22  funds if the defendant could be found guilty.  In this

23  case, all three defendants are charged or are alleged to

24  have participated with each other and others in a mail

12:03:52  25  fraud scheme that netted $511,000,000 from the United

States Treasury in fraudulently obtained refunds.

The United States would proffer that the intended loss from this mail fraud scheme was in excess of $1.1 billion.  Therefore we submit that, should he be convicted on these charges alone, Mr. Isaiah Kingston will face a guidelines range of life in prison, although the statutory max on these charges are 30 years.

We'll also submit to Your Honor that the United States intends to present to the Grand Jury additional charges for their consideration regarding both Mr. Jacob and Isaiah Kingston.  Therefore we submit that we have met and exceeded the threshold requirement to show that this defendant, Mr. Isaiah Kingston, poses a serious risk of flight.

In addition, we submit we have shown that this defendant poses a serious risk of obstruction.  The United States submitted text messages to Your Honor, Exhibits C and D to the motion.  These text messages were retrieved from a cell phone that was seized from a third party.  The text messages show clearly that Mr. Jacob Kingston is attempting to bribe government officials and to pay enforcers to visit prospective witnesses.  As it pertains to Mr. Isaiah Kingston, the text messages make it clear that Mr. Jacob Kingston is sending Isaiah Kingston with the money to pay the bribes to the intermediary.

1      The investigation ultimately uncovered that the

2  intermediary kept this money, did not pay those bribes,

3  but the United States submits that, based on the face of

4  the text messages alone, it is clear that Mr. Jacob

12:05:53   5  Kingston believed he was successfully paying bribes and

6  paying enforcers.

7      Many witnesses in this case, enumerable witnesses

8  have expressed fear of reprisal for cooperating with the

9  United States.  Just this morning the United States

12:06:09  10  received a message from an attorney who represents a CI in

11  this case, stating his client had received numerous death

12  threats and he was moving his client into a safe house.

13  There are very real safety concerns for witnesses in this

14  case, and the intent and action taken to pay bribes both

12:06:33  15  to enforcers who would hurt and intimidate witnesses and

16  law enforcement officials is clear on the face of Exhibit

17  C and D submitted by the United States attached to the

18  motion.

19      This is particularly concerning because, as the

12:06:46  20  United States' motion states, the nine executed search

21  warrants on February, 10, 2016 were leaked in some regard.

22  In some way, the persons associated with these various

23  locations learned of the impending search warrants.

24  Records were destroyed.  In responds to Mr. Williams'

12:07:07  25  assertion that Mr. Isaiah Kingston has been attempting to

1    comply with the subpoena in this matter, that is a subject

2    of sealed litigation, and it's probably not appropriate

3    for an open courtroom, but we'd be happy to address that

4    matter if we seal the courtroom.

12:07:25    5    Your Honor, the United States submits that we

6    have far exceeded the threshold requirement to show that

7    Mr. Isaiah Kingston poses a very serious risk of flight

8    based on his access to $134,000,000 in Turkey, his access

9    to a private airline and his incentive and motive to flee

12:07:44    10    based on the potential guideline sentence in this case.

11    We also submit we have shown there is a serious risk he

12    will obstruct or attempt to obstruct justice based on the

13    demonstrated attempts to pay enforcers to harm or

14    intimidate prospective witnesses as well as the message

12:08:03    15    received this morning by an attorney who has moved a

16    witness to a safe house as well as the numerous

17    expressions of concern from witnesses in this case.

18    We would ask Your Honor to hold a detention

19    hearing, and we will at that time argue for the detention

12:08:13    20    of Mr. Isaiah Kingston.

21    THE COURT:  Mr. Williams?

22    MR. WILLIAMS:  Judge, as to the sort of where we

23    ended there, we heard a lot of allegations about money

24    going to Turkey.  There is no -- not even a proffer of

12:08:28    25    what basis the government has to believe that Isaiah

| | | |
|---|---|---|
| | 1 | Kingston would have access to any of it. |
| | 2 | THE COURT:  She stated that he's a 50 percent |
| | 3 | owner. |
| | 4 | MR. WILLIAMS:  It might be worthwhile to know |
| 12:08:41 | 5 | that a Court in New York recently found that |
| | 6 | representations that Washakie has holdings in Turkey were |
| | 7 | false, that they don't have any holdings in Turkey.  But a |
| | 8 | 50 percent owner on paper of a company is not, I would |
| | 9 | submit, any evidence that that person has access to what |
| 12:08:58 | 10 | someone else in that company might have done in the way of |
| | 11 | putting money in Turkey.  How is that a connection?  The |
| | 12 | 50 percent ownership right now in Washakie is worth |
| | 13 | nothing.  Washakie was without the ability to conduct |
| | 14 | business after the 2016 raids.  It's insolvent. |
| 12:09:19 | 15 | In the United States of America, Mr. Isaiah |
| | 16 | Kingston has access to no Washakie money.  He works on a |
| | 17 | salary basis for USF.  He was raided two years ago with |
| | 18 | all of these things in the air and has done nothing to |
| | 19 | show any intent to flee.  Whether or not his brother |
| 12:09:37 | 20 | referenced him in some text chain is unfortunate but |
| | 21 | doesn't prove that he did anything, let alone knowingly. |
| | 22 | And there's just no proof that I have heard from |
| | 23 | the government of access to any money by Isaiah Kingston. |
| | 24 | THE COURT:  Well, it's for them to prove, to |
| 12:09:55 | 25 | show.  But they are making proffers, just as you are |

making proffers, and if I'm going to accept your version

of things, I likewise can consider theirs.

        MR. WILLIAMS:  Except they have the burden.  Mine

is to counter.

12:10:17        THE COURT:  I understand.  I understand that.

        MR. WILLIAMS:  And I'm saying the burden is not

met by just saying sometime, years ago -- now I guess at

least two, as is shown by the exhibit in the charging

document in this case -- the last acts related to criminal

12:10:33  activity brought in this Indictment were in 2016, the same

month of the raid.  I submit, while we're on the subject,

that the proffer about obstruction and any kind of witness

tampering issues or anything like that, they have had two

years to charge any activity or to seek -- I mean, if they

12:10:55  are really, really, after being put on notice two years

ago of legitimate issues that the government thinks apply

to threats to human beings, they are standing here telling

this Court they have done nothing about it until now, when

they want to take a threat away in a case that has to do

12:11:15  with a 2013 money laundering charge?  I am a concerned

citizen.

        So, I mean, the counter proffer is the government

has just asserted that 50/50 ownership in Washakie

presently means anything.  And that'sjust a bare

12:11:28  assertion, and it's common sense that that could still

|       |    |
|-------|----|
|       | 1  | mean nothing in terms of the organization of who has
|       | 2  | rights to what in money, or what has to do with, you know,
|       | 3  | who can do anything to get money from a foreign country.
|       | 4  |          THE COURT:  It's a factor for consideration.
| 12:11:48 | 5  |          MR. WILLIAMS:  I don't -- I agree that it's a
|       | 6  | relevant factor.  My position here is not that these are
|       | 7  | not relevant factors but that their proffers that are
|       | 8  | based in such weak -- a proffer is a proffer of evidence,
|       | 9  | right?  And the Court's rule is to accept the evidence
| 12:12:03 | 10 | that's proffered and the weight that should be given it.
|       | 11 | These proffers are triple hearsay claims.  We still don't
|       | 12 | know a date when this statement was supposedly made.  What
|       | 13 | if it was made seven years ago?
|       | 14 |          THE COURT:  Mr. Williams, I will do that, but
| 12:12:20 | 15 | it's my ruling that they have met the threshold and that
|       | 16 | I, based upon that proffer, have the statutory right to
|       | 17 | hold a hearing if I think there is sufficient proffer to
|       | 18 | believe that either or both of them constitute risk of
|       | 19 | danger or risk of non-appearance.  And so, I'm going to
| 12:12:47 | 20 | deny your request.  We're going to set the matters for
|       | 21 | detention hearings, and we can set them for whatever
|       | 22 | length of time that you think appropriate, within the
|       | 23 | Court's schedule.  All right?  And you can have them
|       | 24 | separately or you can have them together.  But it makes
| 12:13:08 | 25 | much more sense to me to have them held together because

1   we're not duplicating information and evidence that may

2   apply to both.

3          MR. WILLIAMS:  And in response to that, Your

4   Honor, I accept that Your Honor has made the ruling that,

12:13:26   5   based on the government's proffer, a threshold finding can

6   be made that warrants a detention hearing on either sui

7   sponte order of this Court and/or the government's motion

8   for detention; is that correct?

9          THE COURT:  Correct.

12:13:49   10          MR. WILLIAMS:  We feel, under the circumstances

11   as I've articulated them as best I can today -- we haven't

12   filed a full memorandum in relation to the detention

13   issues because we are new to the case and that's a large

14   job in this case.

12:14:06   15          THE COURT:  I know that.

16          MR. WILLIAMS:  But we do believe the

17   constitutional principles and rules iterated in the law

18   that I have supplied in the brief memorandum today having

19   to do to with the need to take specific and individualized

12:14:20   20   consideration of independent defendants on an independent

21   basis, feel that we should have a hearing that is a

22   hearing only for Isaiah Kingston.  As I have already said,

23   we believe the government's argument is much more of an

24   argument that he's his brother and a half owner, so we

12:14:42   25   should attribute everything that Jacob Kingston did.

1        I'm not saying Your Honor can't reasonably ferret

2   that out, but I just do think in this particular case,

3   based upon the government's pleading, it is an actual

4   tactic and strategy and it's best guarded against by

12:14:59   5   having a specific and individualized.

6        And I don't think they overlap.  I mean, how does

7   it overlap necessarily with Mr. Isaiah Kingston if the

8   government can prove that Jacob Kingston did something?  I

9   mean, they need to have the connection, and they don't

12:15:16   10   even proffer a connection here.  They just use the

11   conjunction "and" conveniently, control enter.

12        THE COURT:  Thank you.

13        Do you have any response to that?

14        MS. GOEMAAT:  Your Honor, the United States is

12:15:28   15   prepared to make a proffer and address arguments

16   individually as to Jacob Kingston and Isaiah Kingston,

17   whether it is at a hearing held consecutively or on

18   different days.  We would suggest that having both

19   hearings on the same day would be more efficient, as there

12:15:44   20   is some amount of evidence that goes to both defendant

21   Jacob Kingston and Isaiah Kingston's risk of flight;

22   namely, that their jointly owned company has invested a

23   huge amount of the fraudulent proceeds that they are

24   alleged to have obtained together in a scheme in Turkey.

12:16:00   25        However, should we have the hearing on the same

```
 1    day, we are prepared to address each defendant

 2    individually.

 3              THE COURT:  Do we have a full day coming?  Can we

 4    move things around?

 5              MS. ISAACSON:  Your Honor, if you might consider

 6    next Wednesday the 5th, I think that was a date that the

 7    government could make happen.  It sounds like -- are

 8    we setting them on the same day, then?  I don't know.

 9              THE COURT:  Yes.

10              MR. WILLIAMS:  The Court understands my request,

11    right?

12              THE COURT:  I do.

13              MS. ISAACSON:  So all the parties from the

14    defense?

15              THE COURT:  We will set them next Wednesday.

16              Ms. Peart, what times?

17              MS. GOEMAAT:  Your Honor, we would ask you to

18    consider, based upon the government counsels'

19    availability, we had conferenced with Ms. Isaacson, and I

20    thought we had agreed upon the 10th as a potential day for

21    the detention hearing.  We would request --

22              THE COURT:  I will not be in town.

23              MS. ISAACSON:  So the options for us -- we have a

24    full day -- the defense team would have a full day on the

25    5th, on Tuesday the 11th --
```

12:16:32 (line 5)
12:16:46 (line 10)
12:16:53 (line 15)
12:17:08 (line 20)
12:17:22 (line 25)

1          THE COURT:  I'm out of town that entire week.

2          MS. ISAACSON:  If we could make it happen on the

3  5th, that would be our request.

4          THE COURT:  All right.

12:17:35  5          MR. WILLIAMS:  Your Honor, it's our request that

6  the detention hearing for Isaiah Kingston be scheduled for

7  this Friday, the day after tomorrow.  I also believe that

8  the reading of the statute requires that that occur.  He

9  has had continuity of counsel since his initial appearance

12:17:53  10  on last Friday.  The statute contemplates having a

11  detention hearing on the date of the initial appearance.

12  The exceptions for that are a motion to continue by the

13  government, and that motion, if it's granted, can be

14  granted for only three days.  A motion to continue by the

12:18:11  15  defendant, if granted, can be granted only for five days.

16  The fifth day, by our calculation, is this coming Friday,

17  and we're asking for the hearing then.

18          THE COURT:  I don't know that we can accommodate

19  that.  Okay.  We can.  2:00 o'clock on Friday for

12:18:34  20  Mr. Isaiah Kingston.

21          MS. GOEMAAT:  Your Honor, two points.  First, it

22  appears in the statute that the five- and three-day

23  limitations are except for a good cause.  We would submit

24  that it is good cause shown that a significant amount of

12:18:46  25  the evidence to be proffered will be duplicative and,

28

```
 1   secondly, to allow government counsel to return to D.C. on

 2   Friday.  We would request that the hearing, if it is going

 3   to be held on Friday, it be held in the morning.

 4        THE COURT:  Counsel, I'm on the criminal rotation

 5   this month, and we have been very full, so we've got to

 6   accommodate my calendar as well.  We can do it Friday at

 7   2:00.  All right?

 8        MS. GOEMAAT:  Yes, Your Honor.

 9        THE COURT:  Thank you.

10        Anything further?  And, Mr. Kingston and

11   Mr. Kingston, in the interim, you will both be held in

12   custody.  Ms. Isaacson, we set yours for next Wednesday.

13        MS. ISAACSON:  What time would you like us here,

14   Judge?

15        THE CLERK:  10:30.

16        THE COURT:  Now, I've got some information

17   that -- about medications and about specialized diet.

18        MR. WILLIAMS:  Your Honor, as to Isaiah Kingston,

19   and I'm assuming that's what you're speaking to.

20        THE COURT:  Yes.

21        MR. WILLIAMS:  I don't know if there is anything

22   applicable to Mr. Jacob Kingston.  We had submitted a

23   proof from American Wellness, and we have Clinic E Medical

24   Practice that serves the needs of Isaiah Kingston, and

25   specifically this document was with regard to his health
```

12:19:04  (line 5)
12:19:17  (line 10)
12:19:38  (line 15)
12:19:58  (line 20)
12:20:19  (line 25)

1    issues with crohn's and colitis, and he is on a strict

2    functional medical plan of care, including a number of

3    specified holistic medicines.  Those -- do you have that

4    before you?

12:20:47    5         THE COURT:  I do.

6              MR. WILLIAMS:  Okay, great, because we sent it to

7    the marshall's office.  We sent it to the jail.  He is

8    currently housed in Weber County jail.  I have no idea

9    whether the issues we're about to talk about would be

12:21:05   10    different in any jail.  I think, as you know, we're

11    constantly trying to maneuver the two different

12    proclivities in this area, you know.  At any rate, these

13    are serious issues that he has.  I also provided documents

14    from the University of Utah.

12:21:20   15         THE COURT:  They are from 2009.

16              MR. WILLIAMS:  They are, but that makes them more

17    relevant because Mr. Kingston has not been able to

18    maintain a treatment regimen with regard to the cancer

19    that was diagnosed then, and it is therefore something he

12:21:37   20    suffers from.  And I don't think it's necessary unless

21    Your Honor wants me to to get into the specifics of why he

22    has been unable to maintain a regimen that might be

23    recommended by the University of Utah with regard to that.

24    But they document that he has that diagnosis, and that's

12:21:56   25    why I bring it up.

1       THE COURT:  All right.

2       MR. WILLIAMS:  It didn't go away, we proffer to

3   Your Honor.  He suffers from the cancer diagnosis as well.

4   I want to update the Court that our efforts regarding the

12:22:09   5   strict functional medical plan of care and the various

6   medications that are referenced by Carol Stole in the

7   document that we are referring to, with regard to those,

8   we received a message today from the Weber County jail and

9   the marshall's office, that they will not be able to or

12:22:36   10   willing to accommodate those medications being

11   administered to Isaiah Kingston.

12       Also, I don't know, as I stand here, what the

13   difference between a soft diet and hard diet is, but I

14   think I know enough about the difference that it would

12:22:59   15   matter to the concerns of Isaiah Kingston.  His crohn's

16   and severe ulcerative colitis condition would be impacted

17   by foods that contain certain sugars and certain

18   carbohydrates and other things, and I don't have any

19   confidence that the difference between those two plans

12:23:23   20   that they maintain are available in terms of diet

21   vis-a-vis what he will suffer.

22       He has been presently suffering an increase in

23   his condition -- or decrease in his condition.  He is

24   suffering from the colitis and his ability to get

12:23:42   25   sufficient nutrition.  He has already lost significant

```
 1   weight since his incarceration on Friday and so I don't
 2   know whether Your Honor is amenable to us in a separate
 3   proceeding and in a separate subject beginning to address
 4   whether this Court is willing to hear arguments about --
 5   and this I think would be ex parte, but address these
 6   issues through potential orders to the jail, but that's
 7   what we're going to ask.
 8            THE COURT:  I'll take that under advisement and
 9   let you know.
10            MR. WILLIAMS:  Is it -- may I approach this Court
11   ex parte on that subject?
12            THE COURT:  You may.
13            MR. WILLIAMS:  Additionally, I do want to make
14   the record -- I think I have in the other context, but now
15   in the context of his continued detention, that his wife,
16   who is pregnant, is due to give birth to their child at
17   any time, really.
18            THE COURT:  Thank you.  Anything further?
19            MS. GOEMAAT:  Nothing from the United States,
20   Your Honor.
21            THE COURT:  All right.
22            Ms. Isaacson?
23            MS. ISAACSON:  No, Your Honor, thank you.
24            THE COURT:  Then we'll be in recess.  Thank you.
25            (Whereupon the proceedings were concluded.)
```

12:24:01 (line 5)
12:24:16 (line 10)
12:24:31 (line 15)
12:24:46 (line 20)

1

2                          REPORTER'S CERTIFICATE

3   STATE OF UTAH                )

4                                ) ss.

5   COUNTY OF SALT LAKE          )

6

7            I, REBECCA JANKE, do hereby certify that I am a

8   Certified Court Reporter for the State of Utah;

9            That as such Reporter I attended the hearing of

10  the foregoing matter on August 29, 2018, and thereat

11  reported in Stenotype all of the testimony and proceedings

12  had, and caused said notes to be transcribed into

13  typewriting, and the foregoing pages numbered 1 through 32

14  constitute a full, true and correct record of the

15  proceedings transcribed.

16           That I am not of kin to any of the parties and

17  have no interest in the outcome of the matter;

18           And hereby set my hand and seal this 7th day of

19  September, 2018.

20

21

22

23

24           _____

25           REBECCA JANKE, CSR, RPR, RMR