IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>vs.<br><br><br><br>JACOB KINGSTON, ISAIAH KINGSTON, and LEV DERMEN,<br><br><br><br>　　　　Defendant. | **ORDER DENYING REQUEST FOR RECONSIDERATION OF DETENTION AND MOTION FOR PRETRIAL RELEASE ON CONDITIONS**<br><br><br>Case No. 2:18-cr-00365-JNP-BCW<br><br>Judge Jill N. Parrish<br><br>Magistrate Brooke C. Wells |

　　　　This matter was referred to the undersigned by Judge Jill N. Parrish pursuant to 28 U.S.C 636(b)(1)(A).[1] On January 31, 2019, the court heard argument on *Defendant Isaiah Kingston's Request for Reconsideration of Detention*[2] and Defendant Jacob Kingston's *Motion for Pretrial Release on Conditions*.[3] The court took the matters under advisement.[4] After reviewing the parties' memoranda, and hearing argument the court DENIES both motions.

## BACKGROUND

　　　　The original Indictment was filed in this matter on August 1, 2018.[5] After Isaiah (Isaiah) and Jacob (Jacob) Kingston were arrested, the government filed a *Motion for Detention for*

---

[1] ECF No. 59.
[2] ECF No. 117.
[3] ECF No. 122.
[4] *See* ECF No. 174.
[5] ECF No. 1.

*Jacob Ortell Kingston and Isaiah Elden Kingston*.[6]  Isaiah opposed that motion on August 29, 2018.[7]  The court then held a detention hearing for Isaiah on August 31, 2018, and determined the government had met its burden to detain him.[8]  Isaiah then requested a de novo review of the undersigned's detention order.[9]  Accordingly, District Judge Jill N. Parrish held a hearing on the matter on September 12, 2018.[10]  After hearing evidence and reviewing the parties' briefs, Judge Parrish denied the motion for review of detention finding that pursuant to the four factors enumerated in *U.S. v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003), there "are no conditions of release that will reasonably assure Mr. Kingston's appearance."[11]  At this juncture, Isaiah has filed a *Request for Reconsideration of Detention* raising due process arguments not raised in his prior motion for reconsideration.[12]

After Jacob was arrested, the undersigned entered a temporary detention order as to Jacob, and set a detention hearing for August 29, 2018.[13]  Because Jacob had not yet retained counsel, the detention hearing set for August 29, 2018, was rescheduled to September 5, 2018.[14]  On August 31, 2018, Jacob again requested a continuance to September 17, 2018.[15]  On September 17, 2018, the undersigned was informed Jacob had not yet retained counsel, and that his counsel would move for a detention hearing once he was retained.[16]  Jacob filed his first request for a detention hearing on January 4, 2019, by filing a Motion for Pretrial Release on

---

[6] ECF No. 9.
[7] ECF No. 19.
[8] ECF No. 37.
[9] ECF No. 35.
[10] ECF No. 57.
[11] ECF No. 58.
[12] ECF No. 117.
[13] ECF No. 10.
[14] ECF No. 25.
[15] ECF Nos. 31-32.
[16] ECF No. 55.

Conditions.[17]

## LEGAL STANDARD

Because this matter involves allegations of serious risk of flight and/or attempt to obstruct justice, the Bail Reform Act requires that a hearing be held to determine whether any condition or combination of conditions will assure the appearance of the defendants. 18 U.S.C. § 3142(e)(l).  In determining whether there are no conditions that will reasonably assure the defendants' appearance, the court shall "take into account the available information concerning– 1) the nature and circumstance of the offense charge ... ; (2) the weight of the evidence against the person; (3) the history and characteristics of the person ... ; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the persons' release .... " 18 U.S.C. § 3142(g). The government must prove a serious risk of flight by a "preponderance of the evidence."[18]  And, the government must prove danger to the community by "clear and convincing evidence."[19]

I.  Review of Isaiah's Request for Reconsideration of Detention

Pursuant to DUCrimR 57-15(a)(3), the undersigned is reviewing Isaiah's request for reconsideration. There are three avenues for review of pre-trial detention. First, the Bail Reform Act provides that a defendant may move for the reopening of his bail hearing at any time before trial upon showing "that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." [20] Second, the Speedy Trial Act provides that "[t]he trial of any

---

[17] ECF No. 122.
[18] *United States v. Cisneros*, 328 F.3d 610, 613 (10th Cir. 2003).
[19] 18 U.S.C. § 3142(f).
[20] 18 U.S.C. § 3142(f)(2).

person [detained pre-trial] . . . shall commence not later than ninety days following the beginning of . . . detention."[21] The statute explicitly excludes "[t]he periods of delay enumerated in section 3161(h)" from this ninety-day clock.[22] Failure to start trial within ninety days (excluding the periods of delay enumerated in section 3161(h)),"through no fault of the accused or his counsel[,] . . . shall result in the automatic review by the court of the conditions of release."[23] Third, a defendant may move for a review of his pre-trial detention under the Due Process Clause.[24] Isaiah moves to reopen his bail hearing under avenues one and three. Specifically, Isaiah makes two main arguments: 1) due process concerns warrant pre-trial release; and 2) per the Bail Reform Act, there is new information which supports pre-trial release.  The court will address each point below.

The Tenth Circuit has explained that "at some point due process may require a release from pretrial release or, at a minimum, a fresh proceeding at which more is required of the government than is mandated by [the Bail Reform Act, 18 U.S.C.] § 3142."[25]  In determining when this point is reached, courts are to consider: "1) the length of detention; 2) the extent of the prosecution's responsibility for the delay of trial; and 3) the strength of the evidence upon which the detention was based."[26]  Here, Isaiah will have been detained nine months from the time he was detained in August 2018, to the trial date of May 13, 2019.  In support of his due process argument, Isaiah relies on two out-of-circuit cases. In *United States v. Archambault*,[27] although

---

[21] 18 U.S. § 3164(a).
[22] Id.
[23] 18 U.S.C. § 3164(c).
[24] *United States v. Cos*, 198 F. App'x 727, 732 (10th Cir. 2006) (holding that "at some point due process may require a release from pretrial detention or, at a minimum, a fresh proceeding").
[25] *United States v. Accetturo*, 783 F. 2d 382, 288 (10th Cir. 1986).
[26] *Cos*, 198 F. App'x at 732; *see also United States v. Young*, No. 2:12-CR-502-TCDBP, 2013 WL 12131300, at *2 (applying the *Cos* factors in evaluating a defendant's motion for release from pre-trial detention after eleven months in custody).
[27] 240 F.Supp.2d 1082 (D.S.D. 2002).

the court held pre-trial release was warranted, the circumstances there are distinguishable.  In *Archambault*, the defendant faced assault charges, had been detained almost 20 months, had completed substance abuse treatment, and was awaiting decision on appeal of a motion to dismiss involving the double jeopardy clause.  The court was concerned Archambault would serve a substantial portion of his sentence during the pre-trial detention.  Such a risk is not present here.  Next, Isaiah relies on *United States v. Vastola*.[28]  In *Vastola*, 21 defendants were facing an 18-month detention prior to commencement of a six-month trial in a complex drug related case.  There is no discussion of defendants' flight risk or danger to the community, thus that case is not helpful here.

Applying the *Cos* factors here, there is no need for pre-trial release at this time.  Isaiah has been detained about five months.  Any delays in the proceeding have been a result of the complexity of the case, volume of discovery, Jacob's requests for continuance and the presumption the defendants want to be tried together.  As determined by this court, and Judge Parrish, the evidence of flight risk and danger to the community is strong in this case. The government has previously presented evidence that Isaiah wired over $52 million in fraudulent proceeds to Turkey, made false statements to the Southern District of New York to conceal Washakie's Turkish assets, exchanged text messages with an intermediary to hire an enforcer to intimidate witnesses and bribe government officials, and was involved in a scheme to cycle more than $588 million in order to promote fraud.

Isaiah also asserts "new information" warrants pre-trial release.  However, he did not offer any "new" evidence or information to the undersigned.  He simply argues he does not have access to money or genuine ownership in Washakie.  But at the prior hearings, the government

---

[28] 652 F. Supp. 1446 (D.N.J. 1987).

provided strong evidence that Isaiah is CFO and 50% owner of Washakie and that he initiated wire transfers totaling $52 million to Turkish banks.  Isaiah also argued he does not have connections to Turkey—specifically that he was not involved in any of the transactions with Turkish accounts.  Again, given that evidence shows Isaiah personally transferred at least $52 million from Washakie's accounts to Turkey, this suggests a "connection to Turkey."  Third, Isaiah claims the intermediary related to payments for an enforcer and bribes to purported government officials is "untrustworthy."  Again, the credibility of the intermediary is not at issue at this juncture.  The government relied on specific text messages between Isaiah and the intermediary and there is no evidence before the court that the text messages were "cherry picked, out of context or are incomplete."  Next, Isaiah argues other courts have not detained co-conspirators in large fraud cases.  But none of the cases cited by Isaiah involve the circumstances here, such as $134 million dollars in transfers to accounts in Turkey, allegations of bribes or perjured filings in other cases regarding the Turkish assets.  Finally, Isaiah requests to be released to treat cancer and ulcerative colitis.  None of these arguments were "new" or based on "new information."  Based on the foregoing, the undersigned DENIES Isaiah's request to reconsider his detention conditions.

II.     Jacob's Motion for Pretrial Release on Conditions

Jacob offered the court an 11-point proposal for his pre-trial release.[29]  It includes a $10 million dollar bond, home incarceration with GPS monitoring, surrendering his passport, travel restrictions, and not contacting other witnesses.  In support of his proposed pre-trial release proposal, Jacob provided the court with a list of 13 cases from out-of-circuit courts that allegedly involved "defendants with charges similar to Kingston." However, upon the court's request for

---

[29] ECF No. 22 at 5.

citations, the court received bond release orders void of any facts or legal analysis. Thus, there is no evidence in the record that any of the underlying cases involved matters with multi-defendants, multimillion dollar fraud, flight risk or danger to the community. Thus, none of these cases have precedential value.

The crux of Jacob's request for pre-trial release is that he is not a flight risk or danger to the community. He claims he was not fleeing to Turkey when he was arrested because he had purchased two-way tickets, he and his wife were accompanying his son and daughter-in-law on their honeymoon, and the tickets were purchased 19 days after the government filed the original indictment. Moreover, Jacob argues the government made the strategic decision to arrest him and his family while they were boarding the flight to be able to argue "flight risk." Next, he asserts he cannot flee to Turley because his assets in Turkey are not liquid–they are tied up as working capital in certain businesses. Finally, he claims there is no evidence to support the position that due to his political ties in Turkey he would not be deported or extradited. Notably, Jacob provided the court with a list of his trips to Malaysia and Turkey from May 2016 to June 2018, asserting he has traveled abroad for business and not fleeing. The list shows his trips abroad in 2018 tripled the trips he took in 2016.

In response, the government argues the risk of flight is substantial because Jacob faces a maximum penalty of 417 years or life in prison. The government also asserts it is undisputed Jacob wired at least $134 million in proceeds to Turkey. The government also argues Jacob's explanation for the timing and reason for his last trip to Turkey are peculiar. It appears Jacob purchased the tickets to Turkey—to allegedly accompany his son on his honeymoon–just three days before the trip. Also, since the original indictment was sealed, it is presumed Jacob did not know about it when he purchased the flight tickets. The court acknowledges it would be unusual

for parents and siblings to accompany a couple on their honeymoon to a country considered dangerous by the State Department.

Based on the totality of the evidence in the record, this court finds the government has shown by a preponderance of the evidence that Jacob is a serious flight risk.  First, given the nature and circumstances of the charges, Jacob faces a potential sentence of 417 years to life.  Second, the evidence shows he has ties to Turkey (at the very least there is evidence of wire transfers of $134 million from Washakie to bank accounts in Turkey).  Third, Jacob submitted false statements under oath to the Southern District of New York and was boarding a plane en route to Turkey with members of his family at the time of his arrest.  Finally, the government has proffered evidence supporting allegations that Jacob threatened potential witnesses and tried to bribe law enforcement officials.  All of this supports a finding against pre-trial release under the four *Cos* factors.  Accordingly, the undersigned finds that the government has established by clear and convincing evidence that Jacob is a serious flight and presents a danger to the community.  The 11-point proposal for his pre-trial release will not reasonably assure his appearance at trial.  Based on the foregoing, Jacob's motion for pre-trial release on conditions is DENIED.

## ORDER

It is ORDERED that Defendant Isaiah Kingston's Request for Reconsideration of Detention [ECF No. 117] is DENIED, and Jacob Kingston's Motion for Pretrial Release on Conditions [ECF No. 122] is DENIED.

DATED this 8 February 2019.

Brooke C. Wells
United States Magistrate Judge