D. Loren Washburn (#10993)
  lwashburn@smithwashburn.com
Jacob L. Fonnesbeck (#14176)
  jfonnesbeck@smithwashburn.com
**SMITH WASHBURN, LLP**
8 East Broadway, Suite 320
Salt Lake City, UT 84111
Telephone:  (801) 584-1800
Facsimile:   (801) 584-1820

*Attorneys for Sally L. Kingston*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACOB O. KINGSTON, *et al.*,<br><br>Defendant. | **OBJECTION TO MAGISTRATE JUDGE'S DECEMBER 7, 2018 ORDER (ECF NO. 100) AND MOTION FOR BILL OF PARTICULARS**<br><br>Case No. 2:18-cr-00365-JNP |

In accordance with 28 U.S.C. § 636(b)(1)(C), Sally Kingston hereby objects to the Protective Order entered by Magistrate Judge Brooke Wells on December 7, 2018[1], pursuant to the government's Motion for Protective Order[2] (the ***"Motion"***), and requests the Court's *de novo* review. Defendants were not allowed to respond to the Motion before the Protective Order was entered, and in any event, Sally[3] was not a party to this case at the time the Protective Order was entered.

Sally also moves the Court for an order requiring the government to provide her with a bill of particulars so she can prepare a defense and avoid prejudicial surprise at trial.

## I.     INTRODUCTION

The government's approach to this case has created tension between two vital interests of the defendants:

---

[1] ECF No. 100.
[2] ECF No. 99.
[3] Sally Kingston is referred to herein as "Sally" to avoid confusion with some of the other defendants named in this case and who share the same surname.

1.       The defendants, and specifically Sally, have a due process right that affords her and her counsel time to be fully prepared for trial, and given the complexity of this case and the approach the government has committed to, that could take months or even years.

2.       The detained defendants—Jacob Kingston, Isaiah Kingston, and Lev Dermen—have an interest in having the case tried at the earliest possible time to avoid the prejudice of their pretrial detention.

The Court can resolve some of the tension between these two interests by entering orders that will assist the defendants to be better prepared for an early trial date. Specifically, the Second Superseding Indictment (the *"Indictment"*) does not inform the defendants what they are alleged to have done on an individual basis. Also, the Protective Order—which was entered without waiting for input from the defendants—allows the government to keep the most important evidence from the defendants until a few days before trial, and from their counsel until "two or three weeks" before trial. Orders requiring the government to provide a bill of particulars to each defendant and making the current trial date contingent on the government's early disclosure of Jencks Act material will do much to bridge the gap by helping Sally and her counsel prepare for a trial at the early dates the Court is presently contemplating.

**II.      BACKGROUND**

On August 1, 2018, the government filed its first indictment under seal in this case. Sally Kingston was not a defendant in that indictment. The August 1, 2018, indictment was the product of a nation-wide investigation that had been ongoing for at least 30 months. IRS and EPA agents—many of whom are still involved as case agents today—conducted a search pursuant to a warrant and gathered records, some of which were disclosed to the defendants on February 10, 2016. Since probable cause for the warrant did not arise overnight, it is likely that the investigation in this case had been going on for more than three years at the time of the August 1, 2018 indictment. Indeed, Special Agent Matthew Bird, in an affidavit dated June 6, 2017, revealed that numerous "coconspirators" had pleaded guilty to charges allegedly related to the charges that would eventually be filed here. Those cases were brought in Florida and Washington State. The case

numbers of the cases brought against those defendants indicate they were charged in 2015. Based on this information, the government has had more than three years to investigate this case.

Not only has the government had time, they have had resources. As the government acknowledged during a status conference held before the Court on February 19, 2019, there are six full-time federal agents who are assigned as case agents on this case from no less than two federal agencies. Further, the government has had access to witnesses who will not talk to the defendants. For example, one of the identified "coconspirators" is represented by counsel in Florida and Kentucky—both of whom are known personally to Sally's counsel—and the "coconspirator's" counsel refused to allow Sally's counsel to meet with this "coconspirator" for an interview. In contrast, the government has had multiple interviews with this same witness pursuant to a cooperation agreement that is part of his plea deal with the government.

In any event, after the government's years-long investigation, the original indictment was returned in this matter. The government sought detention of three named defendants—Jacob Kingston, Isaiah Kingston, and Lev Dermen.  These three defendants have been detained for months while the government has tried to get more comfortable with its indictment.

In its first attempt at honing its charges, on November 20, 2018, the government filed its first superseding indictment. Sally was not named as a defendant in that indictment.

On December 7, 2018, the government filed a motion for a protective order.[4]  The very same day, before defense counsel for the then-defendants had a chance to respond to the government's motion, Magistrate Judge Brooke C. Wells signed an order granting the government's motion for a protective order.[5] The government's motion for a protective order provides, generally, that the government reserves its right to disclose Jencks Act material[6] "after a

---

[4] ECF No. 99.
[5] ECF No. 100.
[6] The Jencks Act, 18 U.S.C. § 3500, generally applies only to verbatim, or substantially verbatim, statements of witnesses, and by its explicit terms, precludes a prosecutor from being forced to disclose any such statements until after the witness has testified. Of course, this is not how most cases proceed. Indeed, in counsel's experience, no trial proceeds according to anything like the strict terms of the Jencks Act.

witness has testified at trial," and that the government will disclose "the bulk" of the Jencks Act-type statements "two to three weeks prior to trial." The government's proposed order, which the Court signed without waiting for defense counsel to give their perspective, finds that this mere-weeks-before-trial disclosure "addresses the need of defense counsel to have the identifying information regarding cooperating witnesses sufficiently in advance of trial so there can be adequate investigation of the cooperating witnesses for trial."[7] Other than the government's say-so, it is not clear what the basis for this finding was.

The Protective Order goes further, explaining that even this "two to three weeks prior to trial" disclosure comes with strings attached: "The Defense shall not show to, discuss with, or disclose in any manner the identity of the government's witnesses contained in the Jencks Act type materials (copies or otherwise) to the defendants earlier than three days prior to trial."[8]

The government's position in seeking a protective order to keep from making early disclosure of its evidence is contrary to the "Disclosure Practices of the District of Utah." That policy statement, issued by the United States Attorney for the District of Utah in April 2015, notes that:

> The disclosure practices [of the District of Utah] are premised on the office's philosophy and experience that *early and expanded disclosure* promotes open communication and resolution of cases, the pursuit of justice, respect from the court and the community, and most importantly, the fulfillment of a prosecutor's ethical responsibilities. (Emphasis added.)[9]

It bears noting again that the government's position here is not only at odds with the policy statement of this district's United States Attorney's Office's policy statement, but the Protective Order was also entered the very day the government's motion was filed and did not give the then-defendants' counsel an opportunity to respond or object. Because Sally was not charged at that time, she too could not have objected to the government's proposed protective order.

---

[7] ECF No. 100 at p. 2.
[8] *Id*. at p. 3.
[9] A copy of the Disclosure Practices of the District of Utah is available here: https://www.justice.gov/sites/default/files/usao/pages/attachments/2015/04/01/ut_discovery_policy.pdf.

Some two months later, on January 17, 2019, the government filed a second superseding indictment, (referred to herein as the "Indictment"). Sally was charged in the Indictment with one count of conspiracy to commit mail fraud and one count of conspiracy to commit money laundering.[10] The government recently described the Indictment as being very different from the preceding indictments, and indeed it is.

Sally's name appears in the Indictment a total of 10 times[11]: once on the caption page, twice on a chart of the defendants charged by count, once each in the laundry list of defendants charged in Counts 1 and 23, and twice in forfeiture allegations. There are only two paragraphs that allege anything even remotely substantive about Sally. They read as follows:

> 6.  Defendant SALLY LOUISE KINGSTON ("SALLY KINGSTON") was a resident of Utah, the wife of Defendant JACOB KINGSTON, and the "IRS Regulatory Permit Specialist" or "Compliance Manager" at Washakie.
>
> 11.  Defendants JACOB KINGSTON, ISAIAH KINGSTON, RACHEL KINGSTON, and SALLY KINGSTON were members of the The Davis County Cooperative Society, also known as "the Order" primarily located in Utah. Numerous entities were associated with the Order, including, among others:
>     A-Fab Engineering Inc. ("A-Fab Engineering");
>     Fidelity Funding Inc. ("Fidelity Funding");
>     Latter Day Church of Christ;
>     Equitable Funding Inc. ("Equitable Funding");
>     Alliance Investments Solutions LLC ("Alliance Investments"); and
>     Standard Industries Inc. ("Standard Industries").
>
> These entities are hereinafter collectively referred to as "Order-related entities."[12]

The sum total of the specific allegations about Sally in the Indictment, then, is that she: (1) is a resident of Utah; (2) was the wife of Jacob Kingston; (3) had the title of "IRS Regulatory Permit Specialist" and "Compliance Manager" at Washakie; and (4) was a member of the Davis County Cooperative Society, aka "the Order." Of course, these allegations don't suffice to accuse Sally of any crime.

Rather, the government's approach to charging the defendants with crimes is to (apparently, deliberately) obscure what each defendant, and specifically Sally, is accused of doing.

---

[10] ECF No. 135 at p. 2.
[11] *Id.* at pp. 1, 2 (twice), 4 (twice), 6, 8, 24, 56, 58.
[12] *Id*. at pp. 4 and 6.

This is accomplished through group pleading. For example, each subparagraph in Paragraph 20 of the Indictment begins with the word "they."[13] Presumably the government knows which of the defendants participated in which of the activities that the government alleges took place in each of these subparagraphs. More to the point, the government must know what it contends Sally did, if any, among the various allegations set forth in those subparagraphs. However, by pleading in this group fashion, the Indictment obscures what exactly the government charges Sally did to be part of this conspiracy.

This same pattern of group pleading appears in the paragraphs that allege "conduct in furtherance" of the supposed conspiracy. In each of the subparagraphs of Paragraph 21 (subparagraphs "a" through "tt"), the Indictment alleges that on a certain date "they" took some action. Here, even more clearly, the government knows who it thinks did the particular thing on the identified date: the government just chooses to hide that fact by using group pleading.

The second count in which Sally is charged proceeds in the same manner. In the subparagraphs of Paragraph 31 "they" did all sorts of things, without any attempt to narrow who "they" is. The problem with this approach is that it requires Sally and her counsel to scour the substantial discovery to identify relevant documents in order to understand what defenses she may have. In this case that makes preparing for trial and avoiding surprise virtually impossible.

The practical effect on the defendants' trial preparation of this pleading approach is substantial. As it stands, the government has alleged in more than 50 subparagraphs through the use of the ambiguous "they" that some or all of the defendants did things, or series of things. For example, in Subparagraph 21.gg, to select just one, the Indictment alleges: "In or about March 2014, they instructed a co-conspirator to be prepared to leave the country to avoid prosecution." As it stands, Sally's counsel has to investigate—without the benefit of the co-conspirator's statements until "two to three weeks" before trial—who the co-conspirator is, whether anyone will say at trial that Sally "instructed" the co-conspirator, that Sally was present when the co-

---

[13] This is an exaggeration. Subparagraph "m" doesn't use the group pled "they" until seven words into the sentence.

conspirator was instructed, or that Sally even knew the "co-conspirator" existed, much less the alleged instruction. All of this may well be for naught if it turns out that the government does not even intend to argue that Sally had anything to do with that episode. In a world of unlimited time to get ready for a delayable trial, perhaps this problem is one that could be downplayed, but given the time constraints under which Sally and her counsel are operating, needing to chase down leads like this when the government knows that many of the "they" allegations have nothing to do with Sally is simply an effort by the government to make it difficult for defense counsel to be ready for an early trial.

Preparing is no easy task; there is much discovery to scour. Efforts to quantify discovery through listing statistics about terabytes and other digital volumes are often as misleading as they are helpful. There are no useful metrics other than to describe how discovery has proceeded: in an email on January 28, 2019, the government's lawyers emailed counsel explaining that in order to receive discovery counsel would need to mail three hard drives to two separate people. In the government's words, "given the volume of discovery, it will take us some time to copy all the data to the hard drives. Please expect us to send out the drives within two weeks of having received them." Apparently, the act of copying—merely copying—all the digital information that comprises discovery required two weeks.[14] Of course, the government has not organized the discovery with helpful tags identifying what documents relate to which defendants or subparagraphs or even counts.

Counsel then is left to review three hard drives of data without even having a single client-specific allegation in the Indictment. It may well be that at trial the government will acknowledge that Sally did not do any of the things that "they" are alleged to have done, and the preparation will have been a purposeless wild goose chase. Given the group pleading, however, Sally's counsel must be prepared for the possibility that the government will try to prove she was the "they" in every subparagraph in every count. Her Constitutional rights require that she have counsel who is

---

[14] As it turns out, Sally's counsel negotiated to make use of a digital discovery review platform being used by co-defendants and chose not to separately get copies of the discovery.

prepared to address that possibility, unless the government is forced to give more specific information about the charges.

## III. ARGUMENT

Weeks of unnecessary preparation could be avoided if the Court orders the government to provide the defendants the information they need to prepare for trial. The government's handling of this case has left everyone in a box:

1. by charging and arresting some defendants months before they were ready to settle on charges,

2. by changing the indictment six months after the original defendants were arrested,

3. by including new defendants whose counsel must now get ready for trial on an expedited basis to avoid violating the detained defendants' rights,

4. by bringing an indictment that fails to identify what the defendants are individually alleged to have done,

5. by refusing to disclose the key evidence, including statements of cooperating witnesses, to the defendants until the weekend before trial, and

6. by pushing for an early trial date to avoid their premature arrests infringing defendants' constitutional rights, the government has created a crisis that introduces tension between the defendants' Speedy Trial Act rights and their right to a fair trial.

Much of this tension could be relieved by an order of the Court: (1) requiring the government to disclose all witness statements now, and to allow the defendants, as well as their lawyers, to review those documents; and (2) requiring the government to provide a bill of particulars that would set forth what each defendant is actually accused of doing and providing the specifics that are hidden by the Indictment's group pleading.

### (a) REVISION OF THE PROTECTIVE ORDER

As noted above, the government filed a motion for a protective order and the Magistrate signed the government's proposed order without giving the defendants even a day to attempt to

provide their input. The first purpose of this motion is to seek review of that Protective Order, which contains findings that are, in light of the current procedural posture of the case, questionable at best. For example, the Protective Order finds that notifying the defendants of the names of the key witnesses against them three days before trial, "addresses the need of defense counsel to have the identifying information regarding cooperating witnesses sufficiently in advance of trial so that there can be adequate investigation of the cooperating witnesses for trial."[15] From the undersigned's perspective, having just been introduced to this case, this line from the Court's order is absolutely inaccurate. Counsel is severely hampered by this Protective Order and will face substantial hurdles in his endeavor to be ready for trial without the key witness statements well in advance of trial. Further, this order actively delays the date by which counsel can be trial-ready.

Moreover, the need for this secrecy is itself suspect. The government's own prior statements undermine any plausible claim that they are withholding cooperators' statements out of a practical concern for the witnesses. The government acknowledged in a September 25, 2018, filing that, "as a practical matter, the defendants likely will be able to glean the identities of witnesses and the nature of their statements from the discovery that the United States has provided and will continue to provide."[16] In other words, the government acknowledged that trying to hide the identity of cooperators is not a "practical." This is because the defendants know who these witnesses are and can likely guess the "nature of their statements."

If that is the case, what purpose is served by not disclosing the witness statements now so defense counsel can be ready for trial as soon as possible? If, as the government acknowledges, the defendants can identify cooperators and the general nature of their statements, witnesses are

---

[15] ECF No. 100 at p. 2. The logistics of the procedure required by the Order are difficult to navigate. Since the government acknowledges that the Defendants likely know who the Cooperators are, there will be a time under the Order where the Defendants and their counsel think they know, but do not yet have records; a later period where defense counsel has the records but cannot disclose who is a cooperator, even though the government acknowledges that the Defendants will likely know who the cooperators are, during which time it is difficult to imagine how counsel will be able to communicate with their clients about these witnesses who counsel knows and the Defendants believe are cooperators; and finally a matter of three days before trial where counsel and Defendants can actually discuss something about the key witnesses in the case.
[16] ECF No. 67 at p. 7.

not being meaningfully protected by the government's unwillingness to "disclose" witnesses.

Additionally, co-defendants' counsel has offered in open court on several occasions that they would receive Jencks Act disclosures "for attorneys' eyes only" until shortly before trial. The "attorneys' eyes only" compromise, coupled with the fact that all three defendants the government has levied allegations of dangerousness against—Sally is not one of them—are incarcerated, ameliorates any concern that turning over witness statements has the potential to harm government cooperators.

The government contends in their motion for the Protective Order that the Jencks Act prohibits the Court from ordering the government to make pre-trial disclosure of witness statements.[17] The government is not wrong; that is the law. The government can refuse to provide pretrial disclosure of witness statements.

But the Court is not without leverage of its own that it can use to persuade the government to make disclosures that will allow the Defendants to get a fair trial. The Court can, and should, order that the trial will proceed on the trial dates being discussed only on condition that the government provides immediate—or at least substantially earlier than presently contemplated— disclosure of Jencks Act materials. If the government refuses, the Court should set the trial at a much later date, when counsel can be prepared even with the government withholding much of the key evidence in the case. If that means that due process requires that the detained defendants be released, then the government will have to choose between the detention it claims is crucial, on the one hand, and jealously guarding the evidence it is attempting to hide from the defendants, on the other. The Court and the defendants need not be held hostage by the government's desire to have its cake and eat it too. The Court can, and should, create strong incentives for the government to abandon its unreasonable Jencks Act position so that this trial can be held both quickly and fairly.

Sally requests an order requiring the government to disclose all memoranda or records of

---

[17] ECF No. 99 at p. 2.

any kind of witnesses it intends to call at trial, including cooperators, within 30 days of the filing of this motion. In the alternative, the Court should order to the government to disclose how many pages of Jencks Act material is in their possession so the Court can order a reasonable schedule for trial. If the government refuses these compromises, the Court should delay trial to allow adequate preparation and should release the incarcerated defendants as necessary to avoid having their rights related to pre-trial detention violated.

If the government's lawyers have some specific basis to withhold specific statements that they can articulate to the Court, they should make an *in camera* submission. However, Sally requests that the Court review every such request with an eye toward the due process rights of the defendants that are compromised by not having important evidence, as Sally's counsel is forced to prepare for a case with large, complex, and voluminous discovery on an expedited basis.

**(b)    THE BILL OF PARTICULARS**

Sally also seeks a bill of particulars. The purpose of a bill of particulars is to inform the defendant of "the charge" with sufficient precision to allow him to prepare a defense.[18] Its further purpose is to minimize surprise as to the substantive facts of the charges.[19] A bill of particulars entitles defendants to notice of the government's theory of the case.[20]

The Indictment fails to apprise Sally of what criminal conduct she stands accused of. The only things the Indictment alleges specific to Sally are not criminal. To be sure, the ambiguous "they" are charged with various acts that may amount to a crime, but given the number of acts and volume of discovery, knowing what "they" did does not serve to minimize surprise to Sally or help her understand what the government alleges she did.

In ordinary circumstances, where counsel could have time through exclusions of time under the Speedy Trial Act to make an orderly and full review of all the discovery, a group-pled

---

[18] United States v. Ivy, 83 F.3d 1266 (10th Cir., 1996); United States v. Levine, 983 F.2d 165, 166–67 (10th Cir., 1992); United States v. Radetsky, 535 F.2d 556 (10th Cir., 1976).
[19] See Wong Tai v. United States, 273 U.S. 77, 47 S.Ct. 300, 71 L.Ed. 545 (1927); United States v. Hopkins, 716 F.2d 739, 745 (10th Cir., 1982); United States v. Garrett, 797 F.2d 656 (8th Cir., 1986).
[20] United States v. Tyler, 42 Fed. Appx. 186, 190 (10th Cir., 2002).

indictment like this may not pose a threat to Sally's due process rights. However, that process could take months or even a year—time that the parties in this case do not have. The time crunch created by the detention of her codefendants, together with the government's delay in multiple superseding indictments, and only recently including her in the case means that proceeding on the Indictment in this case, without further clarification in a bill of particulars, will inevitably lead to prejudicial surprise and inability to prepare.

The matter of a bill of particulars is within the discretion of the Court, whether to grant the bill or to allow it in any part.[21] The Court should exercise its discretion to enter a bill of particulars requiring the government to disclose to each individual defendant what conduct the government will contend at trial that defendant actually engaged in. A bill of particulars is an appropriate vehicle for the government to make the disclosures that will avoid surprise and allow the newly-charged defendants to proceed to trial with some idea what of their conduct is alleged to constitute a crime.

### IV.   CONCLUSION

The Court is clearly committed to trying this case fairly, but also quickly. For Sally's counsel to be adequately prepared for trial on the schedule proposed by the Court, her counsel needs more assistance than what the government's present vague Indictment and key-witness-hiding approaches provide. The Court should order the government to provide a bill of particulars and to disclose all witness statements quickly, so everyone can be ready for this trial without surprises or unplanned delays.

DATED: February 21, 2019                    SMITH WASHBURN, LLP

                                            /s/ D. Loren Washburn
                                            D. Loren Washburn
                                            *Attorneys for Sally L. Kingston*

---

[21] *Will v. United States*, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); *Ivy*, F.3d at 1281; *Levine*, 983 F.2d at 167; *United States v. Sturmoski*, 971 F.2d 452, 460 (10th Cir., 1992); *United States v. Kunzman*, 54 F.3d 1522 (10th Cir., 1995); *United States v. Wright*, 826 F.2d 938 (10th Cir., 1987); *Enlow v. United States*, 239 F.2d 887 (10th Cir., 1957); *Rubenstein v. United States*, 214 F.2d 667 (10th Cir., 1954).

# CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2019, the foregoing **OBJECTION TO MAGISTRATE JUDGE'S DECEMBER 7, 2018 ORDER (ECF NO. 100) AND MOTION FOR BILL OF PARTICULARS** was served on the person(s) named below via the Court's electronic filing system:

Adam S. Elggren
U.S. ATTORNEY'S OFFICE
111 Main Street, #1800
Salt Lake City, UT 84111
adam.elggren@usdoj.gov

Arthur J. Ewenczyk
Leslie A. Goemaat
U.S. DEPARTMENT OF JUSTICE
TAX DIVISION CRIMINAL ENFORCEMENT
601 D Street NW, 7th Floor
Washington, DC 20004
arthur.j.ewenczyk@usdoj.gov
leslie.a.goemaat@usdoj.gov

Richard M. Rolwing
U.S. ATTORNEY'S OFFICE – TAX DIVISION
303 Marconi Blvd., Suite 200
Columbus, OH 43215

*Attorneys for the United States of America*

Marc A. Agnifilo
Teny R. Geragos
BRAFMAN & ASSOCIATES
767 Third Avenue, Floor 26
New York, NY 10017
magnifilo@braflw.com
tgeragos@braflaw.com

Walter F. Bugden
Tara L. Isaacson
BUGDEN & ISAACSON LLC
445 East 200 South, Suite 150
Salt Lake City, UT 84111
wally@bilaw.net
tara@bilaw.net

*Attorneys for Jacob O. Kingston*

////

////

Mark J. Geragos
Linda Moreno
GERAGOS & GERAGOS APC
644 S. Figueroa Street
Los Angeles, CA 90017
mark@geragos.com
geragos@geragos.com

Jon D. Williams
JON D WILLIAMS PC
9 Exchange Place, Suite 600
Salt Lake City, UT 84111
jwilliam@lawyer.com

*Attorneys for Lev Aslan Dermen*

Scott C. Williams
SCOTT C WILLIAMS LLC
43 East 400 South
Salt Lake City, UT 84111
scwlegal@gmail.com

*Attorneys for Isaiah Elden Kingston*

Cara M. Tangaro
TANGARO LAW PC
35 W. Broadway, Suite 203
Salt Lake City, UT 84101
cara@tangarolaw.com

*Attorneys for Rachel Ann Kingston*

Samuel Alba
SNOW CHRISTENSEN & MARTINEAU
10 Exchange Place, 11th Floor
P.O. Box 45000
Salt Lake City, UT 84145
sa@scmlaw.com

*Attorneys for Intervenors*

                /s/ Melina Hernandez