IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>JACOB KINGSTON, ISAIAH KINGSTON,<br>LEV DERMEN, RACHEL KINGSTON, and<br>SALLY KINGSTON,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER CONTINUING TRIAL AND DENYING MOTIONS FOR REVIEW OF DETENTION**<br><br>Case No. 2:18-cr-00365-JNP-BCW<br><br>District Judge Jill N. Parrish |

The Government has charged Jacob Kingston, Isaiah Kingston, Lev Dermen, Rachel Kingston, and Sally Kingston with a variety of offenses related to an alleged scheme to illegally obtain over $500 million in renewable fuel tax credits. Jacob, Isaiah, and Lev have been detained pending trial since their initial appearances on August 24, 2018. Rachel and Sally were added to this case on January 22, 2019 and have been granted pretrial release. A trial for Jacob, Isaiah, and Lev is currently scheduled for May 13, 2019.

Before the court is a motion filed by Rachel and Sally to continue the trial and set a combined trial date for all five defendants for July 25, 2019. [Docket 185]. Jacob stipulates to the motion. Isaiah and Lev oppose the motion. The court GRANTS the motion to continue the combined trial and sets a firm trial date of July 29, 2019.

Also before the court are motions for review of detention filed by Isaiah and Lev. [Docket 189, 208, 226]. These defendants argue that new information and due process concerns require their release from detention pending trial. The court DENIES the motions for review of detention.

Finally, the court also reviews the detention status of Jacob, Isaiah, and Lev under 18 U.S.C. § 3164. Pursuant to this statute, the court determines that these defendants shall remain in detention until the completion of the combined trial.

## I.   CONTINUANCE OF THE TRIAL DATE AND EXCLUSON OF TIME

### A.   *Findings of Fact*

Based upon all of the filings of the parties in this case, the evidentiary hearings before Judge Wells, and the hearings held on February 19, 2019 and March 4, 2019, the court makes the following findings:

1. The Government alleges that the defendants engaged in a complex and multi-year fraud scheme to defraud the United States out of more than $511 million in renewable fuel tax credits. The Government also alleges that the defendants laundered the proceeds of the scheme.

2. On August 1, 2018, the Government filed a sealed indictment as to Jacob, Isaiah, and Lev. On August 23, 2018, Jacob and Isiah were arrested in the District of Utah. On the same day, Lev was arrested in the Central District of California. These defendants were ordered to be detained pending trial. On September 4, 2018, a magistrate judge in the Central District of California ordered that Lev be removed to the District of Utah.

3. On September 18, 2018, this court denied Isaiah's motion for review of his detention. The court found that Isaiah had both a motive and the means to flee  the country and determined that there was no combination of conditions that would reasonably assure his appearance at trial.

4. On October 9, 2018, this court also denied Lev's motion for review of his detention. The court similarly found that Lev was a flight risk and that no combination of conditions would reasonably assure his appearance at trial.

5. Also on October 9, 2018, the court excluded the time between August 24, 2018 and December 5, 2018 from the 70-day calculation under the Speedy Trial Act. The court determined that this matter is complex within the meaning of 18 U.S.C. § 3161(h)(7)(B)(ii). The court set a trial date of February 11, 2019 for Jacob, Isaiah, and Lev.

6. On November 20, 2018, the Government filed its first superseding indictment, which added new counts against Jacob and Isaiah.

7. In early December 2018, the parties disagreed about whether the February 11, 2019 trial should be continued. In a brief filed on December 7, 2018, the Government argued that the trial should be continued. Because Jacob's counsel had a conflicting trial scheduled in the Eastern District of New York, he also requested a continuance of the trial date. Isaiah and Lev, however, filed briefs opposing any continuance of the February 11, 2019 trial date because of their detention status.

8. On December 21, 2018, the court continued the trial until May 13, 2019. The court excluded the time between December 5, 2018 and May 13, 2019 from the 70-day calculation under the Speedy Trial Act. The court excluded the time as to Jacob under 18 U.S.C. § 3161(h)(7). After weighing the three *Vogl* factors mandated by the Tenth Circuit, the court also excluded the time as to Isaiah and Lev under § 3161(h)(6). Additionally, the court analyzed whether the defendants should be released from pretrial detention under the 90-day rule found in 18 U.S.C. § 3164. The court determined that, at minimum, the time between August 24, 2018 and December 5, 2018 should be excluded from the 90-day

3

calculation because, until that date, no party had "zealously pursued a speedy trial." Because 90 non-excluded days had not elapsed, the court ruled that the automatic review provision of § 3164(c) had not yet been triggered.

9. On January 15, 2019, counsel for Jacob notified the court that his trial in the Eastern District of New York had been continued and that he could not attend the trial scheduled to begin on May 13, 2019. Despite his counsel's lack of availability, Jacob did not move to continue the trial date.

10. On January 22, 2019, the Government unsealed the second superseding indictment. This indictment added new counts against Jacob, Isaiah, and Lev. It also added two new defendants: Rachel and Sally. The Government did not seek pretrial detention for Rachel and Sally. The Government instead sought $10 million bonds for these defendants. The magistrate judge denied the Government's request that Rachel and Sally be required to post bonds and they were released on conditions.

11. On February 14, 2019, Rachel and Sally filed a joint motion to continue the May 13, 2019 trial date until July 25, 2019. They argued that because they were new to the case, their counsel could not be ready for trial by May 13. Jacob stipulated to the motion to continue. Isaiah and Lev objected to the motion to continue.

12. On February 19, the court held a status conference regarding the trial date. The court ordered the Government and the detained parties to brief § 3164 as it relates to their pretrial detention. The parties filed their briefs by February 24, 2019.

13. At a detention hearing held on March 4, 2019, Lev's counsel revealed that he had accepted a new criminal client who has a six-week trial scheduled to begin April 29, 2019 in the Eastern District of New York City. Thus, despite Lev's earlier objection to a continuance

of the currently scheduled May 13, 2019 trial date, his counsel is no longer able to appear at a trial held on this date.

14. This matter involves novel questions of law regarding renewable fuel tax credits including the biodiesel mixture credit, the renewable diesel mixture credit, the alternative fuel credit, and the alternative fuel mixture credit.

15. The Second Superseding Indictment charges a total of 46 counts against five defendants. These counts allege an intricate scheme involving the international transportation of fuel and the transfer of funds among a number of domestic and foreign entities.

16. Discovery in this case is voluminous, consisting of approximately 500 GB and approximately 850,000 items. Additionally, the government has made 116 banker's boxes of seized hard copy material and a number of electronic devices available for defense counsel's review. The government has also produced 1.3 TB of pole cam footage. Finally, approximately 145 GB of unfiltered search warrant material has been provided to the defendants for review.

17. Rachel and Sally's counsel received an external hard drive from the Government containing the initial discovery on February 12, 2019. They represent that they need more time to review this discovery.

18. Jacob's counsel is scheduled to begin a trial in the Eastern District of New York on April 29, 2019. Jacob's counsel represented that he will not be available for trial in this matter until the third week of June.

B. *Jacob, Rachel, and Sally*

The court must first decide whether to extend the trial date and exclude time from the speedy trial clock as to Jacob, Rachel, and Sally pursuant to 18 U.S.C. § 3161(h)(7). Under this

5

provision, a court may continue a trial and exclude a period of delay from the speedy trial computation if "the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." § 3161(h)(7)(A). One of the factors that this court must consider in determining whether to grant an ends-of-justice continuance is "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section." § 3161(h)(7)(B)(ii). The court must also consider whether a failure to grant a continuance "would unreasonably deny the defendant . . . continuity of counsel." § 3161(h)(7)(B)(iv).

As this court has previously noted, this matter is incredibly complex. It is unreasonable to expect Rachel and Sally to be ready for trial by May 13, 2019 because of their recent addition to the case, the volume of discovery, the number of counts charged, and the intricacy of the scheme alleged by the Government. *See* § 3161(h)(7)(B)(ii). Moreover, Jacob's counsel will be unable to represent him at trial until after he finishes a trial in the Eastern District of New York around late-June. Absent a continuance, Jacob will be denied continuity of counsel. *See* § 3161(h)(7)(B)(iv). Given the volume of discovery and the time that Jacob's counsel has already invested in this case, it would be unduly burdensome to require Jacob to retain new counsel for trial. Moreover, Jacob would be denied his counsel of choice to represent him. Finally, because Jacob has stipulated to the motion to continue the trial, he has waived his individual interest in a speedy trial. *See In re Robinson*, 713 F. App'x 764, 767 (10th Cir. 2017) (unpublished) (per curiam) (holding that when granting an ends-of-justice continuance, courts must weigh a defendant's interest in a speedy trial). The court concludes, therefore, that the ends of justice served by granting a continuance as to

Jacob, Rachel, and Sally outweigh the best interests of the public and the defendants in a speedy trial. *See* 18 U.S.C. § 3161(h)(7)(A).

   *C.   Isaiah and Lev*

   Because Isaiah and Lev object to the continuance, the court considers whether an exclusion of time as to these two defendants is appropriate under 18 U.S.C. § 3161(h)(6). This provision excludes "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." "The obvious purpose behind [this] exclusion is to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." *United States v. Theron*, 782 F.2d 1510, 1514 (10th Cir. 1986). "The question in examining an exclusion under [§ 3161(h)(6)] is whether the delay attributable to the codefendant is 'reasonable.'" *United States v. Vogl*, 374 F.3d 976, 983–84 (10th Cir. 2004). In examining the reasonableness of a period of exclusion, courts consider the three factors articulated in *Vogl*: "(1) whether the defendant is free on bond, (2) whether the defendant zealously pursued a speedy trial, and (3) whether the circumstances further the purpose behind the exclusion to 'accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial.'" *Id.* at 984 (citation omitted).

   In this case, the first factor weighs against the exclusion of time because Isaiah and Lev are in pretrial detention.

   The second factor is largely neutral because both Isaiah and Lev have a mixed record of pursuing a speedy trial in this case. Isaiah opposed the continuance of the February 11, 2019 trial date. At least initially, he also opposed the motion to continue the May 13, 2019 trial date. But after the Government filed a brief arguing that the trial should be continued only until June 24, 2019, rather than to July 25, 2019, [Docket 198], Isaiah objected [Docket 205]. In his objection,

7

Isaiah equivocated concerning the trial date. Although he asserted a continuing objection to a continuance of the May 13, 2019 trial date in a footnote, he also argued that the proposed June 24, 2019 trial date would not allow sufficient time for Jacob, Rachel, and Sally to prepare for trial. Isaiah also argued that a summer trial would provide logistical problems for picking a jury and the vacation schedules for attorneys. Isaiah argued, therefore, that the "trial in this case cannot reasonably and effectively occur before July 29, 2019"—four days after the trial date requested by Rachel and Sally. Isaiah, therefore, has been somewhat less than zealous in his pursuit of a speedy trial.

Lev's pursuit of a speedy trial has also been inconsistent. Although Lev had previously acquiesced to continuances that resulted in the February 11, 2019 trial date, he opposed any continuance of that trial date. His counsel also paid lip service to his opposition of a continuance of the May 13, 2019 trial date. But Lev's counsel recently obtained a new client with an unmovable trial date that conflicts with the currently scheduled trial date of May 13. In short, Lev's counsel has taken actions that insure that Lev will require a continuance of the existing trial date to maintain continuity of counsel. Additionally, Lev filed a brief in which he argued that the current May 13 trial date cannot stand because of Jacob's right to counsel of his choice and because Rachel and Sally have not had enough time to prepare for trial. [Docket 224]. The court finds, therefore, that Lev's objection to a continuance of the May 13 trial date is an objection in name only designed to further his case for pretrial release.

The third factor weighs heavily in favor of a continuance. There is a "strong presumption favoring trying properly joined defendants together." *United States v. Zar*, 790 F.3d 1036, 1043 (10th Cir. 2015). Indeed, "[w]here the government will recite a single factual history, put on a single array of evidence, and call a single group of witnesses, a single trial is preferred." *Vogl*, 374

8

F.3d at 984 (citation omitted). Here, the Government alleges that the five defendants participated in a scheme to fraudulently obtain $511 million in tax credits and to launder the proceeds of this scheme. In particular, count one of the second superseding indictment charges all of the defendants with a conspiracy to fraudulently obtain fuel tax credits from the United States. Additionally, the numerous money laundering claims against the defendants are based upon the alleged fuel tax credit scheme. In order to put on its case against each of these defendants, the Government must call the same witnesses and put on the same evidence.

This case, tried once before a single jury, will consume an enormous amount of Government and court resources. At the February 19, 2019 hearing, the Government estimated that the trial would last for eight weeks if the court allocated five trial days per week to trial. In a subsequent filing with the court, the Government raised its estimate to ten weeks. Although the court has not yet committed to the amount of time that it will reserve for this trial, it seems likely that the trial, at minimum, will approach two solid months in length. This significant amount of trial time—together with the inevitable motion practice, evidentiary rulings, jury selection, and drafting of jury instructions—constitutes a major expenditure of Government and court resources. The prospect of multiplying the number of jurors who will have to participate in the voir dire process and a lengthy trial also constitutes a significant burden on the citizens of this state. Thus, the prospect of conducting multiple trials in this matter is a particularly important consideration.

In summary, the first *Vogl* factor weighs against excluding time as to Isaiah and Lev, the second factor is neutral, and the third factor weighs in favor of excluding time. In weighing these competing *Vogl* factors, the court concludes that a two-and-a-half-month period of delay from May

13, 2019 until July 29, 2019 is reasonable.[1] The strong policy in favor of a joint trial for a case this complex and a trial of this length weighs heavily in favor of a continuance. Isaiah and Lev's disingenuous commitment to a speedy trial and their detention status are insufficient to outweigh the benefits of a single, combined trial in this case. The court, therefore, excludes time between May 13, 2019 and July 29, 2019, under 18 U.S.C. § 3161(h)(6).

Finally, the court notes that there is an alternative route to a July 29, 2019 trial date that does not violate Lev and Isaiah's speedy trial rights. The court previously has excluded all time from August 24, 2018 until May 13, 2019 from the speedy trial calculation, leaving 70 days remining on the clock. The continuance required for a July 29 trial date is only 77 days long. Thus, if the court were to exclude a mere seven additional days from the speedy trial calculation, the trial would still occur within the 70-day limit. And certainly, an additional seven-day continuance is reasonable under § 3161(h)(6).

D. Conclusion

In light of Rachel and Sally's need for extra time to prepare for trial because of their relatively recent addition to this case, and the unavailability of Jacob's and Lev's counsel on the currently scheduled date, the court grants the motion to continue the trial date and schedules the trial to begin on July 29, 2019. Pursuant to 18 U.S.C. § 3161(h)(7)(A), the court excludes time from the date of this order to July 29, 2019 from Jacob, Rachel, and Sally's speedy trial calculation. The court also excludes the time from the date of this order to July 29, 2019 from Lev and Isaiah's

---

[1] Although Rachel and Sally moved for a continuance until July 25, 2019, the court has elected to set the trial for July 29, 2019. July 25 falls on a Thursday after a state holiday. The court concludes that it will be more convenient for jurors to start the trial on the following Monday.

speedy trial calculation under § 3161(h)(6). No further trial continuances shall be granted. Counsel should not schedule any other personal or court matters that will conflict with this trial date.

## II.  ISAIAH AND LEV'S MOTIONS FOR REVIEW OF DETENTION

Isiah and Lev filed motions for review of their pretrial detention. [Docket 189, 208, 226]. They argue that new information requires reconsideration of their detention. They also contend that constitutional due process concerns require their release.

### A.  Standard of Review

A defendant ordered detained by a magistrate judge has a right to review by a district court judge. 18 U.S.C. § 3145(b). By local rule, this review is de novo. DUCrimR 57-16(a)(1); *see also United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003) ("The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo."). The language of DUCrimR 57-16(a)(1) does not confine the de novo standard of review to the review of an initial order of detention; it is broad enough to encompass subsequent magistrate judge orders on motions to reopen the issue of a defendant's pretrial detention. DUCrimR 57-16(a)(1) states that "[a]ny party is entitled to seek review of a magistrate judge's order releasing or detaining a defendant under 18 U.S.C. § 3142 et seq. The motion will be a timely scheduled de novo review by the assigned district judge." Because Isaiah seeks review of Judge Well's order maintaining his pretrial detention status under § 3142(f)(2), this court reviews the order de novo.

### B.  New Information

The court may reopen a detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the

11

community." 18 U.S.C. § 3142(f)(2). Both Isaiah and Lev argue that new information suggests that they should be released pending trial.

       1)    Isaiah

Isaiah argues that new information warrants his release. He neglected to supply this new information to Judge Wells [see Docket 180 at p. 5–6] and did not clearly identify any new information in his briefing before this court. At the March 4, 2019 hearing on his motion, Isaiah finally specified what the new information was. Isaiah's attorney argued that the new information could be found in Jacob's motion for release on bond. [Docket 122 at pp. 12–15]. This information consists of representations made by Jacob's attorney that some of the money wired to Turkey was for capital investments in ongoing business enterprises and that the investments could not be readily liquidated.

The court finds that Isaiah has failed to show that this information constitutes new evidence that can justify reopening his detention hearing. Reconsideration is only permissible if the detained defendant produces information "that was not known to the movant at the time of the [initial] hearing." § 3142(f)(2); *accord United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003). Information that was known by the defendant cannot be the basis for reopening the issue of detention. *United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989); *United States v. Ward*, 235 F. Supp. 2d 1183, 1185 (N.D. Okla. 2002). Despite this requirement, Isaiah makes no attempt to show that he was unaware of what the money transfers were for at the time of his initial detention hearing. And because Isaiah personally authorized $52 million in wire transfers to Turkey as part of his official duties at Washakie, the court presumes that Isaiah knew where the money was going and for what purpose at the time that he made the transfers.

Additionally, even if Isaiah could show that the evidence proffered by Jacob's attorney constituted new information, the proffer is insufficient to justify Isaiah's release from detention. Jacob's attorney represented that Jacob was an investor in a number of business enterprises in Turkey and that the money invested in these enterprises could not be readily retrieved. But these general representations do not account for all of the money transferred from Washakie to Turkey. Jacob's attorney merely references in broad terms about $35 million in investments that Jacob allegedly made in Turkish businesses. He did not represent that these investments overlapped with the $52 million Isaiah wired to Turkey. Indeed, even if all of the investments were included in the amounts wired by Isaiah, about $18 million remains unaccounted for. Moreover, even if the $35 million allegedly invested in Turkish businesses could not be easily liquidated, access to the benefits of these investments would still provide a powerful incentive to abscond. In short, the unspecified representations made in Jacob's brief fall far short of allaying this court's concerns that Isaiah would flee to Turkey where he could live a very financially secure existence rather than face the charges against him.

      2)     Lev

Lev initially moved only for review of his detention under the Due Process Clause. But on March 7, 2019, he filed a document styled as a supplemental motion for review of detention, [Docket 226], in which Lev rehashes many of the same arguments and much of the same evidence that he presented in his initial motion for review of Judge Well's detention order. To the extent that Lev reasserts information that was known to him during his initial review of detention, his arguments do not comply with the statutory requirement that he supply new information to qualify for reconsideration under § 3142(f)(2). *See United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991).

Lev, however, did supply one piece of evidence that would qualify as new information. He attached a short New York Times article dated December 16, 2018, in which Turkey's foreign minister claimed that President Trump had told President Erdogan that the United States was "working on" extraditing Fethullah Gulen to Turkey. Turkish officials have forcefully demanded that Mr. Gulen be extradited to face charges that he instigated a coup attempt against President Erdogan. The article also noted that the United States Justice Department had determined in the past that evidence provided by Turkish officials did not meet the standard for extraditing Mr. Gulen. The State Department and the Justice Department declined to comment on the Turkish foreign minister's claim.

The Government also provided additional information regarding the status of this country's extradition treaty with Turkey. It supplied the affidavit of a US official responsible for extradition requests made to foreign countries. The official declared that the extradition treaty with Turkey does not require it to surrender individuals for prosecution in the United States. He further represented that over the last three years, Turkey has largely ignored extradition requests and that only one extradition request has been successful. The US official further averred that Turkish political leaders have stated Turkey's intent not to extradite any fugitives to the United States.

In weighing the New York Times article against the affidavit provided by the Government, the court finds that the new information does not merit reopening Lev's detention status. The article contains conjecture by the Turkish foreign minister that the United States will at some future date extradite Mr. Gulen. Lev argues that this event would improve relations between the two countries such that extradition requests made by the United States will be honored. But the court takes judicial notice of the fact that Mr. Gulen has not been extradited. Until that uncertain event occurs, there is no indication that Turkish officials will honor extradition requests. Finally, the court notes

14

that even if Turkey resumes extradition to the United States, this would not necessarily warrant release of the detained defendants. The Government is required only to demonstrate that the defendant would not appear for trial, not that the defendant would flee to a non-extraditable country. The court, therefore, denies Lev's motion to reopen his detention hearing.

### C. Due Process

Isaiah and Lev also argue that the Due Process Clause requires their release from pretrial detention. "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Normally, "the pretrial detention contemplated by the Bail Reform Act is regulatory in nature, and does not constitute punishment before trial in violation of the Due Process Clause." *United States v. Salerno*, 481 U.S. 739, 748 (1987). But the Tenth Circuit has recognized that at some point, pretrial detention my become so protracted as to violate due process and require release from pretrial detention. *United States v. Cos*, 198 F. App'x 727, 732 (10th Cir. 2006) (unpublished) (per curiam). In determining whether the length of pretrial detention has exceeded constitutional limits, courts must consider "1) the length of detention; 2) the extent of the prosecution's responsibility for the delay of trial; and 3) the strength of the evidence upon which the detention was based." *Id.*

The court first considers the length of detention. Isaiah and Lev first appeared on the charges against them on August 24, 2018. By the time that the trial commences on July 29, 2019, they will have been detained for just over 11 months. Although this is a significant period of detention, no Tenth Circuit case has held that a similar period of detention violates due process. Indeed, a defendant's 34-month detention did not violate due process where much of the delay was caused by defense motions. *United States v. Peters*, 28 F.3d 114 (10th Cir. 1994) (unpublished

15

table decision); *see also United States v. Hudak*, 77 F. App'x 489 (10th Cir. 2003) (unpublished) (per curiam) (14-month detention did not violate due process); *United States v. Millan*, 4 F.3d 1038, 1044, 1049 (2d Cir. 1993) (cited by *Cos*, 198 F. App'x at 732) (holding that pretrial detention of up to 31 months did not violate due process). And other district courts have also held that pretrial detention periods that exceeded 11 months did not require release prior to trial. *United States v. Young*, No. 2:12-CR-502-TC-DBP, 2013 WL 12131300, at *8 (D. Utah Aug. 27, 2013) (16 months of pretrial detention did not violate due process); *United States v. Aispuro-Haros*, No. CR 11-2293 JH, 2012 WL 13070088, at *6 (D.N.M. Dec. 10, 2012) (same). Thus, the length of Isaiah and Lev's detention weighs against a finding of a due process violation.

The court next considers the extent to which the prosecution contributed to the delay of the trial. Isaiah and Lev argue that the prosecution is primarily responsible for the delay. They assert that the Government extended the proceedings by prematurely arresting them and then filing superseding indictments that added new defendants and new charges. The court disagrees.

The Government filed its initial sealed indictment on August 1, 2018. The court finds, however, that the Government never intended to go to trial on the initial indictment. The Government filed the indictment only to preserve certain charges against statute of limitations defenses. It was only after Jacob and his family boarded a flight to Turkey on short notice on August 23, 2018 that the Government's hand was forced. Believing that Jacob was fleeing the country, the Government arrested Jacob, Isaiah, and Lev. Thus, it was Jacob's suspicious activities that determined the timing of the Government's arrests.

Isaiah and Lev also complain about the delay in filing the second superseding indictment, which was unsealed on January 22, 2019. But the court finds that much of this delay was caused by assertions of attorney-client privilege by many of the entities that were the subject of search

warrants issued in this case. Because of these privilege disputes with the filter team, the prosecution team did not receive the paper documents seized pursuant to search warrants until after the first superseding indictment was filed on November 20, 2018. The prosecution team's delay in receiving documents relevant to the charges made by the Government also delayed the second superseding indictment.

The court finds, therefore, that the Government was not responsible for the delay of trial. As noted above, Isaiah and Lev acquiesced to the delays until the February 11, 2019 trial date. Subsequent delays were driven by the complexity of the case and delays requested by Jacob, Rachel, and Sally to prepare for trial. And Lev's counsel also contributed to the need for a continuance of the May 13, 2019 trial date because he accepted a new client with a final trial date that conflicted with this date.

Finally, the court examines the strength of the evidence upon which detention is based. As the court noted in its previous detention orders, this evidence is compelling. When this court reviewed Isaiah's detention status, it found that Isaiah's false affidavit submitted to a court in the Southern District of New York, his participation in a scheme to intimidate witnesses and bribe officials, and his access to millions of dollars in Turkey were all reasons to believe that no combination of conditions would reasonably assure his appearance for trial. [Docket 58]. The court also found that Lev has access to private aircraft, that he has entered and exited the United States without creating a record with Customs and Border Protection in the past, and that he has substantial assets in Turkey and strong ties to that country. [Docket 91]. Because Lev is facing the prospect of a long prison sentence, the court concluded that he has both the motive and the ability to abscond to a country that presently refuses to extradite to the United States.

In weighing the three *Cos* factors, the court finds that none of the three factors favor a finding that Isaiah and Lev's pretrial detention until a July 29, 2019 trial violates the Due Process Clause of the Constitution. The court concludes, therefore, that due process concerns do not require their release from pretrial detention.

## III.   REVIEW OF DETENTION UNDER 18 U.S.C. § 3164

Finally, the court ordered the detained defendants to brief the issue of whether it should release the defendants from pretrial detention under the Bail Reform Act of 1984, 18 U.S.C. § 3164. The relevant portion of this statute provides:

> The trial of any person [detained solely because he or she is awaiting trial] shall commence not later than ninety days following the beginning of such continuous detention or designation of high risk by the attorney for the Government. The periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section.

The statute further states that the running of this 90-day period, excluding authorized periods of delay for the reasons stated in § 3161(h), triggers "the automatic review by the court of the conditions of release." § 3164(c). *See United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986) ("[F]ailure to commence trial within the time limits of § 3164 results in automatic review of the conditions of release and perhaps release on bail.").

In a previous order, the court excluded time between August 24, 2018 and December 5, 2018 from this 90-day calculation for the detained defendants because, until early December, the detained defendants had acquiesced in continuances of the trial date without objection. The question now before the court is whether to exclude time between December 5, 2018 and July 29, 2019 from the detained defendants' 90-day detention review calculation.

18

A.  *Jacob*

The court easily finds that time should be excluded as to Jacob. He stipulated to both the continuance of the February 11, 2019 trial date and the current motion to continue the May 13, 2019 trial date to late July. Because these continuances were granted pursuant to the ends-of-justice provision of § 3161(h)(7)(A), the time is also excludable from the 90-day clock under § 3164(a).

B.  *Isaiah and Lev*

The court next turns to the question of whether to exclude time from the 90-day period of time allowed under § 3164 as to Isaiah and Lev. In this order and the court's previous order, [Docket 116], the court has excluded time between December 5, 2018 and July 29, 2019 from the 70-day speedy trial calculation pursuant to the reasonableness analysis conducted pursuant to § 3161(h)(6). The analysis of whether this period of time should also be excluded from the 90-day period under § 3164 mimics the analysis prescribed by the Tenth Circuit for excluding time from the 70-day calculation under § 3161(h)(6), save for one wrinkle. In *Theron*, 782 F.2d at 1516, the Tenth Circuit held that

> [t]o give effect to both [§ 3161 and § 3164], . . . the 'reasonable delay' exclusion of § 3161[(6)] has a different meaning and application under § 3164 than under § 3161, because of the different context in which it arises. What might be reasonable delay to accommodate conservation of public resources by trying codefendants together as an exception to the Speedy Trial Act's seventy-day limit might become unreasonable when a defendant is incarcerated for more than ninety days without a chance to make bail. Thus it is possible, as here, that subsection (h)[(6)] will not require dismissal of the indictment but will require that the defendant be tried or released.

Thus, the Tenth Circuit has indicated that there is some undefinable difference between a § 3161(h)(6) analysis and a § 3164 analysis that incorporates the § 3161(h)(6) standard. The

*Theron* court, however, acknowledged that it was a concern over due process that animated its interpretation of the standard for excluding time under § 3164:

> Recently two other courts have suggested that extended pretrial detention may violate due process. Further, two decisions have found due process violations and have ordered defendants released on bail because of the length of their pretrial detention. [citing two cases from the Northern District of New York ruling that six-months of pretrial detention violated due process]. There is a strong preference for construing a statute to avoid constitutional questions. . . . Congress provided no guidelines for a maximum time except the statutory admonition that the period be "reasonable" and our own notions of constitutional due process limits, informed by the writings of our judicial colleagues who have been forced to think about the issue.

*Theron*, 782 F.2d at 1516 (citations omitted). Based upon these notions of constitutional due process limitations, the *Theron* court concluded that a defendant who had been detained for more than four months must be tried or released within 30 days of the Tenth Circuit's opinion. *Id.* at 1516–17. *Theron* explicitly clarified, however, that the court did "not establish a bright line . . . ; rather we decide only the case before us." *Id.* at 1516.

Under *Theron* and § 3164, this court must decide whether Isaiah and Lev are entitled to mandatory review of their conditions of release. In other words, the court must decide whether the time that the court has excluded from the 70-day speedy trial calculation under § 3161(h)(6) should also be excluded from the 90-day calculation under § 3164. The court first decides that the time between December 5, 2018 and February 11, 2019 should be excluded under § 3164. Isaiah and Lev acquiesced to orders excluding all time from their initial appearance until December 5, 2018, leaving the entire 70-days remaining on the speedy trial clock. By conceding to the exclusion of time until December 5, 2018, Isaiah and Lev also waived any statutory right to a trial within 70 days of this date, or about February 11, 2019. Indeed, when the court set the February 11, 2019

trial date in early October 2018, neither Isaiah nor Lev objected. Isaiah and Lev only objected to a continuance of the February 11, 2019 trial date. Because Isaiah and Lev did not zealously pursue a trial before this date, the three *Vogl* factors weigh strongly in favor of excluding time between December 5, 2018 and February 11, 2019 from the 90-day clock. *See Theron*, 782 F.2d at 1516. ("Congress obviously contemplated some extension of the ninety-day limit on incarceration before trial when it incorporated the § 3161(h) exclusions into § 3164. . . . Delays, for example, that the defendant caused would not raise a problem.").

Next, the court determines that that the time between February 11, 2019 and July 29, 2019—about five-and-a-half months—should also be excluded from Isaiah and Lev's § 3164 calculation. As the court noted above, although Isaiah and Lev at times opposed continuances of the trial date, this opposition was not consistently zealous. Isaiah has conceded that a continuance until the end of July is necessary. And Lev's counsel has accepted outside representation that prevents the currently scheduled May 13, 2019 trial from proceeding. Moreover, the third *Vogl* factor—the policy favoring a single trial for multiple defendants—weighs strongly in favor of pretrial detention. When weighing the *Vogl* factors in the unique context of § 3164, the court concludes that the time between February 11, 2019 and July 25, 2019 should be excluded from the 90-day calculation. This five-and-a-half-month period is just two weeks longer than the five-month period that the *Theron* court found to be the outer limit of pretrial detention under the facts of that case. *See Theron*, 782 F.2d at 1516 (holding that a defendant who had been detained for more than four months had to be tried or released within 30 days). Additionally, Isaiah and Lev were less zealous in their pursuit of a speedy trial than the *Theron* defendant, who "took no steps to delay trial; he sought immediate trial and announced he was ready to defend." *Id.*

Finally, the due process concerns that underpinned the *Theron* court's § 3164 analysis militate in favor of the exclusion of time in this case. In support of its § 3164 analysis, the *Theron* court cited two district court rulings from the Norther District of New York that suggest that detention of around six months may violate due process rights. *Id.* (citing *United States v. Lofranco*, 620 F. Supp. 1324, 1326 (N.D.N.Y. 1985) and *United States v. Hall*, 651 F. Supp. 13, 16 (N.D.N.Y. 1985)). But since the *Theron* opinion, the Tenth Circuit has clarified that due process limitations on pretrial detention are case specific and detention for as long as 34 months may not violate this constitutional protection. *United States v. Peters*, 28 F.3d 114 (10th Cir. 1994) (unpublished table decision); *see also United States v. Hudak*, 77 F. App'x 489 (10th Cir. 2003) (unpublished) (per curiam) (14-month detention did not violate due process); *United States v. Millan*, 4 F.3d 1038, 1044, 1049 (2d Cir. 1993) (cited by *United States v. Cos*, 198 F. App'x 727, 732 (10th Cir. 2006)) (holding that pretrial detention of up to 31 months did not violate due process). These more recent cases, therefore, call into question the six-month due process limit that informed the *Theron* opinion.

More importantly, this court has performed an independent due process analysis of  the length of Isaiah and Lev's pretrial detention by weighing the three *Cos* factors. The court has found that none of these factors weighed in favor of requiring release under the Due Process Clause. Because there is no indication that Isaiah and Lev are approaching the constitutional limitations of their pretrial detention, the due process concerns that animated the *Theron* opinion are not relevant here. The court, therefore, concludes that the time excluded from the 70-day speedy trial clock pursuant to § 3161(h)(6) should also be excluded under § 3164.

In short, the court determines that the time between December 5, 2018 and July 29, 2019 should be excluded from Isaiah and Lev's 90-day calculation under § 3164. Thus, there is no cause for review of their detention under this statute.

## CONCLUSION AND ORDER

For the above reasons, the court ORDERS as follows:

1)  Rachel and Sally's motion to continue the trial is GRANTED. [Docket 185]. A firm trial date is set for July 29, 2019.

2) The motions for review of detention filed by Isaiah and Lev are DENIED. [Docket 189, 208, 226].

3) The court finds that Jacob, Isiah, and Lev are not entitled to review of their detention status under 18 U.S.C. § 3164.

Signed March 14, 2019.

BY THE COURT

_____

Jill N. Parrish
United States District Court Judge