IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br>v.<br><br>JACOB O. KINGSTON,<br><br>         Defendant. | **ORDER DENYING DEFENDANT'S MOTION FOR REVIEW OF DETENTION**<br><br>Case No. 2:18-cr-365<br><br>District Judge Jill N. Parrish |

Defendant Jacob O. Kingston is charged with 41 counts emanating from an alleged scheme to defraud the United States of more than $1 billion in refundable tax credits, the concealment and/or laundering of the scheme's proceeds, and conduct designed to obstruct the investigative process into the scheme.

Mr. Kingston was arrested at the Salt Lake City airport pursuant to a warrant on August 23, 2018 after the government concluded that he, his wife (and co-defendant), and four of his children were attempting to flee to Turkey. The government moved to detain Mr. Kingston on August 24, 2018 (ECF No. 9), and Magistrate Judge Wells ordered him detained pending trial on September 17, 2018 (ECF No. 56). On January 4, 2019, Mr. Kingston moved Magistrate Judge Wells to review that detention order on the basis of proposed conditions of pretrial release. (ECF No. 122). After a hearing, Magistrate Judge Wells denied the motion on February 8, 2019, finding that the government had met its burden to prove that no condition or combination of conditions could ameliorate the risk of flight and danger to the community posed by Mr. Kingston's pretrial release. (ECF No. 180)

On February 25, 2019, Mr. Kingston appealed Magistrate Judge Wells' detention order to this court. (ECF No. 206). The government responded in opposition on March 11, 2019. (ECF No. 229). The court held a detention hearing on April 2, 2019. On the basis of that hearing, the hearing before Magistrate Judge Wells, the parties' memoranda and exhibits filed in connection with both motions for review of detention, and a review of relevant law, the court finds that the government has met its burden to establish that no condition or combination of conditions of pretrial release will assure that Mr. Kingston does not pose a serious risk of flight and a danger to the community.

### A. STANDARD OF REVIEW

The court considers defendant's motion for a review of Magistrate Judge Wells' detention order under 28 U.S.C. § 3145(b) and DUCrimR 57-16(a)(1).[1] Accordingly, the court conducts a de novo review of the government's request for detention without deference to Magistrate Judge Wells' findings or conclusions.[2]

### B. STANDARD FOR THE RELEASE OR DETENTION OF A DEFENDANT PENDING TRIAL

When, as here, a case involves a serious risk that a defendant will flee or "attempt to obstruct justice, or threaten, injure, or intimidate a prospective witness[,]" a court should hold a hearing to determine whether there are conditions of release that will reasonably assure the defendant's appearance at trial. In making this determination, a court is to consider the following factors:

(1) the nature and circumstances of the offense[s] charged . . . ;
(2) the weight of the evidence against the person;

---

[1] "Any party is entitled to seek review of a magistrate judge's order releasing or detaining a defendant . . . ."

[2] DUCrimR 57-16(a)(1) (providing for de novo review of detention orders); *see also United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003) (holding that district court's review under subsection (a) of §3145 is de novo).

>    (3) the history and characteristics of the person, including—
>        (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>        (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.[3]

To obtain detention, the government must establish either (1) that the defendant poses a "serious risk of flight," which must be proved by a preponderance of the evidence; or (2) that the defendant presents a danger to the community, which must be proved by clear and convincing evidence.[4]

## I.    ANALYSIS

A consideration of the statutory factors reveals that the government has met its burden to establish both that Mr. Kingston poses a serious risk of flight and a danger to the community, neither of which can be ameliorated by any combination of conditions.[5]

First, the court considers the nature and circumstances of the offense charged. The court cannot overstate the seriousness of the alleged conduct. Mr. Kingston is charged with 41 counts related to a scheme to defraud the United States of more than $1 billion (of which $511 million is alleged to have been procured), conceal and/or launder the scheme's proceeds, and subsequently obstruct—and conspire to obstruct—justice by destroying evidence in advance of the execution

---

[3] 18 U.S.C. § 3142(g).

[4] *Cisneros*, 328 F.3d at 616.

[5] Conditions proposed by Mr. Kingston include a $10 million bond co-signed by 45 members of his family, "full home incarceration at his home," GPS device monitoring, passport surrender, and a condition that Mr. Kingston not contact any witness in the case. (ECF No. 206 at 3).

of search warrants, attempting to bribe government officials, and attempting to intimidate grand jury witnesses by physical force or threats of physical force. The government submits that if convicted, the sentencing guidelines would suggest that Mr. Kingston be sentenced to life in prison.

Second, the court must consider the weight of the evidence against the person. Mr. Kingston argues that the government has provided little evidence to support its core mail fraud conspiracy charge, and that the myriad concealment/laundering charges cannot be sustained absent the underlying conspiracy. The government suggests that this argument is a ruse to force the government to preview its case in advance of trial.

The government cannot be expected to do in a part-day hearing what it anticipates will take six weeks to do at trial, and the court finds that the government has set forth strong evidence with respect to counts 44 and 46 (conspiracy to commit obstruction of justice and witness tampering), which counts do not depend on the government's ability to make out its mail fraud conspiracy. Those counts each carry a statutory maximum of thirty years in prison.

Third, the court considers the history and characteristics of Mr. Kingston, a factor that weighs heavily in favor of detention. Relevant to both risk of flight and danger to the community, Mr. Kingston has proven himself eminently willing to defraud, obstruct, or otherwise thwart implements of the justice system in pursuit of his own ends. Indeed, as this court has already concluded vis-à-vis his brother, Isaiah, Mr. Kingston perpetrated a fraud on the district court for the Southern District of New York in an attempt to hide his vast Turkish assets from his opponent in the face of likely defeat in a civil contract action. *See* ECF No. 229, Exs. J-3, J-4, and J-5. Together with Mr. Kingston's striking, multifaceted scheme to prevent the materialization of the indictment he now faces (discussed below), these acts evince a lack of

4

respect for the rule of law. As a result, the court has very little confidence that Mr. Kingston will faithfully comply with any conditions imposed.

As to risk of flight alone, the court further finds that Mr. Kingston has caused at least $134 million to be wired to the country of Turkey, and that whether or not those funds are liquid, his holdings in that country provide a strong incentive—in the face of a potential life sentence—to flee to Turkey, a country that "has not been a reliable [extradition] partner for several years." ECF No. 225-1 at 3. The court further finds, by a preponderance of the evidence, that Mr. Kingston was planning to flee to Turkey on August 23, 2018 with his wife and four of his children. Although it appears that Mr. Kingston regularly traveled to Turkey to manage his extensive holdings in that country, the court simply cannot credit his representation that the August 23, 2018 trip was an extension of this practice because of the presence of distinguishing facts: that Mr. Kingston has himself represented that the trip was, in part, a honeymoon for his son, that he spent more than $24,000 on the tickets purchased a mere three days before the flight, that he intended that his family accompany him on a trip to a country regularly gripped by civil unrest such that the State Department urges American citizens to "reconsider travel" there, and the timing of the trip in relation to the increasingly advanced stage of an investigation of which he was generally aware. When combined with his considerable holdings in Turkey and the government's representation that multiple sources have reported Mr. Kingston's intent to flee to Turkey, the best inference from the circumstances of the August 23, 2018 trip is that Mr. Kingston was indeed attempting to flee with his family.

Finally, the court considers the danger to the community posed by Mr. Kingston's pretrial release. The government's evidence establishes that Mr. Kingston has already undertaken certain of these acts. Specifically, the government introduced a text exchange that demonstrates that Mr.

Kingston intended to pay an intermediary to cause (1) the destruction of evidence possessed by the government; (2) the bribing of law enforcement officials; (3) the obstruction of grand jury proceedings; and (4) the intimidation of actual or potential grand jury witnesses by physical force or threats of physical force. *See* ECF No. 229, Exs. E, U.

The court struggles to conceive of more probative evidence of a risk of danger to the community than that adduced here. Notably, the danger posed by Mr. Kingston is the type with which the bail statute is principally concerned. *See* 18 U.S.C. § 3142(f)(2)(B) (triggering a detention hearing upon motion by the government when a case involves "a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror").

To respond, as Mr. Kingston does, that this conduct only occurred after the intermediary stated that Mr. Kingston's family was facing legal jeopardy does not begin to mount a convincing defense to this conduct. Mr. Kingston might have a marginally better argument that he was extorted if the intermediary had threatened to personally inflict harm on him or his family unless the intermediary was employed to obstruct justice. But the intermediary merely represented that the government possessed evidence implicating him and members of his family, offering to forestall the transformation of that evidence into an indictment. And far from the unwilling extortion target Mr. Kingston now purports himself to be, the text exchanges make clear that he welcomed the opportunity to obstruct the investigation (which he often directed— *e.g.*, after being informed that an individual was providing documents to IRS agents, Mr. Kingston replied: "Let's get [the enforcer] up his ass. See how he likes that[.]"), and that he felt indebted to the intermediary for facilitating it (*e.g.*, "You have no idea how much I owe you. and

6

[sic] how much I appreciate what your [sic] doing. . . . I want to tell you again you are doing the lords [sic] work."). *See* ECF No. 229, Exs. U, E.

Finally, the intermediary's mixed and somewhat uncertain history with defendants and the government does absolutely nothing to overcome Mr. Kingston's unambiguous manifestations of intent to accomplish all of the obstructive conduct outlined above.

On this evidence alone, the government has met its burden to prove by clear and convincing evidence that there is no combination of conditions of pretrial release that can assure that Mr. Kingston's pretrial release will not pose a danger to the community.

## II.  ORDER

For the reasons articulated, the court finds that the government has met its burden to prove that no combination of conditions of pretrial release will reasonably assure that Mr. Kingston will not pose a serious risk of flight or a danger to the community. Thus, Mr. Kingston's motion to review Magistrate Judge Wells' detention order (ECF No. 206) is **DENIED.** Jacob O. Kingston is ordered **DETAINED PENDING TRIAL.**

Signed April 9, 2019

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge