MARC A. AGNIFILO (NY 2476182)
TENY R. GERAGOS (NY 5517693)
**BRAFMAN & ASSOCIATES, P.C.**
767 Third Avenue, Floor 26
New York, NY 10017-2023
Telephone: (212) 750-7800
Facsimile: (212) 750-3906
Email: marc@braflaw.com
       tgeragos@braflaw.com

WALTER F. BUGDEN, JR. (480)
**BUGDEN & ISAACSON, L.L.C.**
445 East 200 South, Suite 150
Salt Lake City, UT  84111
Telephone:  (801) 467-1700
Facsimile:  (801) 746-8600
Email:  Wally@bilaw.net

Attorneys for Defendant

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH / CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **OBJECTION TO TRIAL ORDER** |
| vs. | Case No.  2:18-cr-00365-JNP-BCW |
| JACOB ORTELL KINGSTON, | District Judge Jill N. Parrish |
| | Magistrate Judge Brook C. Wells |
| Defendant. | |

Jacob Ortell Kingston, by and through counsel, hereby provides the following objection to the Court's Trial Order. (Doc 256.)

Counsel is in receipt of, and thanks the Court for the Trial Order dated April 5, 2019. However, on behalf of Mr. Kingston, we wish to humbly raise objections to one aspect of the

Trial Order, specifically that part setting forth that the Government shall have 120 trial hours to complete its case and each defendant 24 trial hours to complete their respective cases. While each counsel shares the Court's view that this very complex and serious case should be completed with efficiency and without undue delay, we believe that the time limits set by the Court are, most respectfully, problematic for several reasons.

    1.    <u>Time Limits Cannot Be Set This Far in Advance of Trial</u>

As an initial matter, the defense asserts that we are simply too far from the trial, both in terms of time and in terms of our knowledge of what the Government's evidence involves, for any party, and certainly the defense, to know how long the trial will take to complete, and how long each party will need to bring forth the facts required for fair consideration by the jury. By way of an example, the Court will recall that the Government's initial assessment of the length of the trial was four or five weeks, even though such was in contemplation of the five-defendant case we now have. It was the defense that first stated to the court that the trial would be considerably longer than that based on the number of potential cooperating witnesses, each of whom would offer highly important testimony and accordingly would be cross examined for several days. The point of course is not that any party predicted incorrectly, but rather that predictions of trial length are inherently unreliable months before the trial begins and subject to change as the trial draws near.

The Government subsequently revised its estimate based on conversations with defense counsel, and presumably its own re-assessment of its direct case. (<u>See</u> Doc. 198, Position of the U.S. on Length of Trial.) The Government's revised schedule anticipated an eight-week trial which "includes time for defense cross-examination and selection of a jury." (<u>Id.</u> at 1.) Even the Government's proposed time estimate "is based upon an expectation that as to each witness, the

total length combined of defendant's cross-examinations will not exceed the length of direct examination." (Id. at 3.)

The Government has indicated on the record that it may call "anywhere between 50 and 70 witnesses in this case." (4/2/19 Tr. at 48.) Many of these witnesses will be highly substantive and will discuss in detail their own roles in a sprawling, complex tax fraud scheme and will also, we believe falsely so, implicate Jacob Kingston and possibly other defendants in this scheme as well. This sort of testimony will take a great deal of time for the Government to develop on its direct examination and, as even the Government anticipates, an equal amount of time for the defense to sufficiently challenge it on cross examination. We also do not know how many of this type of witnesses the Government will call. Indeed, at this early stage the Government may likewise not know how many it will call. If the Government calls, for instance, five such witnesses, this is a vastly shorter trial than if the Government calls ten or more, which it may choose to do. Also, the cross examinations of these witnesses would vary in length based on the direct examination.

As a related point, without the Jencks Act material and marked trial exhibits, the defense is yet unaware of the nature, the content or the length of the Government's case. We certainly have broad notions of what the Government's direct case will involve but we lack any specificity in terms of who the witnesses will be or what they will say about the different defendants. We also do not yet know what documentary evidence the Government will seek to admit by way of trial exhibits or what cross examination, if any, would be related to such documentary evidence. Moreover, based on the Government's choice of witnesses and documents, the presentation of evidence as part of the defendants' direct cases can vary from being highly streamlined to being more fulsome in nature.

3

In conclusion, our first objection to the Court's Trial Order relating to the time allotted to the parties is that at this juncture of the proceedings it is impossible to predict how long the case will take to responsibly try and how much time each defendant will take to responsibly advance the facts necessary as part of each defendant's defense to the very serious allegations.

2.   The Time Limits Proposed Impede on Defendants' Right to a Fair Trial

Our second objection is that we contend in a criminal case, it is most respectfully a violation of the defendant's constitutional rights to impose strict time limits on a criminal defendant over the course of a whole trial, and it is especially problematic this far in advance of trial and where, as here, the parties have shown a willingness and ability to reach consensus on many central issues related to the pretrial and trial proceedings. There is no doubt that a trial judge retains an inherent right to take appropriate measures to ensure that a trial runs efficiently and orderly. However, in any criminal trial, much less one where the Government has already stated on the record that it will seek a life sentence in the event of conviction for at least one of the defendants, any effort to abridge a defendant's ability to fully challenge the Government's evidence and to offer evidence on the defendant's behalf, takes on a constitutional dimension.

In *US v. Schneider*, 594 F. 3d 1219 (10th Cir 2010) the United States filed an interlocutory appeal after the district court limited the time for the Government to present its case. The parties estimated the case would take eight weeks. Without consulting the parties, and over their objections, the District Court allotted each side 10 days, including cross examination. The 10th Circuit found that the district court is "somewhat of an expert in the time that is required to conduct litigation," *Id.* at 1228 (citing *Case v. Unified Schl. Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1256 (10th Cir. 1998), but nonetheless:

4

> [I]t may be an abuse of the trial court's discretion to exclude probative, non-cumulative evidence simply because its introduction will cause delay, and any time limits formulated in advance of trial must be fashioned with this in mind. Such limits should be sufficiently flexible to accommodate adjustment if it appears during trial that the court's initial assessment was too restrictive.

*Id.* (citing *Life Plus*, 317 F.3d at 807) (quotations omitted). The Court explained that "'[w]hen there is an objection to the exclusion of evidence as a result of time limits, the record must show a proper basis or explanation by the district court for the exclusion.'" *Id.* citing (*Harris v. Chand*, 506 F.3d 1135, 1141 (8th Cir.2007)).

The *Schneider* court recognized that the district court must be aware of both "the government's need to present its case" and "the potential for serious constitutional violations if unreasonable limitations are imposed on the defendant's opportunity to defend against the charges." *Id.* Therefore, the pretrial order was vacated and the matter was remanded with the direction that the district court proceed in a manner that "would accord a fair opportunity for the government to present the entirety of its case and also provide the defendants adequate time to present their defense." *Id.* at 1229.

Here, in a case where Jacob Kingston is charged with nearly every count in the sprawling indictment, where the Government has stated they will ask for him to serve life in prison if convicted, and where the Government has proposed nearly a month and a half for their direct case, it is unconstitutional to provide Jacob Kingston only 24 hours to defend himself. Given the demonstrated willingness and ability of the parties to agree on issues impacting the nature and length of the trial, we believe the Court need not resort to the strict time limits in the Court's Order as way of ensuring the efficiency of the trial. Counsel in this case are highly experienced trial lawyers and are intimately aware of one of the cardinal rules in trying cases: do not waste the jury's and the court's time. Moreover, the parties have already shown that we can work

collaboratively together to both save time and remove thorny issues from the court's plate. The Court will recall that last week, the parties took time over the lunch break to agree upon a fairly comprehensive series of dates by which the parties also intend to reach agreements on the admissibility of exhibits, stipulations as to record custodians, and other matters which will streamline the trial.

    3.    Conclusion

We are asking the Court to rely on the collective good will of all counsel and on our proven ability to reach agreement on issues that will make the trial more efficient for all parties, including the Court. At this stage, it appears that the court's proposed time line for the trial as commencing on July 29, 2019 and ending on or about October 4, 2019 is realistic. However, this is an assessment that is made without the benefit of the Jencks Act material and without more specific conversations with the prosecution about other aspects of the trial that will impact on its duration. Again, and as is apparent from recent events, the prosecution and the defense have an open line of communication, and have an ongoing dialogue on matters including stipulations, agreed-upon admission of trial exhibits and other matters directly related to the length of the trial. We ask that Your Honor allow this process to continue and that the Court refrain from imposing time limits on the parties.

DATED this 11th day of April, 2019.

        Respectfully submitted,

        **Brafman & Associates, P.C.**

By:   /s/                   
     Marc A. Agnifilo, Esq., Of Counsel
     Teny R. Geragos, Esq.

        **Bugden & Isaacson, LLC**

By:   /s/                   
     Walter Bugden, Esq.

**Certificate of Service**

I certify that on the 4th day of January 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF electronic filing system, which will send notice of electronic filing to counsel of record in this case.

*/s/ Teny Rose Geragos*
TENY R. GERAGOS
