1              IN THE UNITED STATES DISTRICT COURT

2                       DISTRICT OF UTAH

3                       CENTRAL DIVISION

4

5    UNITED STATES OF AMERICA,      )

6              Plaintiff,           )

7    vs.                            )     Case No. 2:18-CR-365JNP

8    JACOB O. KINGSTON, et al.,     )

9              Defendants.          )

10   _____)

11

12

13            BEFORE THE HONORABLE BROOKE C. WELLS

14            ------------------------------------

15                      December 4, 2018

16

17            Arraignment and Status Conference

18

19      Transcript of Electronically Recorded Proceedings

20

21

22

23

24

25

```
 1                       A P P E A R A N C E S

 2

 3   For Plaintiff:            ARTHUR J. EWENCZYK
                               601 D Street, N.W.
 4                             Washington, D.C.

 5                             RICHARD M. ROLWING
                               303 Marconi Boulevard
 6                             Suite 200
                               Columbus, Ohio
 7
                               LESLIE A. GOEMAAT
 8                             601 D Street N.W.
                               Washington, D.C.
 9
     For Defendant:            MARC A. AGNIFILO
10   Jacob O. Kingston        TENY GERAGOS
                               767 Third Avenue
11                             Floor 26
                               New York, New York
12
                               WALTER BUGDEN
13                             445 East 200 South
                               Suite 150
14                             Salt Lake City, Utah

15   For Defendant:            SCOTT WILLIAMS
     Isaiah Kingston           43 East 400 South
16                             Salt Lake City, Utah

17   For Defendant:            MARK J. GERAGOS
     Lev Dermen                644 South Figuero Street
18                             Los Angeles, California

19

20

21

     Court Transcriber:        Ed Young
22                             351 South West Temple
                               Room 3.302
23                             Salt Lake City, Utah 84101-2180
                               801-328-3202
24                             ed_young@utd.uscourts.gov

25
```

```
 1   December 4, 2018                              10:00 a.m.
 2                    P R O C E E D I N G S
 3
 4        THE COURT:  Calling particularly United States of
 5   America versus Jacob Ortell Kingston, Isaiah Elden Kingston
 6   and Lev Aslan Dermen.  The United States is represented
 7   by -- if you will make your appearances, please.
 8        MS. GOEMATT:  Yes, Your Honor.  Good morning.
 9   Leslie Goematt, Arthur Ewenczyk and Richard Rolwing on
10   behalf of the United States.
11        THE COURT:  Thank you.
12        MR. GERAGOS:  Good morning, Your Honor.  Mark
13   Geragos, G-e-r-a-g-o-s, on behalf of Lev Dermen.
14        MR. AGNIFILO:  Good morning, Your Honor.  Mark
15   Agnifilo with Wally Bugden and Teny Geragos on behalf of
16   Jacob Kingston.  Good morning, Judge.
17        THE COURT:  Thank you.
18        MR. WILLIAMS:  Your Honor, Scott Williams on
19   behalf of Isaiah Kingston.
20        THE COURT:  Thank you.  All right.
21        Gentlemen, you are here before me this morning in
22   part because the government through the grand jury has
23   returned a document entitled first superseding indictment.
24        Counsel, will you please explain the differences
25   between the two indictments.
```

```
 1              MS. GOEMATT:  Yes, Your Honor.

 2              The first superseding indictment adds ten

 3    additional charges.  The additional charges to the first

 4    superseding indictment from the original indictment are

 5    first counts 10 through 14, which charge defendant Jacob

 6    Kingston with five violations of aiding and assisting in the

 7    filing of a false document, 26 U.S.C. 7206(2).

 8              Additionally, the first superseding indictment

 9    includes five additional money laundering counts, what is

10    commonly called expenditure money laundering in violation of

11    18 U.S.C. 1957.  These are counts 21 through 25 charging

12    both Jacob Kingston and Isaiah Kingston with five additional

13    counts of 18 U.S.C. 1957.

14              THE COURT:  All right.  Thank you.

15              One by one, Mr. Jacob Kingston, do you understand

16    the additional charges or the nature of the additional

17    charges that have been brought against you?

18              MR. JACOB KINGSTON:  Yes.

19              THE COURT:  All right.  And the same for

20    Mr. Isaiah Kingston.  Do you understand the nature of the

21    additional charges that you face?

22              MR. ISAIAH KINGSTON:  Yes, Your Honor.

23              THE COURT:  Mr. Dermen, likewise, do you

24    understand the nature of the additional charges that you

25    face?
```

```
1              MR. DERMEN:  Yes.

2              THE COURT:  All right.  Counsel, would you now

3    state the maximum possible penalties that accompany those

4    additional charges?

5              MS. GOEMATT:  Yes, Your Honor.

6              The maximum possible penalty for violations of

7    Title 26 Section 7206(2) is a maximum of three years in

8    prison and a maximum fine of $100,000 for each count.  That

9    is as to the new counts 10 through 14 as to defendant Jacob

10   Kingston.

11             The possible penalties, maximum possible penalties

12   for violations of Title 18 Section 1957 are a maximum of ten

13   years in prison per count, and a $250,000 fine per count,

14   three years of supervised release.  It is one year as to the

15   7606(2) charges.

16             By my calculation, Your Honor, the first

17   superseding indictment includes a total maximum statutory

18   prison sentence for Jacob Kingston of 202 years with the new

19   charges, a maximum statutory penalty of 80 years for Isaiah

20   Kingston, and a maximum statutory penalty of 80 years for

21   Lev Aslan Dermen, who does not face additional charges in

22   the first superseding indictment.

23             THE COURT:  Thank you.

24             Gentlemen, is there any one among you who does not

25   understand the maximum possible penalties that you now face
```

```
 1   as a result of the return of the first superseding
 2   indictment?  Anyone who does not?
 3           All right.  Seeing no hands, I find that each
 4   understands the maximum possible penalties they face.
 5           Would any counsel like the indictment read aloud?
 6           MR. WILLIAMS:  No, Your Honor
 7           MR. GERAGOS:  No.  Thank you, Your Honor.
 8           MR. AGNIFILO:  No.  Thank you, Your Honor.
 9           THE COURT:  All right.
10           Then, Mr. Jacob Kingston, will you please stand
11   alongside your counsel.  What are your pleas, sir, to the
12   additional counts contained in the first superseding
13   indictment?
14           MR. JACOB KINGSTON:  Not guilty.
15           THE COURT:  Your not guilty pleas will be
16   received, sir.  Thank you.  All right.
17           Likewise, with Mr. Isaiah Kingston, and
18   Mr. Williams is with him, sir, what are your pleas to the
19   additional counts contained in the first superseding
20   indictment?
21           MR. ISAIAH KINGSTON:  Not guilty.
22           THE COURT:  Your not guilty pleas will be
23   received.
24           Mr. Dermen, I understand there are no additional
25   counts; is that correct?
```

```
1              MR. GERAGOS:  That is correct.

2              THE COURT:  Then we need not take additional

3    pleas.

4              Thank you.  You may be seated.

5              What are the dates currently set?  How has

6    discovery been proceeding and what additional do we need to

7    address?

8              MR. GERAGOS:  By my understanding, and maybe I

9    will tee it up as to where I think we are, I believe Judge

10   Parrish, after we made the last appearance at the detention

11   hearing for Mr. Dermen, gathered up and did exclusions of

12   time and set a trial date of February 11th.  My

13   understanding as to where we are is that the government is

14   claiming that they are going to do yet another superseding

15   indictment.

16             The government also, as has been relayed to me,

17   claims that they are not going to have discovery done until

18   sometime in February.  The problem that I have got, and I

19   obviously will file motions, is we're not inclined at this

20   point to agree to any kind of a continuance of the trial

21   date.  We wanted discovery yesterday, so to speak.  We'll be

22   filing a motion in terms of contesting the government's

23   position that they are not going to give the discovery other

24   than two weeks before the -- the Jencks, at least, until two

25   weeks before because we think that is contrary to the custom
```

1    and practice in this district, number one, and, number two,

2    it makes the trial completely unwieldy and not able to

3    happen.

4         I want to tee it up and I want to be on the record

5    saying that we plan being ready for trial in February.  They

6    can indictment everybody or nobody, I don't care, but as you

7    have seen he is now sitting here and he has got a medical

8    condition, which I have asked for last time to be addressed,

9    which it hasn't been addressed.  He is in worse shape now.

10   He has an exploded vessel in his eyeball from the high blood

11   pressure.  He is not in the altitude -- we are not getting

12   the discovery and we still have a problem with the so-called

13   filter team, which has been sitting on this for two years

14   and basically has not been given any kind of a deadline.

15        All in all, everything that I have seen -- I am

16   still ready to go to trial in February.  He is still ready

17   to go to trial in February.  I know that the government

18   wants to take the position, and I don't want to speak for

19   them, but that they are not going to be ready until sometime

20   at the end of 2019.  Then they shouldn't have indicted my

21   client, because our position is give us what we are entitled

22   to and let's go to trial.  If you don't have a case, that is

23   fine, and we'll put it in front of the jury, but I do not

24   plan on having him sit here and stroke out in the interim

25   while they try and get their act together.

1        I will file the appropriate motions.  I would like

2   to walk out of here today with the Court setting some

3   deadlines for them, for the government to comply with

4   certain things, and I would like to keep it on a fairly

5   short leash or have Your Honor keep it on a fairly short

6   leash in terms of the management of discovery.

7        THE COURT:  Thank you.

8        MR. EWENCZYK:  Your Honor, Mr. Geragos is correct

9   as to the current date of trial that has been set based on

10  the first indictment.

11       With regard to discovery, pursuant to Your Honor's

12  office, the government turned over its first volume of

13  discovery, 420 gigabytes, representing over 800,000 files,

14  on October 5th of 2018.  The government then supplemented

15  that original production with a second production that was

16  sent out Friday and received by defense counsel this Monday

17  along with a letter.  That was 80 gigabytes and 35,000

18  files.  The letter outlines the select remaining items that

19  are outstanding.

20       The major items that remain outstanding have been

21  addressed -- I mean, have been raised by the government for

22  a while.  They were raised prior to the first status hearing

23  that we had before Your Honor, and that is that there are

24  two buckets of potential discovery that we need resolution

25  on.

1          The first bucket is -- this case involved a lot of

2    search warrants that were executed.  Part of the standard

3    protocol in executing a search warrant for electronically

4    stored information is that the government seizes either

5    devices or images of devices and then subsequently runs key

6    word searches to identify what items are actually relevant

7    under attachment B of the search warrant.

8          So the first bucket is this nonattachment B

9    relevant material that was seized and that did not respond

10   to any of the key words.  What to do with that?  The

11   government's position is that that is not -- it was seized

12   by the government and has not been reviewed by the

13   government and cannot be reviewed by the government under

14   the search warrant and under law and, therefore, the

15   government's position is that those items are not subject to

16   discovery, and the government would not turn those over

17   absent an order from the Court.

18          The second bucket of evidence is both to physical

19   documents that were seized and electronically stored

20   information that did respond to the key words and that is

21   attached to be relevant.  Those items contain potentially

22   privileged materials.  In October, prior to the hearing, the

23   government proposed entering into a clawback agreement with

24   the defense to be able to provide the entirety of these

25   materials to the defense, even though the D.O.J.'s filter

1    team has not yet had a chance to examine all of it for

2    privilege.  We have been turning over what has been deemed

3    non-privileged, but there are some items that the filter

4    team has not been able to resolve.

5            The defense indicated at the time that they needed

6    more time to discuss it among themselves and that has been

7    their position ever since.  When the government sent out

8    this letter on Friday, we attached a more fulsome

9    description of what that might look like and attached a

10   proposed clawback provision.  We understand that the defense

11   is now looking at that and we expect them to answer that at

12   some point soon.

13           The basic outline of that is that if the defense

14   agrees to the proposed clawback provision or some provision

15   similar to it, and I have a copy I will present if Your

16   Honor would like to look at it, but essentially saying that

17   these are materials that the filter team has not yet

18   examined.  They may contain privileged material.  If you

19   agree to be on the lookout for privileged materials, if you

20   agree to set aside any materials that you come across that

21   may be privileged, and to take reasonable efforts to reach

22   out to privilege holders, if you wish to use this material,

23   then we will agree to turn it over to you.  That is kind of

24   the status there.

25           And then the last item there is there are items

1    that have been designated as privileged or potentially

2    privileged by the filler team, the D.O.J. filter team, and

3    the government's position is that those items are not

4    subject to disclosure, given that they have been identified

5    as privileged or potentially privileged.

6           Now, with regard to Mr. Geragos's claim that it is

7    the government's position that discovery won't be done until

8    February -- until January -- February, what he is

9    referencing is that the government has stated that we will

10   be seeking a second superseding indictment that will include

11   many more charges and more defendants and we expect to

12   obtain that indictment in mid January.

13          THE COURT:  So you do intend on seeking a second

14   superseding indictment?

15          MR. EWENCZYK:  Correct, Your Honor.

16          THE COURT:  And you'll do that in February?

17          MR. EWENCZYK:  Mid January, Your Honor.

18          THE COURT:  Mid January.

19          MR. EWENCZYK:  Of course, as with any ongoing

20   investigation, there is discovery that arises from that

21   ongoing investigation, so the February date was -- once the

22   indictment is returned, the government just needs a little

23   time to load up that final discovery, process it and send it

24   to the defense, which is where this early February date came

25   in.  I mean, that is just a statement about the nature of

1    ongoing investigations, which is that they deal with

2    discovery.  The government has turned over substantial

3    discovery.  The discovery letter addresses the few items

4    that remain outstanding.  We have been in a posture of

5    waiting for the defense to respond to our proposals for

6    handling the two big buckets of information that I have

7    discussed earlier, the nonattachment B relevant materials

8    and the attachment B relevant materials that have not yet

9    been filtered by the filter team.

10          THE COURT:  Okay.  We have got to look at the

11   bottom lines here.

12          MR. GERAGOS:  The problem is from our standpoint,

13   and Mr. Dermen specifically, other than the time period

14   which by statute is excluded from the transportation from

15   the Central District to this District, where I did not fight

16   with the exclusion, we are ready to go.  We are ready to go

17   to trial now.  February 11th was set by Judge Parrish.

18   That's fine.  She excluded the time.  We didn't agree to it.

19   I am not agreeing to anything.  They can indict him.  They

20   can indict his dog for all I care.  I don't care.  We are

21   ready to go to trial now.  We were ready to go to trial

22   yesterday.  I just want the appropriate Jencks Act discovery

23   and we're ready to go to trial.

24          I believe that the reason that they are doing this

25   is that they -- I will say it so it is on the record, they

1    are serially indicting because they don't have enough time.

2    They are not ready.  They are piecemealing this out because

3    this is part of the fact that they were not ready to go.

4    That would be fine and dandy if the three of them were not

5    sitting in custody.  My client is in custody.  I don't want

6    to wait for some apocryphal superseding indictment.  I want

7    to go to trial.  I want to go to trial now.

8            I don't see, based on everything that they have

9    turned over -- in fact, it is also comical the discovery

10   that has been turned over.  They are turning over material

11   that I have had for eight years, because I have represented

12   Mr. Dermen for in excess of 15 years.  They are turning over

13   material that was actually prepared by my office.  So this

14   is nothing but a stall tactic.  I think my client

15   specifically is caught up as collateral damage in what is a

16   different investigation.  For him to be sitting here while

17   they say that they are going to supersede again in January,

18   mid-January -- mind you, I was sitting at a podium like this

19   in this courthouse when they said they were going to

20   supersede the first time and bring charges against him in

21   order to get Her Honor, Judge Parrish, not to grant him bail

22   in the first place.

23           I want to be crystal clear.  We are ready to go.

24   We don't have to wait for February.  I can try this case

25   starting the end of this month or in February.

```
 1              THE COURT:  That is not going to happen.  That
 2    trial date has been set.
 3              Now, I want to know from the government when will
 4    discovery be complete?
 5              MR. EWENCZYK:  Well, Your Honor, as I mentioned,
 6    given that there is this ongoing investigation, the
 7    government expects to have discovery complete with relation
 8    to this ongoing investigation in early February, which is
 9    the time that we need to turn around stuff that gets
10    disclosed.
11              THE COURT:  What about going to trial on what you
12    have?
13              MR. EWENCZYK:  You mean based on the --
14              THE COURT:  On the charges that are now --
15              MR. ROLWING:  Yes, Your Honor.  Rich Rolwing for
16    the government.
17              These three gentlemen are detained --
18              THE COURT:  Yes.
19              MR. ROLWING:  -- because they are a flight risk
20    and their safety and their danger to the community, in part,
21    for Mr. Isaiah Kingston.  They were planning to flee to
22    Turkey with the money that they stole from the government,
23    as we presented in all of the detention hearings, and that
24    is why they are detained.  We brought substantive defenses
25    that were supported by the evidence that we had gathered at
```

1    the time in order to be able to prevent their flight to

2    Turkey with the proceeds of their crime.

3           We continue this investigation.  We are receiving,

4    pursuant to grand jury subpoenas that are lawfully issued by

5    this grand jury that is investigating their conduct, every

6    week new evidence.  We are processing it and analyzing it,

7    Bates'g it and producing it.  That will continue.  We have

8    from the very start informed the defense counsel and the

9    Court that we are seeking to bring a full panoply of charges

10   that will hold them responsible for the entirety of their

11   criminal conduct as it relates to this biodiesel tax fraud

12   and are moving forward in that direction.

13          We originally hoped to do it by the end of the

14   calendar year.  I have now informed defense counsel today it

15   is going to be mid January, a couple of weeks after the end

16   of the calendar year, and we intend to meet that date.  We

17   have informed Judge Parrish that there is going to be an

18   effect on the Speedy Trial Act time when the superseding

19   indictment is returned with the breadth of charges that we

20   intend to bring.

21          Once this grand jury completes its investigation

22   we will have a new speedy trial computation.  At that time

23   we believe that will be the final charging instrument that

24   relates to the biodiesel tax fraud these three gentlemen and

25   their coconspirators who will be charged with them,

1    committed throughout the course of 2010 through 2016, and it

2    is at that time that we will finalize the final production

3    of the discovery that we're continuing to amass every week

4    during the ongoing nature of this criminal investigation.

5            THE COURT:  Is it correct that some of that

6    information was provided originally by Mr. Geragos?

7            MR. ROLWING:  He must be referring to -- I don't

8    know what Mr. Geragos often refers to.  There is certainly

9    material that we have obtained through grand jury subpoena

10   and other witnesses that relates to Mr. Dermen and his

11   previous involvement with Mr. Geragos, but that is a minor

12   amount of the discovery.  The bulk of the discovery deals

13   with the biodiesel tax fraud conduct of these three

14   gentlemen and it has been produced.  The bulk of what we

15   have in our possession today, but for the last few weeks of

16   things that we have just received, has already been

17   produced.

18           What Mr. Geragos is complaining about is the

19   Jencks witness statements and he will have those in time to

20   prepare adequately for the defense of his client when we

21   have a final trial date.  But I propose that this

22   February 11th trial date will not stay given a second

23   superseding indictment of full charges, many more against

24   Mr. Dermen for his conspiratorial conduct and his money

25   laundering conduct, and that we will have a -- we should get

1   a final trial date at that time when we arraign them on the

2   full panoply of charges.

3          That is all I can say.  This grand jury is working

4   expeditiously and it is a very complex investigation

5   involving a number of documents and a number of crimes and,

6   as you know, it involved a half a billion dollars that these

7   gentlemen stole from the government.  We have had

8   discussions about this with defense counsel today and in the

9   past, and we're fully informing them of our plans, which is

10  a little bit unusual, but that is why we are doing it, so

11  that the Court and we can all plan accordingly.

12         There is no need for Judge Parrish to have five

13  weeks set out in February on her calendar for a trial that

14  Mr. Geragos, although he claims he is ready to try this, has

15  not even looked at the evidence we have presented him in

16  discovery today, and we will be providing him much more

17  discovery related to the final charges we bring.  He can

18  claim all he wants that he is ready to try it tomorrow or

19  yesterday, but the reality is that he is in a charge -- he

20  will be charged with conspiracy with these gentlemen and

21  others and that will require a trial date that accommodates

22  all of the defendants involved in their conspiratorial

23  conduct.

24         THE COURT:  Do we need to vacate that February

25  date?

1          MR. ROLWING:  Well, we have had discussions with

2     defense counsel about that.  Of course some are on board

3     with the vacation and Mr. Geragos is not.  I suggest that

4     Mr. Geragos, if he has all these ideas about the injustices

5     his client is facing, that he should file motions instead of

6     just come and announce things in court and we'll respond to

7     the motions.  He has not filed anything and he should do so.

8          I also am told that one of the defendants will be

9     filing a motion to vacate that trial date, requesting a

10    continuance that makes sense, given what we have informed

11    them this investigation will result in.

12          THE COURT:  All right.

13          MR. WILLIAMS:  Judge, can I be heard, please?

14          That was a nice opening statement, but I don't

15    remember and I don't read in the Speedy Trial Act or

16    anywhere else in the law where we ask courts to consider

17    hypothetical court dates based on hypothetical charging

18    documents that haven't been filed.  I disagree with the

19    government's rendition in some respects to discovery, and I

20    do agree with Mr. Geragos's characterization that what I see

21    in the discovery process or lack of discovery and delays in

22    discovery are factious excuses that are designed to force a

23    continuance and not to actually comply with the discovery.

24          It is true that on 10-5 we received, after we

25    begged the government to give us in native format, if

1    necessary, discovery in this case so that we could begin to

2    prepare and sent them data storage devices to provide the

3    discovery on.  They sent back approximately -- I think

4    roughly 800 gigabytes of discovery and we optimized it and

5    have been working to prepare for trial based on that.  We

6    don't find any of that that could remotely be related to,

7    quote, a continuing investigation.

8            This case was essentially investigated starting in

9    2016, February of 2016 after a raid of seven or so

10   businesses and all the computers were seized and searched.

11   It is old.  These superseding indictments are based on

12   saving statutes of limitations and they are not based on new

13   investigations.  I completely disagree with the

14   characterization that this discovery couldn't have been

15   provided on day one of the indictment, which was August 8th.

16           The supplemental discovery, as you heard, came to

17   us yesterday.  We were told to provide a terabyte gig and

18   did so I think about ten days ago.  Again, we provide the

19   data storage.  It has 80 gigs on it.  We could have done a

20   thumb drive two months ago.  We don't know, it is true, what

21   is on it and it was provided yesterday together with some

22   other letters that have been referred to.

23           I need to turn to that, the two buckets that you

24   heard about.  One is called the nonattachment and

25   de-relevant, and in the letter there is a suggestion that

1    there is a need for on order from this Court to provide it.

2    I hereby move for providing the nonattachment, de-relevant

3    material.  I have told the government from the very first

4    communication I had with them that I will take discovery any

5    way you will give it, as soon as you can give it, in any

6    format you will give it.  I want it.  I have never in terms

7    of protective orders or specific discovery orders, I have

8    invited the government to draft them in their own terms and

9    they would likely be signed within the day.  I want

10   discovery.

11            THE COURT:  What is your bottom line, Mr.

12   Williams?

13            MR. WILLIAMS:  The bottom line is --

14            THE COURT:  Are you ready to go on February 12th?

15            MR. WILLIAMS:  This Court said consistent with the

16   Speedy Trial Act, set the trial date for my client, who has

17   been detained from day one, for October 29th.  That was

18   vacated without any input from us at a hearing where we were

19   not even present, by another magistrate judge.  Ultimately

20   the trial date that has been set was set without any input

21   from us and we are not moving to vacate it.  It is playing

22   into the government's charade to ask if someone is ready

23   when they are admitting they have not given us discovery but

24   we are ready.

25            THE COURT:  I hear you doing two things.  I hear

1    you complaining, perhaps legitimately so, complaining about

2    the lack of receipt of discovery, while at the same time

3    saying that you're going to be ready to go.

4         MR. WILLIAMS:  No, I'm saying we are not falling

5    for it and we are not joining in any kind of idea that we

6    are going to set out some court dates.  By the way, maybe

7    the government could be asked to demonstrate exactly what is

8    new and what hasn't been provided.  I'm not aware of the

9    discovery rule that says since any case might have a

10   superseding indictment because it is a continuing

11   investigation and we'll be in charge of deciding when the

12   timetable is for providing discovery.  I have never heard

13   that.

14        There is always the possibility of a superseding

15   indictment.  We don't proceed on the possibility of

16   superseding indictments and the threats of superseding

17   indictments.  Before this Court is an indictment.  My client

18   has lost 25 pounds in custody.  He may not make it to

19   February.  I don't know.  But he is in custody and we are

20   not agreeing to any delays and we are not falling for the

21   trap of, well, you can't say you're ready, Mr. Williams,

22   because you're also saying you don't have discovery.  If

23   they give discovery, and I don't think it was fair that it

24   was given that late, I will move the Court to exclude those

25   witnesses.  I will move for a trial remedy.  But it is

1   completely unfair for the government to come in with all

2   their horses and bulldoze into a detention hearing and then

3   put everybody in jail and then sit back and cavalierly talk

4   about how they will control the discovery schedule and they

5   will control the trial schedule.

6          THE COURT:  They didn't put them in jail.  I did.

7          MR. WILLIAMS:  Right.  But once you did, you put

8   the onus on the government to give them a trial in a timely

9   fashion and they are not doing it.

10         THE COURT:  All right.  So what is it that you

11  want?

12         MR. WILLIAMS:  I want to make the record I just

13  made.  I want discovery.  I agree to any orders they want in

14  order to release him.  The filter representations are false.

15  The filter team had the material as far back as April of

16  2018.  There is no need for the orders that they think are

17  necessary to produce them.  I want to make the record that

18  from day one I have said draft your own proposed orders with

19  relation to any discovery.  I will sign them so that I can

20  get the discovery.

21          I don't see why there isn't a deadline.  I don't

22  see why the deadline -- we're going to get this discovery

23  and we're going to show the Court that it could have been

24  provided two years ago.  This investigation was from

25  activity six to four years ago, allegedly.  It has all been

1    seized as of February of 2016.

2           Now, sure, they are going to bring more

3    tattletales or maybe they are going to turn more informant

4    witnesses as, you know, they prepare for trial.  That is

5    called rolling discovery.  That is called providing

6    discovery when you have it.  We don't wait until some big

7    superseding indictment and then provide discovery that has

8    existed for two years.  I don't see why they can't have an

9    order to provide everything that is in their possession that

10   they think is at all relevant material or probative on a

11   storage device by next week.  Ask them why they can't to

12   that?  We are not agreeing to vacating the trial date.

13          THE COURT:  Mr. Rolwing is jumping up.  Let me

14   hear from defense counsel, all of them, and then we'll allow

15   the government to respond.

16          MR. AGNIFILO:  Thank you, Your Honor.

17          Your Honor used the term bottom line twice today

18   and I think it is a day where we're looking for the bottom

19   line.  I have not yet made an application for release on

20   conditions for Mr. Jacob Kingston yet, because the two

21   codefendants, who I think the government would say were less

22   involved in the conduct, have not been released.  And the

23   fact that the defendants are all detained really is the crux

24   of the problem.

25          This is a tax case.  It is a complicated tax case.

1    It is a tax case with a lot of moving parts.  It is a tax

2    case with a fair amount of cooperating witnesses, but it is

3    a tax case.  I think the pressure, if you're feeling a

4    certain measure of, I don't know, of frustration or emotion

5    from the defense side, is because we feel like we are sort

6    of in a box.  We have a very complicated case, a case with

7    very serious consequences, and a case that is difficult to

8    prepare for because it has a lot of different moving parts

9    to it and we have our three respective clients in jail.

10           I'm listening to what Your Honor is saying and I

11   am trying to find a bottom line that works.  The government

12   on the other side is saying, well, we are going to supersede

13   the indictment, as is our right, in January, so we can't

14   possibly have a trial in February because we're going to

15   have new defendants and brand new defense lawyers who don't

16   know anything about the case until they come into the case

17   at some point in the third week of January or so.

18           By the same token I am mindful of Judge Parrish's

19   schedule.  If we know we're not going to have a trial in

20   February, I want to tell the judge as soon as possible so

21   that she does not set the time aside.  We're in the middle

22   of this sort of conundrum.  I think what is probably going

23   to happen in the next few weeks, and I know we're coming up

24   on the holidays soon.  At some point I am going to make an

25   application to Your Honor for release of Mr. Jacob Kingston

1    on conditions, since I have not done so yet.

2          I understand the government's position that people

3    are going to run to Turkey.  I think at the end of the day

4    with the discovery we have, with the fullness of time, I

5    believe I'll be able to make a fairly persuasive written

6    application that that is just not the case.  We'll see if

7    that trickles down to the other two defendants.

8          What this case really needs, in the best of all

9    worlds, which we don't have right now, is we would need a

10   certain amount of time, months, many months for us to get

11   ready to try the case.  That would be the perfect situation.

12   Trying the case in February is decidedly imperfect because

13   we are still getting discovery.  It is a monumental amount

14   of discovery.  I have never known what a terabyte was until

15   the last few years and I still don't really know what it is.

16         THE COURT:  I don't either.

17         MR. AGNIFILO:  It is a lot.  It is a mountain of

18   information.  So the answer, reasonably speaking, is we need

19   time.  We need to take a deep breath on the defense side and

20   sit down with our clients and really figure out how we are

21   going to defend this tax case.  That is what it is.  There

22   is no violence in this case.  There are no guns, there are

23   no knives, none of those things in this case.  It is a tax

24   case.  How do we settle down and really prepare for this tax

25   case so that the Court gets good motions on this complicated

1    case and so that we're all prepared to try this complicated

2    case, and so that our clients who are in jail get the type

3    of representation that they really need, because they only

4    get a chance to go through this once.

5          It is a tricky case.  I mean, no one is pleading

6    guilty because it is a tricky case, and I'm not going to

7    comment too much on the evidence, but there is a little here

8    for everybody and there is certainly a defense side to this

9    case that is a very pronounced defense side that I think is

10   going to be a strong argument on the defense side.  The

11   first thing that I think I am going to do is ask -- get

12   permission from Your Honor at some point to make that

13   application that Mr. Jacob Kingston be released on

14   conditions.  I will start putting that together.

15         THE COURT:  You can make that application at any

16   time.

17         MR. AGNIFILO:  Thank you, Judge.

18         The other thing, and it was alluded to I think by

19   Mr. Geragos in his remarks, is I believe that what really

20   would help the defense in this case is if we could get the

21   Jencks material, the 3500 material sooner rather than later,

22   even if it is for attorneys' eyes only.  I say that because

23   the mountain of discovery we're going to have, that would be

24   handy.  I mean, you know, as in most cases 90 percent of the

25   mountain is irrelevant to us.  We have to figure out the ten

1   percent or five percent or even one percent that is

2   relevant.

3            The way that we do that expeditiously is if we

4   have an idea of what the witnesses are going to say.

5            Now, so what I'm going to do as well, Your Honor,

6   if Your Honor sees fit, is to provide a written motion on

7   that point, because I think the government has a viewpoint,

8   and I think the government's viewpoint, and I won't speak

9   for them, is they have concerns with witness safety and I

10  don't begrudge them those concerns.  So rather than doing

11  this here with our limited time, I'm going to submit a

12  written motion to Your Honor along those lines as well.

13           I don't know until I make the motion and we have a

14  hearing, and obviously if Mr. Jacob Kingston can get out on

15  very strenuous conditions that would certainly alleviate a

16  lot of the pressure on everybody, but in a short time I will

17  make the motion for the Jencks material.  Your Honor, the

18  bottom line is hard to find given all of the competing

19  concerns, but I will certainly endeavor to try and find

20  something that is workable for the Court.

21           THE COURT:  Thank you.

22           MR. AGNIFILO:  Thank you, Judge.

23           MR. EWENCZYK:  Your Honor, I will leave the Jencks

24  issue aside pending a motion from the defense.

25           With regard to the discovery, I just have to

1    correct some notions that were put before the Court that are

2    simply incorrect.  Just to restate, on October 5th the

3    government disclosed 420 gigabytes of relevant evidence in

4    this case.  It didn't just dump it on the defense.  It

5    organized it clearly and it conferenced with the defendants

6    to know what format they wanted to receive it in.  You heard

7    Mr. Williams talk about native files.  Native files were

8    requested and native files were what were produced.  We

9    organized it and we provided them with an index.  We did

10   everything that we could to help them review what is

11   admittedly a large amount of evidence, because this was a

12   wide-ranging fraud that the government is now prosecuting.

13   So 420 gigabytes were produced on October 5th.

14          Now, Mr. Scott talked about rolling productions.

15   Well, that is exactly right.  So then on Friday we produced

16   a second set, 80 gigabytes.  This represents at this point

17   the vast majority of the evidence, setting aside the two

18   buckets we disclosed and the Jencks evidence.  In a careful

19   letter, that is several pages long, that I wrote, I

20   explained of the items that we have that are outstanding

21   there are a small handful that were not produced

22   electronically here and I apologized for that.  There were

23   some technical glitches at the last minute and there were

24   some issues and here they are.  I am working to get them to

25   you by the end of this month.

1          So at this point they have received 500 gigabytes

2     of evidence.  This is not material that we received from Mr.

3     Geragos that we turned back.  This is search warrants that

4     were executed that contained e-mails from Washakie Renewable

5     Energy.  This is subpoena responses.  This is materials that

6     the government -- this is a vast array -- I mean, this is

7     500 gigabytes of relevant evidence that the government has

8     tried to organize as carefully as possible to assist the

9     defense in their review of this evidence and to keep us all

10    on track toward a resolution of this matter.

11         I want to dispute this idea that somehow we have

12    not been providing discovery.

13         THE COURT:  Okay.  I don't have an issue with that

14    and it appears that you have, the question and the bottom

15    line question is when can you conclude it?

16         MR. EWENCZYK:  Your Honor, we are working toward

17    turning over the remaining items, but this is an ongoing

18    investigation, and so Mr. Williams talked about -- he talked

19    about rolling productions, and the truth of the matter is

20    that in any ongoing investigation, there is evidence coming

21    to light that is relevant to the first indictment and to the

22    first superseding indictment.  Of course we turned that

23    over, you know, as soon as we could.  It takes us a

24    little -- it takes us about three weeks.  We receive it and

25    Bates stamp it and process it and send it over.

1           So, I mean, if Your Honor is asking, you know,

2    about discussions as my colleague represented, we feel that

3    this investigation in terms of the indictments that concern

4    the defendants will conclude in mid January, and then with a

5    little turnaround time, early February we'll disclose all of

6    the information that has been gathered as part of this

7    ongoing investigation.  I want to emphasize that these are

8    rolling materials.  This is rolling production.  That is

9    exactly what Mr. Scott himself stated is usual, the normal

10   course of business in these cases.

11          THE COURT:  Well, I am asking you, I suppose, can

12   you speed it up?  I understand it is part of the ongoing

13   investigation.  But, you know, maybe you need to speed it

14   up.  How can you do that?

15          MR. EWENCZYK:  Well, Your Honor, I mean, until the

16   indictment is returned by the grand jury, we have materials

17   coming in and I can try to speed it up until I am blue in

18   the face, but, you know, until we receive the materials I

19   can't -- I can't turn them over.  I'm trying as fast and as

20   diligently as possible to get things into the pipeline and

21   produced to the defense.  We raised on October 1st the issue

22   of these two buckets of information.

23          THE COURT:  Okay.  You're not answering my

24   question.

25          MR. EWENCZYK:  Your Honor, the government is doing

1    everything it can to disclose this as fast as possible.

2            MR. ROLWING:  Your Honor, if I might, there is

3    some misunderstanding possibly by the defense counsel about

4    our discovery that is leading to this question.  As

5    Mr. Williams inaccurately portrayed, we are not holding

6    things back and producing them willy-nilly later on.  We

7    produced the bulk of what we already had, other than the

8    last few weeks of stuff that is being returned pursuant to

9    grand subpoenas in the ongoing investigation, which we'll

10   produce on an ongoing, rolling basis.

11           That is the rolling nature of the production, with

12   the exception of a few matters that the government has

13   identified in the letter and is in discussions with defense

14   counsel about how quickly they can get them the materials we

15   have in our possession.  But the bulk of what we already

16   have in our possession has been disclosed in these two

17   tranches of discovery.  I think that that is the

18   misunderstanding by defense counsel that is leading to this

19   question.

20           There is no rushing the grand jury.  These

21   subpoenas are due and the grand jury meets every two weeks

22   and the subpoenas call for the  production of records when

23   we get them.  Next week or this week we'll process them and

24   put them into the rolling production for the next tranche of

25   discovery.  There is no rushing the grand jury subpoena

1    dates of return.

2          THE COURT:  No, but there is the ability of the

3    government to contact its investigators and those who have

4    been issued subpoenas to hurry their responses.

5          MR. ROLWING:  There is that, Your Honor.  Normally

6    the witnesses and entities that are subject to grand jury

7    subpoenas calling for the production of records on a certain

8    date --

9          THE COURT:  I understand.

10         MR. ROLWING:  -- produce them on that date.  They

11   prepare that and take a lot of effort to do so, to prepare

12   those on that date.

13         However, we are reaching the end of the

14   investigation and the drafting of the panoply of charges

15   that these gentlemen and the punitive codefendants will

16   face, and I think that that will be in shape by the end of

17   the year and brought before the grand jury mid January and

18   presented.  Then we'll be in a position to have turned over

19   virtually everything that we have in our possession,

20   especially if these other two categories of evidence are

21   dealt with by the clawback agreement.

22         I was edified to learn from the defense community

23   today that the clawback agreement that we proposed in this

24   latest discovery letter is something that they are willing

25   to work towards resolving and agreeing to.  I think we're

1      going to reach an agreement on those two categories.

2           However, Mr. Williams' motion to the Court to

3      order the government on the first category, we'll need a

4      court order regarding that, because it is our position that

5      that first category of evidence, that is just the image of

6      electronic data seized in the search warrant that is not

7      responsive to the search warrant, is not in the

8      government's -- the prosecution team's possession and is not

9      subject to our discovery obligations unless the defense

10     counsel requests the Court to order us to produce those.

11          MR. GERAGOS:  On August, I believe it was the

12     28th, I had the first hearing with Mr. Dermen in the Central

13     District.  I heard the same bluster from the government

14     about the charges that are coming.  That was over 120 days

15     ago.  We said then, and I said it on the record then, that

16     they didn't understand their case, at least to Mr. Dermen,

17     and we were ready to go.  October, I forget whenever it was

18     when I was here before, they said the same bluster that we

19     have got more charges coming.  It has been in excess of the

20     Speedy Trial Act since then.  We have had appearance after

21     appearance after appearance where the Speedy Trial Act has

22     been obliterated.

23          Basically this has become a template for the

24     Speedy Trial Act no longer apparently applies if it comes to

25     a tax case, because all you have to do is get up and just

1    bluster and talk about a panoply and this and that.  The

2    fact is that I said since August the 28th in the Central

3    District they don't understand at least Mr. Dermen's role in

4    this case and we're ready to go, because I have been down

5    this road before with the government.

6              I said it again when we were here before before

7    Judge Parrish and I said it again before the other

8    magistrate.  The idea that somehow it is an ongoing

9    investigation, but virtually the first tranche, as they call

10   it, of discovery was nothing other than stuff that was

11   seized two and a half years ago on terms you already know.

12   On February 16th they seized all of the materials and that

13   was the first tranche.  If they were not ready, then they

14   shouldn't have gotten the indictment.  I just want a trial

15   date.

16             THE COURT:  But they got the indictment when they

17   got it.  What they should have done and what they shouldn't

18   isn't what is before me.

19             Now, you say I'm ready to go on February 12th or

20   whatever the date is.

21             MR. GERAGOS:  Correct.

22             THE COURT:  I'm ready to go.  That means that you

23   think that you don't need any more discovery or you need it

24   all very soon?

25             MR. GERAGOS:  Correct.  I would like an order from

1    the Court, contrary to what they have said, which is that

2    they would provide the Jencks material two weeks before, and

3    my understanding, at least in the central -- where he

4    originally was arrested, and my understanding is that the

5    culture here is that that is not appropriate.  I would like

6    them to comply with what goes on in every other case in this

7    district, which is if they want to give it as attorneys'

8    eyes only in a certain time period before, that the Court

9    order it --

10         THE COURT:  I am not familiar with any custom in

11   the district that says you can turn it over in advance, I'm

12   just not.  Now, maybe there are some judges who have done

13   that, but I don't think that that is necessarily the custom

14   here.

15         All right.  What I am considering here so that we

16   can get this rolling, and I have my drug court people that

17   are coming in, so we're going to have to cut this a little

18   bit short, but I want to know a final date from the

19   government, assuming that they assert their February 12th

20   date.  Now I know that this other indictment may be coming,

21   and I know that it may have an effect on the trial date, but

22   so far they are demanding the discovery.  When is the date

23   that you can give that on the matters presently before the

24   Court?  Give me a final date.

25         MR. ROLWING:  Your Honor, we'll have -- we have

1      already produced the bulk of all that we have --

2                    THE COURT:  I heard that.

3                    MR. EWENCZYK:  -- that relates to that so they

4      have that.

5                    So he is complaining about Jencks, a whole

6      different matter.  If he wants that early, he needs to file

7      a motion.  What I am familiar with is the Jencks Act.  That

8      is the way I operate and I am willing to work with them and

9      I have communicated how we're going to treat the witness

10     statements, but that is a whole different matter.  That is

11     not discovery.  He tends to combine those two when he talks.

12                   THE COURT:  Let's separate them out.

13                   MR. ROLWING:  Okay.

14                   THE COURT:  He is going to have to file the

15     appropriate motion on the Jencks materials.

16                   Now, when can you provide a conclusion to the

17     discovery related to the present superseding `indictment?

18                   MR. ROLWING:  We'll have the remainder of this

19     material, that we have in our possession now, to them by the

20     end of the month, but we anticipate receiving more

21     information in the next few weeks.  Some of that might

22     relate to, because of the conspiracies that are being

23     investigated that encompass some of the substantive charges

24     that have been brought against these defendants, some of

25     that evidence that comes in might relate to those.  We will

1    most certainly have it to them by the end of the month we

2    bring the superseding indictment in, February 1st, but we're

3    going to have -- I can't tell you whether --

4         THE COURT:  I may set a deadline, so give me your

5    bottom line.  When can it be produced?

6         MR. ROLWING:  Well, we have already produced it.

7    What I am talking about are things that have been identified

8    that we have in our possession that we're working towards

9    giving them, and those things that we have in our possession

10   that we're working towards giving them will be given to them

11   certainly by the end of this month.  And we have also

12   identified that there is a whole load of hard copy records

13   made available for inspection by them, and those are at

14   their --

15        THE COURT:  Are they ready now?

16        MR. ROLWING:  They have available for their

17   inspection.

18        MR. GERAGOS:  Would the Court entertain just a

19   short order, then, that by December 29th, that they turn

20   over everything that they have?

21        THE COURT:  That they have as of that time.

22        MR. EWENCZYK:  If I may, there is also the issue

23   of the unfiltered material, and we have been asking the

24   defense since early October what position they want and

25   whether they are willing to jointly request from the Court

1    an order as to its discovery pursuant to a clawback

2    proposal.  We did not hear an answer from defense counsel.

3    We have now proposed a clawback agreement, but Your Honor is

4    asking about discovery, and that is potentially a discovery

5    obligation of the government, and I just want to be up front

6    that we're trying to work toward a resolution to produce

7    this stuff, but we need the defense to agree to something

8    because these could contain privileged materials.

9              THE COURT:  Okay.  There are three of you trying

10   to talk.  It should be one at a time.

11             MR. ROLWING:  I apologize, Your Honor.

12             If I might finish Mr. Ewenczyk's thought there,

13   because this particular category that is proposed to be

14   subject to the clawback agreement we have provided them, in

15   the absence of them providing us a proposal, is attachment B

16   relevant?  That is, matters that were secured from the

17   electronic E.S.I., seized in the search warrant, that are

18   responsive to the search warrant, but not yet in our

19   possession because they are with the filter team and they

20   have not filtered it all, so there is potentially privileged

21   material in there, and we're just trying to propose a

22   protocol that would respect the privilege holder's privilege

23   and allow the defendants to have access to this material as

24   soon as they can agree to respect the privilege and have

25   access to it to prepare for trial.  That is what we have

1    proposed.  We are hopeful they can get there, but it seems

2    to have slipped defense counsel's focus, because there is a

3    lot to focus on in this case, and they have not come up with

4    a protocol and so we provided this clawback agreement.

5         We're told by Mr. Agnifilo today that they think

6    they can work with it.  They are in good discussions with

7    their colleagues about getting there, but that is on them or

8    the Court.  We have identified this material that we don't

9    have possession of, and the filter team does, and that may

10   have privileged holders, potential privileged material in it

11   and we have suggested that they agree to respect that in

12   agreement to get the material so they can prepare for the

13   trial.

14        MR. GERAGOS:  It is a very simple issue.  I would

15   ask the Court, bottom line, to order them to turn over

16   everything they have by December 29th.  I have bequeathed

17   before to Mr. Agnifilo that whatever agreement he wants to

18   enter into, because the way I view it is that the privilege

19   material is going to be largely his and the other

20   codefendant and it is not my fight.  I don't need it.  I

21   just need the material because Mr. Dermen is not in the

22   middle of this.

23        What I would propose is the Court order that they

24   turn over everything by December 29th.  In addition to that,

25   I am stating on the record here that I have bequeathed to

1    Mr. Agnifilo that whatever agreement he wants to enter into

2    with the government for the filter team, because when my

3    office talks to the filter team they say that, frankly, they

4    have not even started it yet.  I don't care whatever

5    clawback arrangement he wants to enter into, I'm okay with,

6    because it is his issue with his privileges, not ours.

7          MR. AGNIFILO:  I think I can solve the problem on

8    this, since I have been bequeathed the issue.  We'll have

9    agreed upon language by the end of the week and the Court

10   will never have to deal with this again.  So we'll have an

11   agreement on the clawback and so that won't be a problem.

12         THE COURT:  All right.

13         MR. ROLWING:  If I might request, there has been a

14   motion by defense counsel Williams regarding the material

15   that is not with the filter team.  That is, it is with the

16   seizing agency's team.  They took an image of this E.S.I.

17   We don't intend to turn that over because none of that -- we

18   only selected the attachment B relevant items from that

19   material, and that is what we have been turning over, but if

20   they want that material, they should file a motion with the

21   Court and we will follow the Court's order on that, and we

22   would request that that production also be subject to any

23   clawback provision, since there might be potentially

24   privileged material in there as well.

25         We can work that out.

1          MR. WILLIAMS:  Consistent with what I have told

2      the government, as I have stated and can prove by e-mails

3      from day one, they can draft any clawback and I will agree

4      to it the next day.  I am hereby moving, orally, it and I

5      think that that is sufficient for the order that the

6      government is requesting and could have requested that order

7      on the date of the initial appearance in October.

8          THE COURT:  Repeat the nature of your motion.

9          MR. WILLIAMS:  I would ask the government to make

10     the request to Your Honor for what words they would like to

11     hear from you for you to grant to give us the discovery that

12     they're talking about.

13         THE COURT:  All right.

14         MR. EWENCZYK:  Your Honor, we received conflicting

15     responses from defense counsel over the course about what

16     they want to do, given that some of their clients are

17     potentially privilege holders in this, and so we have been

18     trying to work this out in earnest.  But I just want to

19     point out to Your Honor in a week it will be December 11th,

20     you know, and, Your Honor, I am committed to make this go as

21     fast as possible and certainly as fast as Your Honor orders,

22     but I just would implore the Court to keep in mind that in a

23     week from now it will be December 11th and then, you know,

24     December 21st is the first day before the holidays, and I

25     will do whatever I can, but, I mean, things slow down.

1          THE COURT:  I think you have control over your

2   agents and your employees who would need to go through the

3   materials and then your filter team and it is really not

4   going to be an excuse that the holidays are coming.  That is

5   just a burden that you have.  All right.

6          This is what I want to do.  I want each of you to

7   submit the appropriate motion with a proposed order for your

8   particular circumstance.  Likewise, I would like the

9   government to respond to those or make any motions that you

10  think are appropriate, and because of the sensitive time

11  line, I'm going to ask that those be given to me no later

12  than Friday.

13         MS. GOEMATT:  Thank you, Your Honor.

14         THE COURT:  Is there anything else at this time?

15         MS. GOEMATT:  Not at this time given that you have

16  a full courtroom.  Thank you very much, Your Honor.

17         THE COURT:  All right.

18         (Proceedings concluded.)

19

20

21

22

23

24

25