Mark J. Geragos
California State Bar #108325
GERAGOS & GERAGOS
644 S. Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Facsimile: (213) 625-1600

Jon D. Williams (8318)
9 Exchange Place, Suite 600
Salt Lake City, UT 84111
Telephone: (801) 746-1460
Facsimile: (801) 998-8077

*Attorneys for Lev Aslan Dermen*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>LEV ASLAN DERMEN<br><br>    Defendant. | **DEFENDANT LEV DERMEN'S SUPPLEMENTAL BRIEF IN SUPPORT OF HIS MOTION FOR A MISTRIAL**<br><br>Case No. 2:18-cr-00365-JNP-BCW<br><br>Honorable Jill N. Parrish |

Defendant Lev Aslan Dermen submits this Supplemental Brief in Support of His Motion for a Mistrial regarding the decision to permit jurors to deliberate notwithstanding the COVID-19 pandemic amid an international public health emergency. As the world was gripped by panic and the sudden emergence of a global pandemic, Mr. Dermen beseeched this Court to intervene by filing a motion for a mistrial on Sunday, March 15, 2020 based on the constitutional implications that would result if the jury in this case was required to resume deliberations the following morning. Not only was no action taken by the Court or the government on Monday morning, but both the Court and prosecutors particularly focused on the forfeiture portion of the trial, even though no verdict had been reached and the jury had only deliberated for less than five

hours the previous week.

Instead of inquiring of the jury as to how they were being impacted by the unprecedented pandemic or staying the deliberations pending review and a ruling on Mr. Dermen's mistrial motion, and despite national directives to socially distance and stay at least six feet away from others, the jury was remanded into the small jury room on Monday morning to resume deliberations. The Court then proceeded to schedule a conference to determine the schedule for the forfeiture proceedings which assumed a guilty verdict would be returned. Thus, it came as no surprise that after only a few hours of deliberations on Monday (and less than eight hours of deliberations total), the jury returned a guilty verdict on all counts, without asking a single question about the evidence in a seven-week trial which this Court has aptly described as "complicated" and "complex."

Given the drastic developments that occurred over the weekend regarding COVID-19, at the very least the Court should have inquired of the jurors whether and how they were being impacted and if they believed they could continue to deliberate without distraction or fear. For instance, such an inquiry could have included some of the following questions:

- Have you or anyone you know been diagnosed with COVID-19, or been in physical contact with someone who has been diagnosed with COVID-19?
- Are you feeling unwell? Do you have any symptoms consistent with a viral infection, cough, fly, headache?
- Do any of your family members have any symptoms consistent with a viral infection?
- Was there any discussion about the virus in the jury room last week? What was said?
- How do you feel about the developments over the weekend regarding COVID-19? Are you directly impacted by the school closures, employment restrictions, employment lay-offs, or the like that have resulted from the pandemic?
- Are you concerned with, preoccupied by, or fearful of the COVID-19 pandemic in a way that will cause you to rush through deliberations in Mr. Dermen's case?

> Do you feel you can fully and fairly review the evidence and deliberate with your fellow jurors for as long as necessary to reach a verdict?

- Given the warnings regarding community spread and social distancing, are you comfortable deliberating in the jury room and interacting with your fellow jurors; and are you comfortable physically handling the same documents and exhibits?

Since before the defendant's March 15, 2020 filing motion for mistrial, other federal and state courts across the nation have declared mistrials in pending cases.  *See, e.g.,* Karen Florin, *Triple murder trial delayed, civil case a mistrial due to coronavirus threat,* THE DAY (March 12, 2020), *available at* https://www.theday.com/policefirecourts/20200312/triple-murder-trial-delayed-civil-case-mistrial-due-to-coronavirus-threat; Denver Pratt, *Jury trials suspended in Whatcom County courts due to coronavirus outbreak,* THE BELLINGHAM HERALD (March 13, 2020), *available at* https://www.bellinghamherald.com/news/local/article241113626.html; Rick Pfeiffer, *Belstadt attorneys: Virus too disruptive for trial to proceed,* NIAGARA GAZETTE (March 17, 2020), *available at* https://www.niagara-gazette.com/covid-19/belstadt-attorneys-virus-too-disruptive-for-trial-to-proceed/article_4e7fb726-681e-11ea-aa81-cbc428635c8c.html; Jack Queen, *Coronavirus Forces Mistrial In Finjan Patent Case,* LAW 360 (March 16, 2020), *available at* http://law360.com/articles/1253867/coronavirus-forces-mistrial-in-finjan-patent-case; *see also* Samiar Nefzi, *Trucilla suspends this week's trial term due to COVID-19 prevention,* YOUR ERIE (March 16, 2020), *available at* https://www.yourerie.com/news/local-news/trucilla-suspends-this-weeks-trial-term-due-to-covid-19-prevention/ (suspending about ten cases, with the president judge noting that "he will more than likely issue an administrative order calling for a 'mistrial without prejudice'").  Not only is the primary concern the community spread of COVID-19, but these courts have recognized that jurors will inevitably be concerned, preoccupied, and fearful about catching the potentially fatal disease.  *See, e.g.,* Robert Rodriguez,

*Fresno judge declares mistrial in double homicide case, amid coronavirus concerns,* THE FRESNO BEE (March 18, 2020), *available at* https://www.fresnobee.com/news/local/article 241305911.html ("The District Attorney's Office was worried jurors would be reluctant to come to court — or would be preoccupied about catching COVID-19, a highly contagious disease that has spread worldwide." Robert Rodriguez, *Coronavirus fear causes Fresno, CA judge to declare mistrial,* THE FRESNO BEE (March 18, 2020), *available at* https://www.fresnobee.com/news/local /article 241305911.html).  Thus, for the safety of the jurors (as well as all parties and court personnel, as well as to safeguard a criminal defendant's constitutional rights to a fair trial and impartial jury), these courts have acted responsibly in granting mistrials during this unprecedented time in history.  As Justice Martin Burns, the trial judge overseeing a pending manslaughter case in Brisbane, Australia explained: "Requiring 14 people deliberate in a small room, a relatively small room, may not be the best conditions to secure a just outcome," after health officials describe "social distancing as good practice."  *See* Darren Cartwright, BRISBANE TIMES (March 16, 2020), *available at* https://www.brisbanetimes.com.au/national/queensland/ coronavirus-leads-to-judge-only-manslaughter-trial-in-brisbane-20200316-p54ami.html.

To justify its decision to require the jury to continue deliberations, the Court noted that the jurors arrived on time on Monday and they did not complain about the circumstances, *i.e.*, needing to deliberate in a small room in a group of twelve while health officials were urging Americans to keep a distance of at least six feet and to "self-isolate."  However, it is not fair to assume that the jury felt it was appropriate to address their concerns with the Court or court personnel.  As this Court knows, less than two weeks earlier, the trial was halted for two days based on an inflammatory advertisement posting on the jury room door, which resulted in extensive inquiry of the jurors and a delay in the proceedings.  Thus, it would be expected for the

jury to be reticent in raising their concerns with the Court. Or more likely, the jurors may have believed that a guilty verdict could be reached a lot quicker than raising their concerns with the Court, which may have caused a prolonged inquiry like before, only lengthening the amount of time they would be required to continue to report to court. Rather than shift the responsibility of raising this unprecedented issue to the jury, it was the government and Court's responsibility to ensure that Mr. Dermen would receive a constitutionally fair trial by an *impartial* jury.

It should also be remembered that some jurors were required to relocate to hotels during their service on this case. This included Juror No. 4, an elderly gentlemen, whose age demographic by all public health official accounts is the most vulnerable to the COVID-19 virus. The added inconvenience of staying in a hotel away from home, and being forced to dine in restaurants, during the outbreak of a pandemic virus may have also become a factor for such jurors during their deliberations, particularly since health officials recommended that Americans avoid dining in restaurants, and all restaurants in Salt Lake City were ordered shut down as the jurors deliberated. Additionally, Juror No. 6 had demonstrated her willingness and ability to "Google" and search the Internet from the jury room. And Juror No. 3 was posting about wrapping up the deliberations over the weekend. It is certainly possible that during Monday's deliberations, Juror No. 6 was again researching the latest updates of the pandemic (among other topics) on the Internet and sharing this information with fellow jurors The timing of the verdict, which was rendered just as President Trump had publicly announced that groups of over ten people should be prohibited from congregating, certainly suggests outside influence. Whether and how these extrinsic factors would impact deliberations could have been addressed and perhaps resolved by prioritizing Mr. Dermen's motion for mistrial over prematurely scheduling forfeiture proceedings in advance of a verdict.

Since before the verdict was rendered on March 16, 2020, every circuit court, district court, and state court across the country had imposed some form of courthouse restrictions, and in some cases, closures. An updated list of court restrictions and closures as of March 20, 2020 can be found here and is attached hereto as Exhibit A. *See* Sarah Jarvis, *Coronavirus: The Latest Court Closures And Restrictions,* Law 360 (updated March 20, 2020) https://www.law360.com/articles/1252836/coronavirus-the-latest-court-closures-and-restrictions Indeed, certain courts have taken extreme measures such as completely shutting down all court operations. For instance, on March 19, 2020, the United States District Court for the District of Rhode Island issued a second general order closing the court in its entirety due to the public health concern, stating in part: "Because of the threat to public health and safety presented by public gatherings, the Court is unable to safely summons and convene an adequate cross-section of jurors and there is uncertainty as to the ability of parties, counsel, witnesses, court staff, and judges to attend criminal and civil trials, criminal sentencings, and criminal and civil hearings, accordingly in order to protect public health and safety, and to reduce the size of public gatherings and unnecessary travel, it is ordered: 1. The U.S. Courthouse building at One Exchange Terrace and the portion of the John O. Pastore Building ("Pastore Building") occupied by the Court are closed to the public until further notice." In stark contrast here, on the morning of March 16, 2020, Assistant United States Attorney Rolwing was trying to proceed with forfeiture later in the week.

Given this public health crisis combined with the unique circumstances presented in this trial, the verdict rendered on March 16, 2020 is not constitutionally reliable. Mr. Dermen's motion already highlighted the fact that two sitting jurors were released mid-trial due to illness, namely flu-like symptoms and pneumonia. In hindsight, a mistrial should have been declared as

soon as it became evident that Juror No. 1 had become ill, and later when Juror No. 10 became ill and started wearing a face-mask; however, we were all complicit in continuing at that time. However, as soon as the conditions had escalated to such a degree that it was obvious Mr. Dermen could no longer receive a fair trial, the defense swiftly moved for a mistrial, which should have been granted without requiring the jurors to further deliberate.

Lastly, while the defense never anticipated a disease pandemic emerging during this trial, the impact and effect that these sorts of significant events could have on individual jurors was precisely the reason for repeatedly requesting juror social media handles over the government's objections. Counsel submits that access to the social media accounts during this historical era would have been consequential to predicting and understanding the ways in which this global health crisis had impacted the individual jurors on this case.

Dated: March 20, 2020

Respectfully submitted,

/s/ Mark J. Geragos
MARK J. GERAGOS
GERAGOS & GERAGOS
644 Figueroa Street
Los Angeles, CA 90017
Telephone: (213) 625-3900
Email: geragos@geragos.com
*Attorneys for Lev Aslan Dermen*

**CERTIFICATE OF SERVICE**

  I hereby certify that I filed a true and correct copy of the foregoing, on the case styled *United States of America v. Lev Aslan Dermen*, this 20th day of March, 2020, with the Clerk of the Court using CM/ECF, which sent notification of the filing to all parties registered to receive such notice in the case.

               _/s/_  *Mark J. Geragos*