IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>JACOB KINGSTON, ISAIAH KINGSTON, LEV DERMEN, RACHEL KINGSTON, and SALLY KINGSTON,<br><br>        Defendants. | MEMORADUM DESCISION AND ORDER FOR THE GOVERNMENT TO PROVIDE EVIDENCE SUPPORTING A PRELIMINARY ORDER OF FORFEITURE<br><br>Case No. 2:18-cr-00365-JNP<br><br>District Judge Jill N. Parrish |

**PROCEDURAL BACKGROUND**

The Government has moved for a preliminary order of forfeiture for multiple pieces of property. ECF No. 1021. It requests an order forfeiting almost 50 parcels of real property, multiple business entities, luxury automobiles, and a yacht. Many of these items are located in foreign countries. The Government also requested money judgments against Jacob and Isaiah Kingston in the amount of $511,842,773 each.

Jacob, Isaiah, Rachel, and Sally Kingston, consistent with their plea agreements, indicated that they did not object to the Government's motion for forfeiture. Lev Dermen opposed in part the motion for forfeiture. ECF No. 1077. He argued that since he requested a jury determination as to the forfeitability of property, the court should not include certain items in any preliminary order of forfeiture. Specifically, Dermen asserted that the forfeiture phase of the jury trial should resolve the forfeitability of the Huntington Beach property, the Bugatti, the Lamborghini, and "[a]ny and all assets purchased or investments made using proceeds through SBK Holdings USA,

Inc., or Speedy Lion Renewable Fuel Investments, LLC, and any gains from those investments." ECF No. 1077 at 2.

In the Government's reply brief, it conceded that "[w]hatever interest Dermen has in these assets is unaffected by" the Government's motion for forfeiture and that forfeiture of the assets claimed by Dermen would be determined in the forfeiture phase of the jury trial. ECF No. 1077 at 2. The Government further represented that it would file a supplemental brief that would summarize the evidence supporting the nexus between the Kingston's crimes and the property the Government sought to include in the preliminary order of forfeiture.

The Government submitted a supplemental brief. ECF No. 1104. It attached a document to the brief entitled "Modified Exhibit A." This document contained a brief summary of the Government's theory of how the proceeds of the fraud committed by the defendants could be traced to each of the pieces of property claimed by the Government. But Modified Exhibit A does not cite any evidence supporting the Government's conclusions.

## ANALYSIS

### I. FORFEITURE OF SPECIFIC PROPERTY

The court must first determine whether the Government has proven that it is entitled to a preliminary order of forfeiture. Under Rule 32.2 of the Federal Rules of Criminal Procedure, "the court must determine what property is subject to forfeiture under the applicable statute. If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." FED. R. CRIM. P. 32.2(b)(1)(A). "The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." *Id.* at 32.2(b)(1)(B).

In an effort to meet its burden to establish a nexus to the claimed property, the Government refers generally to the Kingston defendants' plea agreements. In these agreements, the Kingston defendants agreed to "the United States' tracing of proceeds of the mail fraud scheme and/or proceeds involved in the money laundering schemes from Washakie and/or UFS to the properties listed in Exhibit A." *See, e.g.*, ECF 439 at 15. But these agreements not to contest forfeiture are not evidence of a nexus. The factual admissions contained in Jacob's and Isaiah's plea agreements also reference a few properties purchased with the proceeds of their fraud. But these references fall far short of establishing a nexus between the defendants' crimes and the dozens of parcels of real property, luxury items, and businesses claimed by the Government.

The Government also loosely references the evidence presented during the Dermen trial, arguing that this evidence shows a nexus to the claimed property. But it only lists three exhibits presented at trial as examples of trial evidence supporting forfeiture. The Government's cursory references to trial evidence falls short of establishing a nexus to the vast majority of the properties claimed.

Finally, the Government relies upon the Modified Exhibit A attached to its supplemental brief. But this unsigned document is not evidence. Nor does it cite evidence to support its conclusions. Modified Exhibit A is little more that a brief sketch of the Government's theory of how the proceeds of the conspiracy to defraud the United States can be traced to individual pieces of property. Accordingly, this document is not sufficient to establish the claimed nexus.

Because the Government has not met its burden of establishing a nexus, the court will not issue a preliminary order of forfeiture at this time. The Government must submit an additional brief establishing a nexus between the crimes committed by the defendants and the claimed property. For each piece of property, the Government should list (1) the crime or crimes that are

allegedly linked to the claimed property, (2) the statute or statutes that allegedly authorize the forfeiture of the property, and (3) the evidence establishing the nexus between the crime or crimes and the property.[1] The Government may rely upon exhibits or testimony from the Dermen trial. But the Government must cite specific exhibits or testimony.

The court also notes that one of the categories of property claimed by the Government is "The physical plant one known as Washakie Renewable Energy, LLC." The Government should indicate with particularity what structures or equipment it claims are traceable to a crime in this case or argue why the plant as a whole is subject to forfeiture.

## II.    MONEY JUDGMENTS

The Government also requests a money judgement against Jacob and Isaiah Kingston in the amount of $511,842,773 each. It argues that 21 U.S.C. § 853(p) authorizes these money judgments as substitute property for the funds that were fraudulently obtained from the U.S. Treasury. The U.S. Supreme Court recently held that a money judgment under § 853(p) "is limited to property the defendant himself actually acquired as the result of the crime." *Honeycutt v. United*

---

[1] The court notes that for most of the items of specific property sought by the Government, there will be no adverse briefing on the nexus issue. The jury will determine whether a nexus exists for the items claimed by Dermen after the forfeiture phase of the trial. But the court shall resolve the nexus issue for most of the property in the preliminary order of forfeiture. The Kingston defendants have agreed not to contest forfeiture in their plea agreements. Moreover, the third parties that claim an interest in the property are barred from participating in this phase of the forfeiture proceedings by 21 U.S.C. § 853(k), which states: "Except as provided in subsection (n) [describing the ancillary proceedings for third parties], no party claiming an interest in property subject to forfeiture under this section may . . . intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section . . . ." Moreover, Tenth Circuit authority prohibits third parties from relitigating the nexus issue in the ancillary proceedings. *United States v. Andrews*, 530 F.3d 1232, 1236 (10th Cir. 2008) ("[A] third party has no right to challenge the preliminary order's finding of forfeitability . . . ."). Due to the absence of any counterweight to the Government's claims of a nexus between the crimes in this case and the claimed property, the court intends to hold the Government strictly to its proof on this issue.

*States*, 137 S. Ct. 1626, 1635 (2017). In *Honeycutt*, a cashier in a hardware store was convicted for selling chemicals to individuals with reason to believe that the chemicals would be used to manufacture methamphetamine. *Id.* at 1630. The Court held that the Government could not obtain a money judgement against the cashier for the revenue from the sale of the chemicals because he did not have an ownership interest in the hardware store, did not profit from the sale of the chemicals, and, therefore, did not bear responsibility for the dissipation of the money received by the hardware store for the chemicals. *Id.* at 634–35.

The Government acknowledges that even though Rachel and Sally Kingston agreed to money judgments against them for the full amount of the $511 million fraud against the United States in their plea agreements, money judgements against these defendants would not be appropriate because the Government does not know how much of these fraud proceeds Rachel and Sally personally obtained. But the Government argues that Isiah Kingston, as the CFO and part owner of Washakie Renewable Energy (WRE) and United Fuel Supply (UFS), controlled the $511 million paid to these entities and was one of the "kingpins" of the fraud perpetrated against the United States. It asserts, therefore, that the preliminary order of forfeiture should include money judgments against both Jacob and Isaiah for the full amount of the funds fraudulently obtained in the scheme against the Government.

The court notes that a money judgment against Jacob Kingston appears to be appropriate. But a $511 million money judgment against Isaiah Kingston is more problematic. Despite the fact that Isaiah was the CFO and, on paper, part owner of the entities involved in the fraud, the testimony presented at Dermen's trial suggested that Isaiah ultimately exercised little control or decision-making authority over the funds fraudulently obtained from the United States Treasury. Isaiah was certainly more than a mere cashier for WRE and UFS. But it is not clear that Isaiah

5

exercised a level of control over the fraudulently obtained funds that would justify personal liability for the dissipation of the full amount of the over $511 million at issue in this case.

The court, therefore, ORDERS the Government to rebrief the issue of whether the preliminary order of forfeiture should include a money judgment against Isaiah Kinston in the amount of $511,842,773.

## CONCLUSION

The court concludes that the Government has not yet carried its burden of establishing the requisite nexus between the crimes committed by the defendants and the properties for which it seeks forfeiture. Additionally, the Government has not yet convinced the court that it is entitled to a money judgment against Isaiah Kingston.

The court intends to exclude property at issue in the forfeiture phase of the Dermen trial from any preliminary order of forfeiture. Accordingly, once the court determines which properties shall be included in the jury trial, the court will order the Government to file a brief addressing the forfeiture issues described above. The court intends to give the Government 28 days from the date of that order to respond.

DATED September 18, 2020.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge