FILED
2021 JAN 27 PM 12:52
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JACOB KINGSTON, ISAIAH KINGSTON, LEV DERMEN, RACHEL KINGSTON, and SALLY KINGSTON, <br><br> Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTIONS TO AMEND OR VOID THE COURT'S RESTRAINING ORDERS <br><br> Case No. 2:18-cr-00365-JNP <br><br> District Judge Jill N. Parrish |

Before the court are three motions to amend the restraining orders entered by the court on April 23, 2020. [Docket 979, 982, 999]. The court DENIES the motions to amend.

## BACKGROUND

In the operative indictment in this case, the grand jury charged the defendants with forfeiture of the proceeds traceable to the count 1 conspiracy charge, including "[t]he physical plant once known as Washakie Renewable Energy, LLC, located at 7550 W 24000 N Plymouth, Utah, and all the equipment installed therein, and affixed thereto." Jacob, Isaiah, Rachel, and Sally Kingston pled guilty to the charges against them. In their plea agreements, they agreed to the forfeiture of the Washakie equipment described in the indictment. A jury convicted a fifth defendant, Lev Dermen, of the charges against him, including the count 1 conspiracy charge.

On May 8, 2019, the court entered a restraining order against New Washakie Ranch, LLP (NWR), the owner of the land where the Washakie equipment is located, and a number of other parties. The restraining order prohibited NWR from taking "any action that would affect the availability or value" of the Washakie equipment.

In the fall of 2019, NWR leased some of the Washakie warehouse space to True North Organics for a licensed marijuana growing operation. True North agreed to pay $5,500 a month to lease the warehouse apace.

At some point, NWR leased some of the Washakie land and equipment to U.S. Tank and Rail, LLC. On April 1, 2020, U.S. Tank and Rail agreed to sublease four storage tanks located on the Washakie land to Big West Oil, LLC. The sublease agreement permitted Big West to store up to 130,000 barrels of crude oil in the storage tanks in exchange for a monthly payment of $182,000. U.S. Tank and Rail also entered into a service contract with American Chemical, which agreed to transfer the crude oil from trucks to the storage tanks and then to transfer the oil from the tanks back to trucks when Big West is ready to ship it to a refinery. U.S. Tank and Rail agreed to pay American Chemical $50,000 a month for these services.

After the Government discovered the existence of the storage tank sublease, it filed an ex parte motion for three separate restraining orders. The Government argued that the True North and Big West lease payments were traceable to the count 1 conspiracy convictions because the payments were derived from the Washakie equipment. On April 23, 2020, the court granted the motion and entered the three restraining orders. One order directed True North to pay its lease obligations to the U.S. Treasury rather than NWR. Another order directed Big West to pay future lease payments to the U.S. Treasury instead of U.S. Tank and Rail. The last order directed American Chemical to make any payments it owed to NWR to the U.S. Treasury. All of the April 23 restraining orders contain the following language: "IT IS FURTHER ORDERED that the Government or any Subject of this Order may seek modifications of this Order if deemed necessary by them to preserve their interest in the Subject Property."

On April 29, 2020, the Government filed an amended motion to compel U.S. Tank and Rail and American Chemical to comply with the April 23 restraining orders and to provide an accounting of their operating expenses. On April 30, 2020 and May 4, 2020, the court held hearings on the motion to compel. On May 7, 2020, the court entered a modified restraining order directing Big West to pay $87,473.07 to U.S. Tank and Rail for the month of May. The court directed U.S. Tank and Rail to use this money to pay utility bills and to pay American Chemical for the month of May. The court ordered Big West to pay the remaining $94,526.93 to the U.S. Treasury.

The parties have filed three motions to modify or void the April 23 restraining orders. First, the Government filed a motion to strike language in the orders stating that a "subject" of the orders may seek to modify them. [Docket 979]. The Government argues that the restraining orders should be amended because third parties to a criminal proceeding, such as NWR, U.S. Tank and Rail, and American Chemical, may not challenge a restraining order. Second, NWR filed a motion to amend or vacate the April 23 restraining orders. [Docket 982]. NWR asserts that the Government may not seize the lease payments because it has a superior title to the Washakie equipment, including the storage tanks. NWR also contends that the Government may not restrain the lease payments because the grand jury did not include a forfeiture charge for these payments in the indictment. Finally, NWR argues that it is entitled to a hearing on whether the lease payments are traceable to the count 1 conspiracy charge. U.S. Tank and Rail and American Chemical filed a nearly identical motion to amend or vacate the restraining orders for the same reasons articulated by NWR. [Docket 999].

## ANALYSIS

I.  **THE § 853(k) BAR ON INTERVENTION**

Because the Government's motion to amend the April 23 restraining orders challenges the right of NWR, U.S. Tank and Rail, and American Chemical (collectively, the Restrained Third Parties) to participate in these proceedings, the court addresses this motion first.

The Government's argument rests upon 21 U.S.C. § 853(k), which states: "Except as provided in subsection (n) [the ancillary hearing provision], no party claiming an interest in property subject to forfeiture under this section may . . . intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section . . . ." The Government asserts that this provision bars the Restrained Third Parties from contesting the court's restraining orders. It contends that these entities must wait for the ancillary proceedings before asserting their rights.

There is a split of authority on this issue. The Fifth and Ninth Circuits have held that third parties may not challenge a restraining order. *United States v. Holy Land Found. for Relief & Dev.*, 493 F.3d 469, 477–78 (5th Cir. 2007) (en banc); *United States v. Lazarenko*, 476 F.3d 642, 648, 650–51 (9th Cir. 2007). But the First and Eleventh Circuits, relying upon on the legislative history of § 853(k), have reasoned that this statute does not bar third parties from participating in a restraining order hearing. *United States v. Real Prop. in Waterboro*, 64 F.3d 752, 755–56 (1st Cir. 1995) ("We conclude that . . . third parties claiming an interest in restrained or potentially restrainable property may 'participat[e]' in the associated restraining order proceedings." (second alteration in original)); *Roberts v. United States*, 141 F.3d 1468, 1471 (11th Cir. 1998) (reasoning in dicta that a third party could have challenged a restraining order in a criminal proceeding but holding that he could not initiate a separate lawsuit). There appears to be no Tenth Circuit authority that addresses this question.

Interpreting § 853(k), this court concludes that the plain language of the statute does not bar the Restrained Third Parties from challenging the restraining orders under the facts of this case. This provision prohibits third parties from intervening in a trial or appeal of a criminal case. But the Restrained Third Parties have not intervened. The Government requested and received a May 8, 2019 restraining order against NWR. It also requested and received an April 23 restraining order binding American Chemical. Then on April 29, 2020, the Government filed its Amended Motion for Expedited Hearing to Compel US Tank and Rail, LLC and American Chemical LLC to Comply with Post-Indictment Restraining Order. Pursuant to that motion, the court issued a May 7, 2020 restraining order directing US Tank and Rail to pay utility expenses and to make payments to American Chemical. This is not a case where a third party seeks to intervene to assert its rights to property seized by the Government. The Government brought each of the Restrained Third Parties into this case by invoking the court's authority to issue restraining orders. Because the Restrained Third Parties are not intervening in this criminal proceeding, § 853(k) does not bar their challenge to the restraining order.

Alternatively, if the language of § 853(k) is ambiguous as to whether the Restrained Third Parties are barred as intervenors in this case, it is appropriate to resort to legislative history to divine Congress's intent. *See Woods v. Standard Ins. Co.*, 771 F.3d 1257, 1265 (10th Cir. 2014) ("If the statute's plain language is ambiguous as to Congressional intent, 'we look to the legislative history and the underlying public policy of the statute.' " (citation omitted)); *United States v. Jones*, 160 F.3d 641, 644 (10th Cir. 1998) (consulting legislative history to interpret an ambiguous provision of § 853). The legislative history of § 853(k) clarifies that Congress did not intend to bar third parties from challenging a restraining order.

The language of § 853(k) and an identical provision found in the Racketeer Influenced and Corrupt Organizations (RICO) Act[1] were jointly presented to Congress in the Comprehensive Crime Control Act of 1984 (CCCA).[2] The Senate report for the CCCA, discussing the identical RICO provision, states: "This provision is not intended to preclude a third party with an interest in property that is or may be subject to a restraining order from participating in a hearing regarding the order, however." S. REP. NO. 98-225, at 206 n.593 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3389 n.593. This gloss applies to § 853(k) as well. Discussing § 853(k), the Senate report states: "For further discussion of this provision see the analysis supra of the analogous RICO provision set forth in section 302 of the bill." S. REP. NO. 98-225, at 214 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3397. Thus, the legislative history of § 853(k) clarifies that Congress did not intend to bar third parties from participating in a hearing on a restraining order. *See Real Prop. in Waterboro*, 64 F.3d at 755–56; *Roberts*, 141 F.3d at 1471.

Under both the plain language of § 853(k) and the legislative history for the statute, the Restrained Third Parties are not barred from challenging the April 23 restraining orders. Accordingly, the court denies the Government's motion to amend the orders.

---

[1] The analogous RICO provision states: "Except as provided in subsection (l), no party claiming an interest in property subject to forfeiture under this section may . . . intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section . . . ." 18 U.S.C. § 1963(i).

[2] The CCCA was passed into law as part of an omnibus continuing appropriations resolution. *See* Joint Resolution for Fiscal Year 1985, Pub. L. No. 98-473, 98 Stat 1837 (1984).

## II. PROBABLE CAUSE OF A NEXUS BETWEEN THE CONVICTIONS AND THE RESTRAINED PROPERTY

The Restrained Third Parties assert three principal arguments for vacating the April 23 restraining orders. First, they argue that the restraining orders must be voided because NWR has title to the storage tanks and other Washakie equipment that is superior to the Government's claim to the property under the criminal forfeiture statute. They contend that the equipment became fixtures on NWR's land and that under Utah law and the terms of the lease signed by Jacob Kingston, title to the equipment was transferred to NWR. The Restrained Third Parties also assert that Jacob executed a bill of sale to NWR for the equipment in February 2017. The court rejects this argument because the Restrained Third Parties are barred from challenging the Government's claim to the Washakie equipment at this juncture.

The Government may seize or restrain property if it shows that there is probable cause to believe that the property will ultimately be proved forfeitable. *United States v. Monsanto*, 491 U.S. 600, 615–16 (1989). A grand jury's charge in an indictment that a piece of property is subject to forfeiture satisfies the probable cause requirement to restrain property. *United States v. Musson*, 802 F.2d 384, 386–87 (10th Cir. 1986). Moreover, "[a] court may not revisit any matter to which probable cause is established in the indictment" when reviewing the propriety of an order restraining property. *United States v. Jones*, 160 F.3d 641, 644 (10th Cir. 1998).

Here, the grand jury concluded that probable cause supported its charge that "[t]he physical plant once known as Washakie Renewable Energy, LLC . . . and all the equipment installed therein, and affixed thereto" was derived from and traceable to the count 1 conspiracy. By arguing that NWR has superior title to the Washakie equipment, the Restrained Third Parties are challenging the grand jury's finding of probable cause that the equipment is subject to forfeiture. Tenth Circuit

law does not permit the Restrained Third Parties to make this argument in response to a restraining order. They must wait until the ancillary proceedings. *See United States v. Messino*, 122 F.3d 427, 428 (7th Cir. 1997) ("To succeed [in an ancillary proceeding], third parties must prove by a preponderance of the evidence either that they had superior title to the property at the time of the crime or that they are bona fide purchasers of the property.").

Second, the Restrained Third Parties argue that the lease payments are not subject to restraint because the indictment made no findings regarding these payments. While the court agrees that the lease payments are not mentioned in the indictment, the Government can also establish probable cause sufficient to support a restraint on property through other means, including by way of an affidavit. *See United States v. Kaley*, 579 F.3d 1246, 1259 (11th Cir. 2009) (probable cause to restrain property supported by indictment and an affidavit); *United States v. Bissell*, 866 F.2d 1343, 1354 (11th Cir. 1989) (probable cause to restrain property supported by affidavits). The Government provided an affidavit from a special agent for the IRS in support of the rather straight-forward proposition that the lease payments for the storage tanks and for the marijuana cultivation business were derived from the Washakie equipment referenced in the indictment. *See United States v. Betancourt*, 422 F.3d 240, 251–52 (5th Cir. 2005) (lottery winnings were traceable to drug trafficking proceeds used to purchase the winning ticket). The court gave the Restrained Third Parties an opportunity to present evidence at the May 26, 2020 hearing that would show the absence of a nexus between the Washakie equipment and the lease payments. But they elected not to present any evidence at the hearing. Based upon the affidavit presented by the Government, the court finds that there is probable cause to believe that the lease payments were derived, at least in part, from the Washakie equipment described in the indictment. Accordingly, these payments are subject to restraint by the Government.

Third, the Restrained Third Parties argue that the Fifth Amendment requires a hearing to challenge whether probable cause supports a finding that Washakie equipment and the lease payments are traceable to the convictions on the count 1 conspiracy charge. They rely on *United States v. Jones*, 160 F.3d 641, 648 (10th Cir. 1998), which held that a criminal defendant has a Fifth Amendment right to a post-restraint, pre-trial hearing to challenge whether probable cause supports the seizure of assets if the defendant both demonstrates that he or she needs the assets to hire private defense counsel and provides a bona fide reason to believe that the grand jury's probable cause determination was in error. But the Fifth Amendment analysis in *Jones* rested upon a criminal defendant's Sixth Amendment right to choice of counsel. *Id*. at 646. That court reasoned that a post-trial hearing to determine whether the assets were forfeitable would come too late to allow the defendant to use the assets to hire private counsel to provide a criminal defense. *Id. Jones* does not apply to the Restrained Third Parties because they are not criminal defendants.

Moreover, the court need not engage in a Fifth Amendment analysis to determine whether the Restrained Third Parties have a constitutional right to a probable cause hearing because the court already provided them with a hearing. The court set a hearing on the Restrained Third Parties' motions to amend the restraining orders for May 26, 2020. Six days before the hearing, the court entered a docket text order informing the parties that they "should be prepared to present evidence regarding the nexus (or lack thereof) between the defendants' convictions and the lease payments claimed by the Government. . . . The parties should contact court staff regarding any questions regarding the presentation of witness testimony via video as well as the presentation of any exhibits." But the Restrained Third Parties chose not to present any evidence at the hearing challenging the existence of probable cause to believe that the lease payment may be traced to the

9

defendants' crimes. Because the court has already afforded the Restrained Third Parties an opportunity to present evidence on the nexus issue, their Fifth Amendment claim is moot.

In short, the court rejects the Restrained Third Parties arguments to void the April 23 restraining orders. Thus, the court denies their motions to vacate the orders.

## CONCLUSION AND ORDER

For the reasons stated above, the court rules as follows:

1) The Government's motion to amend the April 23 restraining orders is DENIED. [Docket 979].

2) NWR's motion to amend or void the April 23 restraining orders is DENIED. [Docket 982].

3) U.S. Tank and Rail and American Chemical's motion to amend or void the April 23 restraining orders is DENIED. [Docket 999].

DATED January 27, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge