IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JACOB KINGSTON, ISAIAH KINGSTON, LEV DERMEN, RACHEL KINGSTON, and SALLY KINGSTON,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTIONS TO HOLD A PROBABLE CAUSE HEARING<br><br>Case No. 2:18-cr-00365-JNP<br><br>District Judge Jill N. Parrish |

Before the court are motions filed by New Washakie Ranch, LLP (NWR), ECF No. 1123, and American Chemical, LLC and U.S. Tank and Rail, LLC, ECF No. 1125, to hold a probable cause hearing on the restraining orders entered by the court. The court DENIES the motions.

## BACKGROUND

In 2011, NWR leased a plot of land to Washakie Renewable Energy, LLC (WRE). WRE erected buildings on the land and installed equipment and storage tanks for a biofuel production facility. On December 31, 2016, the lease terminated under its own terms. NWR argues that under the terms of the lease, title to the buildings and equipment installed on the land (the Washakie equipment) passed to NWR.

In January 2019, a grand jury charged the owners of WRE, Jacob and Isaiah Kingston, with numerous crimes related to a scheme to fraudulently obtain biofuel tax credits from the United States Treasury. The indictment also charged Rachel Kingston, Sally Kingston, and Lev Dermen with various crimes for participating in the scheme. The indictment charged the defendants with forfeiture of the proceeds traceable to the count 1 conspiracy charge, including "[t]he physical

plant once known as Washakie Renewable Energy, LLC, located at 7550 W 24000 N Plymouth, Utah, and all the equipment installed therein, and affixed thereto." But the indictment did not seek forfeiture of the real property on which the plant and equipment are located. Jacob, Isaiah, Rachel, and Sally Kingston pled guilty to the charges against them. In their plea agreements, they agreed to the forfeiture of the Washakie equipment described in the indictment. A jury convicted Dermen of the charges against him, including the count 1 conspiracy charge.

On March 11, 2019, NWR leased some of its real property and the Washakie equipment to American Chemical. The lease agreement required American Chemical to make monthly payments of $38,806 to NWR.

On May 8, 2019, the court entered a restraining order against NWR. The restraining order prohibited NWR from taking

> any action that would affect the availability or value of the [Washakie equipment], including but not limited to, directly or indirectly, selling, transferring, assigning, pledging, distributing, encumbering, wasting, secreting, depreciating, damaging, hypothecating or in any way diminishing the value of, or cause anyone else to do so, the [Washakie equipment].

On October 25, 2019, NWR leased to True North Organics part of a Washakie warehouse located on NWR's real property to be used in a medical marijuana growing operation. The lease term was six months and required monthly payments of $5,500. NWR also leased four storage tanks located on its real property to U.S. Tank and Rail, LLC. On April 1, 2020, U.S. Tank and Rail entered into a sublease with Big West Oil, LLC for $182,000 per month. The lease term was three months with the option to renew the lease for two additional months.

On April 23, 2020, the court entered a restraining order against American Chemical that required it to "transfer to the United States Treasury any payments related to the [Washakie

equipment] that would otherwise be paid to NWR." On the same date, the court issued restraining orders directing True North and Big West Oil to remit their respective lease payments to the United States Treasury.

NWR, American Chemical, and U.S. Tank and Rail (the Restrained Third Parties) filed motions entitled: "Renewed Motion to Amend or Vacate Restraining Orders and Request for Expedited Hearing." The precise relief requested in the motions is somewhat vague. But based on the cases cited by the Restrained Third Parties, it appears that the principal thrust of the motions is a request for a hearing to determine whether probable cause supports the restraining orders entered against them. In other words, they request a hearing to challenge the basis for entering orders restraining their rights to the Washakie equipment and to payments derived from their leases. At other points in the briefing, however, the Restrained Third Parties request guidance from the court as to whether the restraining orders apply to their underlying real property in the land on which the equipment is located. The court first addresses the probable cause hearing argument. The court then turns to the request for guidance.

## ANALYSIS

I. **PROBABLE CAUSE HEARING**

The Government may seize or restrain property if it shows that there is probable cause to believe that the property will ultimately be proved forfeitable. *United States v. Monsanto*, 491 U.S. 600, 615–16 (1989). Property is subject to forfeiture if it is derived from a violation of certain federal criminal statutes. 21 U.S.C. § 853(a). A grand jury's charge in an indictment that a piece of property is subject to forfeiture satisfies the probable cause requirement to restrain property. *United States v. Musson*, 802 F.2d 384, 386–87 (10th Cir. 1986). Under 21 U.S.C. § 853(e), "[a] court may not revisit any matter to which probable cause is established in the indictment" when

reviewing the propriety of an order restraining property. *United States v. Jones*, 160 F.3d 641, 644 (10th Cir. 1998).

But under certain circumstances, the Fifth Amendment may require a post-restraint hearing to challenge a grand jury's probable cause determination. In deciding whether due process requires such a hearing, courts "consider the private interest affected by the restraint; the risk of an erroneous deprivation of that interest through the procedures used, as well as the probable value of an adversarial hearing; and the government's interest, including the administrative burden that an adversarial hearing would impose." *Id.* at 645 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Applying these principles, the Tenth Circuit has determined that a criminal defendant has a Fifth Amendment right to a post-restraint, pre-trial hearing to challenge whether probable cause supports the seizure of assets if the defendant both demonstrates that he or she needs the assets to hire private defense counsel and provides the court with a bona fide reason to believe that the grand jury's probable cause determination was in error. *Id.* at 646.

Here, the grand jury concluded that probable cause supported its charge that "[t]he physical plant once known as Washakie Renewable Energy, LLC . . . and all the equipment installed therein, and affixed thereto" was derived from and traceable to the count 1 conspiracy. The Kingston defendants pled guilty to the charges against them and conceded in their plea agreements that the Washakie equipment was subject to forfeiture. Dermen was convicted by a jury of the charges against him, including the count 1 conspiracy charge. At Dermen's trial, Jacob and Isaiah Kingston testified that much of the Washakie equipment was purchased with the proceeds from the count 1 conspiracy. Moreover, this court has determined that there is probable cause to believe that the lease payments for use of the storage tanks were derived, at least in part, from the Washakie equipment. Based on the probable cause determinations made by both this court and the grand

jury, the court entered restraining orders designed to maintain the value and availability of the equipment and the lease payments for the equipment.

Relying upon *Mathews* and *Jones*, the Restrained Third Parties argue that they have a Fifth Amendment right to a probable cause hearing to challenge the restraining orders. The court disagrees for two reasons.

First, the court already provided a hearing to the Restrained Third Parties. The court set a hearing on the Restrained Third Parties' motions to amend the restraining orders for May 26, 2020. Six days before the hearing, the court entered a docket text order informing the parties that they "should be prepared to present evidence regarding the nexus (or lack thereof) between the defendants' convictions and the lease payments claimed by the Government. . . . The parties should contact court staff regarding any questions regarding the presentation of witness testimony via video as well as the presentation of any exhibits." But the Restrained Third Parties chose not to present any evidence at the hearing challenging the existence of probable cause to believe that the Washakie equipment or the lease payments at issue were traceable to the defendants' crimes. Because the court has already afforded the Restrained Third Parties an opportunity to present evidence on the nexus issue, their Fifth Amendment claim is moot.

Second, the Restrained Third Parties have not satisfied the *Jones* requirements for a probable cause hearing. In that case, the Tenth Circuit held that because of a criminal defendant's Sixth Amendment right to choice of counsel, a defendant has a due process right to a pre-trial probable cause hearing to determine whether he or she may access frozen assets to hire defense counsel. *Jones*, 160 F.3d at 646. But a criminal defendant must satisfy two prerequisites before receiving a probable cause hearing. The defendant must both "demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel

and provide for herself and her family" and "make a prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets" are traceable to the underlying criminal offense. *Id.* at 647.

The Restrained Third Parties cannot have a greater due process right to a hearing than a criminal defendant awaiting trial. Thus, at minimum, they must satisfy the *Jones* requirements in order to be entitled to a probable cause hearing.[1] But the Restrained Third Parties have not produced financial records or other evidence demonstrating that any restrained assets are the only source of funds to pay counsel. Nor have they made a prima facie showing of a lack of probable cause to believe that the Washakie equipment was derived from the criminal proceeds of the defendants in this case. Because the Restrained Third Parties have not complied with the *Jones* requirements, they ae not entitled to a probable cause hearing on the court's order restraining their use of the equipment.

## II.   EQUITABLE DISTRIBUTION OF THE LEASE PAYMENTS

NWR attached to its brief the declaration of the president of the company that manages it, Rachel Young. Ms. Young testifies that the real property on which the equipment and plant are located has been owned by NWR since 1992—long before the events giving rise to these criminal proceedings. Moreover, the leases at issue clearly give the lessees the right to use not only the equipment and plant, but also the real property on which the equipment and plant are located.

The Young declaration asserts that NWR is behind on the property taxes owed to Box Elder County and that the court's restraining order has rendered it difficult for NWR to lease its real

---

[1] Because the Restrained Third Parties have not satisfied the *Jones* requirements, the court need not decide the precise contours of their due process right—if any—to a probable cause hearing.

property and the equipment in order to pay the tax bill. Young also attaches appraisals of the real property and equipment, which concluded that the equipment was functionally obsolete and failed to contribute substantial value to NWR's real property. NWR argues that the status quo is untenable and requests clarification regarding its ability to enter a lease to meet its tax obligations.

Although there is probable cause to believe that the lease payments for use of the Washakie equipment were derived at least in part from the defendants' crimes in this case, there is no probable cause to believe that the lease payments can be traced *exclusively* to the physical plant or the equipment. The Government makes no claim to the land owned by NWR to which the Washakie equipment is affixed. Undoubtably at least some portion of the lease payments owed by True North, Big West Oil, and American Chemical are attributable to the land indisputably owned by NWR. Additionally, some portion of the lease payments may be attributable to NWR's efforts in finding interested parties to lease the equipment, in housing the equipment, and in preventing a tax sale of the real property on which the equipment is located. The court invited NWR to present evidence regarding the equitable division of these lease payments between NWR and the Government at the May 26, 2020 hearing. ECF No. 1013. But no evidence was presented because the parties reached an agreement regarding division of the lease payments.

NWR and the Government are free to resolve the issue of distribution of past or future lease payments by agreement. But if it so desires, NWR (or another party) may request a hearing regarding the equitable distribution issue of any lease payments.

## CONCLUSION AND ORDER

The court DENIES the Restrained Third Parties' motions for a probable cause hearing. ECF Nos. 1123, 1125.

DATED January 27, 2021.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge