IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JACOB KINGSTON, ISAIAH KINGSTON, LEV DERMEN, RACHEL KINGSTON, and SALLY KINGSTON,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR PRELIMINARY ORDER OF FORFEITURE<br><br>Case No. 2:18-cr-00365-JNP<br><br>District Judge Jill N. Parrish |

    The government charged defendants Jacob Kingston, Isaiah Kingston, Rachel Kingston, Sally Kingston, and Lev Dermen with various offenses arising out of a conspiracy to defraud the United States of renewable tax credits and launder the proceeds of the fraud. The Kingston defendants pled guilty to many of the counts against them. Dermen was convicted of ten counts against him after a jury trial. Before the court is the government's motion for a preliminary order of forfeiture for a number of specific properties derived from payments fraudulently obtained from the United States. ECF No. 1383. The government also seeks a money judgment against Jacob Kingston in the amount of $338,606,523, a money judgment against Isaiah Kingston in the amount of $335,606,523, and a money judgment against Dermen in the amount of $181,847,376.

    The court GRANTS IN PART and DENIES IN PART the government's motion for a preliminary order of forfeiture. The court grants the government's request for a preliminary order of forfeiture of the specific properties identified by the government. The court also grants the request to include money judgments against Jacob Kingston and Dermen. The court denies the request for a money judgment against Isaiah Kingston.

I.      FORFEITURE OF SPECIFIC PROPERTY

The government seeks forfeiture of a number of specific properties due to the defendants' convictions for the mail fraud conspiracy pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). *See United States v. Courtney*, 816 F.3d 681, 685 (10th Cir. 2016) (Although § 981 is a civil forfeiture statute, § 2461(c) operates as a "'gap-filler' between civil and criminal forfeiture, in that it permits criminal forfeiture when no criminal forfeiture provision applies to the crime charged against a particular defendant but civil forfeiture for that charged crime is nonetheless authorized." (Citation omitted)). Section 981(a)(1)(C) provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of [the mail fraud statute]" is subject to forfeiture. The government also seeks forfeiture of the specified properties due to the defendant's convictions for various money laundering charges under 18 U.S.C. § 982(a)(1), which requires a court imposing a sentence for a money laundering charge to "order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."

At Dermen's request, the court held an evidentiary hearing to determine whether a number of the properties sought by the government were subject to forfeiture. *See* FED. R. CRIM. P. 32.2(b)(1)(A). The court entered an order finding that most of these properties were forfeitable because they were derived from the proceeds of the criminal conspiracy. ECF No. 1376. For the reasons stated in that order, the court will include these properties in the preliminary order of forfeiture.

The government also seeks the forfeiture of other properties that were not included in the Dermen evidentiary hearing. In order to establish the necessary nexus between the defendants' criminal convictions and these properties, the government has produced two declarations signed

by Special Agent Stephen Washburn, which traced the fraud proceeds to the properties. Based on this evidence, the court determines that the government has met its burden of proving that these additional properties were derived from the proceeds of the fraud. Accordingly, the court grants the government's request for a preliminary order of forfeiture for the specific properties referenced in its motion.

## II.     MONEY JUDGMENTS

The government also asks the court to include in the preliminary order of forfeiture money judgments against Jacob Kingston, Isaiah Kingston, and Dermen.[1] Unlike an order for the forfeiture of specific property, a money judgment is not limited to assets directly traceable to the underlying crime or crimes. STEFAN D. CASSELLA, FORFEITURE LAW IN THE UNITED STATES § 15-3(e) (2d. ed. 2013). The government may satisfy the judgment by seizing any money or assets that the defendant may possess or acquire in the future. *See id.* at § 24-7; *United States v. Hall*, 434 F.3d 42, 59 (1st Cir. 2006).

Because § 981 and § 982 require the forfeiture of property derived from or involved with a criminal offense, these statutes do not specifically authorize courts to enter a money judgment against a criminal defendant. However, circuit courts, including the Tenth Circuit, have inferred the authority to enter a money judgment. *United States v. McGinty*, 610 F.3d 1242, 1246 (10th Cir. 2010) ("Although the criminal forfeiture statute [§ 982] does not explicitly refer to money judgments, our sister circuits have uniformly recognized that money judgments representing the unlawful proceeds are appropriate."); *United States v. Padron*, 527 F.3d 1156, 1162 (11th Cir. 2008) (holding that courts may award money judgments pursuant to § 981 even though this statute

---

[1] The government does not request money judgments against Rachel or Sally Kingston.

does not expressly authorize them); *United States v. Misla-Aldarondo*, 478 F.3d 52, 73–74 (1st Cir. 2007) ("If the government has proven that there was at one point an amount of cash that was directly traceable to the offense, and that thus would be forfeitable under 18 U.S.C. § 982(a), that is sufficient for a court to issue a money judgment, for which the defendant will be fully liable whether or not he still has the original corpus of tainted funds—indeed, whether or not he has any funds at all.").

In their statements in advance of plea, Jacob and Isaiah Kingston admitted that the defendants fraudulently obtained $511,842,773 from the United States. The government presented evidence that from this amount, fraud proceeds totaling $176,236,250 were transferred to Dermen or to accounts controlled by or benefitting him. The government also showed that $5,611,126 was comingled with the fraud proceeds transferred to Dermen and that this amount was involved in the money laundering conspiracy. In total, therefore, the government seeks a money judgment against Dermen in the amount of $181,847,376. The court agrees that a money judgment in this amount is appropriate.

The government also requests a money judgment against Jacob and Isaiah Kingston for the total amount of the fraud proceeds that were not transferred to Dermen. Subtracting $176,236,250 from the total amount fraudulently obtained ($511,842,773), the government asks the court to find that Jacob and Isaiah are jointly and severally liable for $335,606,523 in fraud proceeds. Additionally, the government seeks to augment the money judgment against Jacob with the $3,000,000 that Dermen transferred back to Jacob in order to purchase a house. Thus, the government requests a money judgment against Jacob in the amount of $338,606,523 and a judgment against Isaiah in the amount of $335,606,523.

4

In determining whether Jacob and Isaiah should be jointly and severally liable for the fraud proceeds that were not transferred to Dermen, the court considers the Supreme Court's opinion *Honeycutt v. United States*, 581 U.S. 443 (2017). That case also involved two brothers convicted of criminal conspiracy. One brother owned a hardware store, while the other managed sales and inventory for the store. *Id.* at 445. The hardware store sold large quantities of chemicals to individuals who used them to manufacture methamphetamine, netting $269,751.98 in profit for the business. *Id.* at 445–46. The government charged both brothers with crimes related to knowingly selling the chemicals for illegal drug manufacturing. *Id.* at 446. The brother who owned the hardware store pled guilty and agreed to forfeit $200,000 to the government pursuant to 21 U.S.C. § 853(a)(1), "which mandates forfeiture of 'any proceeds the person obtained, directly or indirectly, as the result of' drug distribution." *Id.* The brother employed by the store went to trial and was found guilty of most of the charges against him. *Id.* The district court denied the government's request for a money judgment in the amount of $69,751.98—the difference between the $200,000 paid by the brother who owned the hardware store and the total profit realized by the hardware store from the sale of the chemicals—because the brother who worked in the store did not personally benefit from the transactions. *Id.* The Sixth Circuit reversed, holding that "the brothers are '"jointly and severally liable for any proceeds of the conspiracy."'" *Id.* at 447.

The Supreme Court granted certiorari. *Id.* Analyzing the language of § 853(a)(1)—which authorizes the forfeiture of specific property, including "any proceeds the person obtained, directly or indirectly, as the result of [the criminal] violation"—as well as § 853(p)—which authorizes the forfeiture of substitute property if the property described in § 853(a)(1) cannot be recovered—the Court held that the government could not obtain a money judgment against the brother who worked in the hardware store but did not have an ownership interest in the store. The Court reasoned that

5

subdivision (a)(1) permits the forfeiture of the proceeds of a crime obtained by a defendant, while subdivision (p) permits the forfeiture of substitute property in the form of a money judgment if the criminal proceeds cannot be located. *Id.* at 452. Accordingly, § 853 does not "authorize the Government to confiscate substitute property from other defendants or co-conspirators; it authorized the Government to confiscate assets only from the defendant who initially acquired the property and who bears responsibility for its dissipation." *Id.* Because the defendant in *Honeycutt* did not own the hardware store and did not obtain the profits for the chemical sales or otherwise personally benefit from the sales, the government was not entitled to a money judgment against him. *Id.* at 454.

The government argues that *Honeycutt* does not prevent the court from holding Jacob and Isaiah Kingston jointly and severally liable for the fraud proceeds because they were both "kingpins" of the mail fraud conspiracy and jointly obtained the tainted funds.[2] *See United States*

---

[2] The Tenth Circuit has noted that there is a split of authority as to whether the holding of *Honeycutt* applies to money judgments ordered pursuant to § 981. *United States v. Channon*, 973 F.3d 1105, 1115 (10th Cir. 2020). The Third Circuit has held that *Honeycutt* applies to forfeiture rulings under § 981. *United States v. Gjeli*, 867 F.3d 418, 427–28 & n.16 (3d Cir. 2017). Focusing on differences between the language of § 853(a)(1) and § 981(a)(1)(C), the Sixth and Eighth Circuits have held that *Honeycutt* has no bearing on money judgments issued under § 981. *United States v. Sexton*, 894 F.3d 787, 799 (6th Cir. 2018); *United States v. Peithman*, 917 F.3d 635, 652 (8th Cir. 2019). The government states that this court need not chose sides in this circuit split because *Honeycutt* does not preclude joint liability under the facts of this case.

Even if it were necessary to address the applicability of *Honeycutt* to § 981, the court does not find the reasoning of the Sixth and Eighth Circuit opinions to be persuasive. As discussed above, the *Honeycutt* opinion was principally based upon the interpretation of two subdivisions of § 853: subdivision (a)(1), which permits the forfeiture of property derived from criminal conduct, and subdivision (p), which permits the forfeiture of substitute property if the tainted property cannot be found. Subdivision (p) authorizes a money judgment as a substitute for the missing criminal proceeds. While § 981 contains provisions permitting the forfeiture of the proceeds of a crime (in this case, subdivision (a)(1)(C)), it does not contain any provision for the forfeiture of substitute property. Thus, unlike § 853, there is nothing in the language of § 981 that explicitly authorizes courts to order criminal defendants to satisfy a money judgment. *See Padron*, 527 F.3d at 1162

*v. Leyva*, 916 F.3d 14, 30–31 (D.C. Cir. 2019) (one of the principal leaders of a international drug distribution organization was liable for the proceeds for activities that he directly supervised); *SEC v. Metter*, 706 F. App'x 699, 702 (2d Cir. 2017) (unpublished) (an individual that controlled a corporation could be liable for the proceeds of the corporation under *Honeycutt*). Pointing to Isaiah's position as CFO and, at times, part owner of Washakie Renewable Energy, the entity that received the fraud proceeds, the government argues that Isaiah should be held jointly liable with Jacob to repay the funds fraudulently obtained by Washakie.

In determining whether Isaiah should be jointly liable with Jacob, the court looks to whether Isaiah exercised a degree of control over the fraudulently obtained funds that would justify holding him responsible for their dissipation. *See Honeycutt*, 581 U.S. at 452. Although Isaiah's position as an officer and sometimes part owner of Washakie suggests a measure of control over the disposition of the funds fraudulently obtained by the company, the evidence presented at Dermen's jury trial paints a different picture. Both Jacob and Isaiah testified at great length in the trial. Based on this testimony, the court finds that although Isaiah executed many of the wire transfers, Jacob ultimately decided where to transfer the money. Unlike Jacob, moreover, who indulged in extravagant purchases and transferred money to entities that he owned or controlled, the evidence shows that Isaiah did not directly benefit from the fraud proceeds. The government points to Isaiah's admission in his statement in advance of plea that he agreed with Jacob to use

---

(holding that courts may award money judgments pursuant to § 981 even though this statute does not expressly authorize them). Because the court's authority to order a money judgment is not tethered to the language of § 981(a)(1)(C), *Sexton* and *Peithman*, which are based on interpretations of language contained in this subdivision, do not persuade the court that the holding of *Honeycutt* does not apply to money judgments awarded under § 981.

some of the fraud proceeds to build up Washakie and their church. But agreeing with Jacob's plan does not prove that he had any meaningful control over the disposition of the funds.

In short, the court finds that the government has not proven that the court should enter a money judgment against Isaiah Kingston in the amount of $335,606,523. The government has proven, however, that money judgments should be entered against Jacob Kingston and Dermen.

## CONCLUSION

For the above-stated reasons, the court will enter a preliminary order of forfeiture for the specific properties requested by the government. The court will also include a money judgment against Jacob Kingston in the amount of $338,606,523 and against Dermen in the amounts of $181,847,376. The court will not enter money judgments against Isaiah, Rachel, or Sally Kingston.

DATED March 24, 2023.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge