IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JACOB KINGSTON, ISAIAH KINGSTON, LEV DERMEN, RACHEL KINGSTON, and SALLY KINGSTON,<br><br>    Defendants.<br><br>ZUBAIR KAZI,<br><br>    Third-Party Petitioner. | MEMORANDUM DECISION AND ORDER DISCHARGING ORDER TO SHOW CAUSE<br><br>Case No. 2:18-cr-00365-JNP<br><br>District Judge Jill N. Parrish |

The court ordered Zubair Kazi to show cause why he should not be held in contempt for failing to make payments to the government on a loan he received from the defendants in this criminal case. ECF No. 1813. Kazi has shown that he should not be sanctioned, and the court DISCHARGES the order to show cause.

## BACKGROUND

Lev Dermen, Jacob Kingston, and others engaged in a wide-ranging scheme to fraudulently obtain biofuel production credits from the government. Kazi was a friend of Dermen but was not involved in the biofuel fraud. In June 2013, a court ordered Kazi to either pay a $11,226,211.21 judgment or transfer company stock to the plaintiff in a civil lawsuit against him. Dermen agreed to provide a short-term loan to pay the judgment. In order to launder funds obtained from the biofuel production credit scheme, Dermen directed Kingston to wire fraud proceeds from his company, Washakie Renewable Energy LLC, to Kazi's lawyer in order to satisfy the judgment.

Shortly thereafter, Washakie and a company owned by Dermen, Lion's Aviation LLC, placed liens on nine real estate properties owned by Kazi as collateral for the loan. Dermen also required Kazi to place $2 million into a joint bank account as additional collateral.

In June 2014, Dermen withdrew $1 million from the joint bank account. Then in August 2014, Washakie and Lion's attempted to foreclose on the property liens. Kazi sued to prevent foreclosure. In February 2015, the parties settled the litigation. As part of the settlement, a company owned by Kazi—Kazi Foods Inc., which purported to be the borrower—executed a promissory note with a company owned by Dermen—SBK Holdings USA, Inc., which purported to be the lender. Under the promissory note, Kazi Foods promised to pay $12 million to SBK Holdings together with interest. The note required Kazi Foods to make monthly interest-only payments to SBK Holdings at a rate of 7% interest per annum (or $70,000 each month) for a period of five years. At the conclusion of the five-year period, the entire principal amount of the loan was due.

Kazi Foods faithfully made monthly interest-only payments pursuant to the terms of promissory note. The note made no mention of the funds held in the joint bank account. But in April 2015, Derment withdrew the remaining $1 million held in the account. Around July 2016, the government contacted Kazi and told him that the funds that were used to pay off the judgment against him were obtained fraudulently. The government instructed Kazi to stop making monthly interest payments on the promissory note. Kazi complied with this request.

In August 2018, the government obtained an indictment against Dermen, Kingston, and Kingston's brother based on the biofuel fraud. The indictment contained three counts of money laundering for interest payments made by Kazi Foods to SBK Holdings. The indictment also gave notice of the government's intent to seek forfeiture of the outstanding balance owed on the loan

made to Kazi as well as all interest payments made or owed by Kazi. On August 23, 2018, the government filed an ex parte motion for a restraining order to preserve assets for which the government intended to seek forfeiture. Later the same day, the court granted the motion and entered a restraining order. The order required the defendants, Washakie, SBK Holdings, Kazi, "and their agents, servants, employees, attorneys, family members and those persons in active concert or participation with them, and all persons and entities with knowledge of this Order, and those persons, financial institutions, or entities who have any interest or control over" the property identified by the government for forfeiture to refrain from taking any action that would affect the government's ability to recover the property. The restraining order also specifically ordered that "Zubair Kazi shall transfer any payments that would otherwise be paid to SBK Holdings USA, Inc. related to the Subject Property to the Treasury Forfeiture Fund. Within one week of this order's date, Mr. Kazi shall contact the IRS at (702) 868-5107 to receive payment routing instructions." On August 30, 2018, the government served the restraining order on Kazi's counsel, who called the phone number contained in the order. The phone call was not answered, and no one returned the call.

In July 2019, Kingston and several other codefendants pled guilty. In January 2020, Dermen went to trial on the charges against him. The government called Kazi as a witness regarding the $11.2 million loan that he had received. In March 2020, the jury found Dermen guilty of all of the charges against him. In April 2023, the court sentenced Dermen to 40 years in prison. In June 2023, Dermen appealed from the criminal judgment. In July 2025, the Tenth Circuit affirmed Dermen's conviction, and in February 2026, the Supreme Court denied a petition for writ of certiorari.

After the jury rendered its verdict against Dermen, the government learned for the first time that Kazi had been the victim of a sperate fraudulent scheme perpetrated by one of Dermen's associates, Santiago Garcia Gutierrz. In January 2024, the government charged Gutierrez with a number of crimes associated with this fraudulent scheme. Gutierrez pled guilty, and in July 2025, he was sentenced to nine years in prison.

In March 2023, this court entered a preliminary order of forfeiture in the criminal case against Dermen and Kingston. One of the items listed for forfeiture was the "outstanding amount of principal and interest due on June 21, 2013, loan to Zubair Kazi in the amount of $11,226,211.21." In June 2023, Kazi filed a motion to set aside forfeiture of the $11.2 million loan that he had received from Dermen and Kingston. That motion is currently pending.

For almost seven years after the court entered its August 23, 2018 restraining order, Kazi did little to attempt to make payments to the government. His attorney called the number provided in the order once. Kazi's attorney also represented that he reached out to the prosecution team in the Dermen litigation about the payments, but this communication went nowhere. And despite communicating with Kazi and his lawyers dozens of times over the years, the government never asked Kazi to make payments. The government indicates that it chose to forgo enforcement of the restraining order because Kazi was a witness in the Dermen case and a victim in the Gutierrez prosecution. But in July 2025—after the Tenth Circuit affirmed Dermen's conviction and after Gutierrez had been sentenced—the government demanded for the first time that Kazi make payments pursuant to the restraining order.

After the government made its demand, Kazi did not make any payments. But he did start negotiations with the government regarding the amount of money that he should be required to pay in order to satisfy his forfeiture obligation. The parties, however, failed to reach an agreement,

and in March 2026, the government moved for an order to show cause (OSC) why Kazi should not be held in contempt for failing to comply with the court's August 2018 restraining order. Kazi did not respond to the motion, and on March 17, 2026, the court ordered Kazi to show cause why he should not be held in contempt. Kazi filed a written response, and on June 24, 2026, the court held a hearing on the OSC. A few days before the hearing, Kazi wired $4 million to the government as a payment towards his forfeiture obligation.

## ANALYSIS

Both by statute and pursuant to inherent authority, federal courts have discretion to sanction individuals for failure to comply with their orders. 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command."); *Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt."). A party requesting sanctions for contempt of a court order "has the burden of proving, by clear and convincing evidence" that: (1) "a valid court order existed," (2) the individual subject to the order "had knowledge of the order," and (3) the individual "disobeyed the order." *F.T.C. v. Kuykendall*, 371 F.3d 745, 756–57 (10th Cir. 2004) (en banc) (citation omitted).

The government asks the court to sanction Kazi for failure to comply with the August 2018 restraining order directing him to "transfer any payments that would otherwise be paid to SBK Holdings" to an account controlled by the United States. The court declines to sanction Kazi for two principal reasons.

First, the government has not shown by clear and convincing evidence that Kazi has disobeyed the specific terms of the court's restraining order. The order required Kazi, in his

personal capacity,[1] to transfer to the government any payments that he would otherwise have paid to SBK Holdings. This language refers to the obligation under the promissory note to make monthly, interest-only payments on the loan in the amount of $70,000 and, arguably, the ballon payment of the principal balance remaining on the loan due after five years of interest payments. But the promissory note does not oblige Kazi to make these payments. The note requires his company, Kazi Foods, to make them. Thus, there were no payments that Kazi, in his personal capacity, would have paid to SBK Holdings absent the court's restraining order.

"Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed." *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974). "A party alleging civil contempt must therefore prove by clear and convincing evidence that the order its adversary violated was 'clear and unambiguous.'" *Derma Pen, LLC v. 4EverYoung Ltd.*, 737 F. App'x 396, 401–02 (10th Cir. 2018) (unpublished); *accord Bowles Fin. Grp., Inc. v. Stifel, Nicolaus & Co.*, 33 F.3d 62 (10th Cir. 1994) (unpublished) ("[C]ivil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous." (quoting *Project B.A.S.I.C. v. Kemp*, 947 F.2d 11, 16 (1st Cir.1991)). Thus, in a civil contempt proceeding, any ambiguities in a restraining order are construed in favor of the enjoined party. *Reliance Ins. Co. v. Mast Const. Co.*, 84 F.3d 372, 377 (10th Cir. 1996). The

---

[1] During the hearing on this matter, the government argued that the restraining order contains broad language that would bind Kazi Foods as well as Kazi himself to make payments on the loan to the government. But the language to which the government refers—which binds "persons, financial institutions, or entities who have any interest or control over" the property the government had identified for forfeiture—applies only to the first clause of the restraining order, which requires the identified individuals and entities to refrain from taking any action to transfer or diminish the value of the property. The expansive language referenced by the government does not apply to second clause of the restraining order, which is the subject of this contempt proceeding. This second clause is directed toward Kazi only.

August 2018 restraining order is at minimum ambiguous as to whether it requires Kazi to make payments to the government that were owed by Kazi Foods under the terms of the promissory note. Because the restraining order is not clear, the government has not met its burden of proving by clear and convincing evidence that Kazi disobeyed the order.

Second, even if the government could prove all of the elements of civil contempt, the court would exercise its discretion not to sanction Kazi under the particular facts of this case. *See* 18 U.S.C. § 401 (authorizing a federal court "at its discretion" to sanction disobedience to an order); *Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1231 (10th Cir. 2001) ("A district court may exercise broad discretion in using its contempt power to assure compliance with its orders."). In August 2018, just three weeks after the first indictment was filed in this case, the court granted the government's ex parte motion for a restraining order. Pursuant to 21 U.S.C. § 853(e)(1), the purpose of the order was to preserve the availability of specific property until entry of a final order of forfeiture. For seven years after the court entered this preliminary restraining order, however, the government elected not to enforce it. The government now argues for the first time that the court should require Kazi to pay the full amount he currently owes on the loan he received, which the government asserts to be more than $19 million. But the need for the preliminary relief the court ordered almost eight years ago has diminished significantly. The court has set an evidentiary hearing for early September 2026 to determine the full amount Kazi owes on the loan obligation. After this hearing, the court can enter a final order of forfeiture for the loan. The  government has not shown that an additional delay of a few months will significantly affect Kazi's ability to satisfy the final order of forfeiture. Moreover, thorny issues remain as to the total amount currently owed on the loan— including the extent to which the terms of the promissory note govern the loan obligation, whether various payments and withdrawals from the joint bank account should be deducted from the loan

amount, and the amount of interest owed on the loan. These issues should be finally resolved before ordering Kazi to pay millions of dollars to the government. Accordingly, the court elects not to find Kazi in contempt of the court's preliminary order nearly eight years after the court entered it.

## CONCLUSION

For the above stated reasons, the court discharges its order for Kazi to show cause why he should not be held in contempt of court.

DATED July 2, 2026.

BY THE COURT

Jill N. Parrish
United States District Court Judge