Exhibits to Third Final Order of Forfeiture

EXHIBIT
A

## *PROMISSORY NOTE*

Signed Concurrently with Security Agreement

$12,000,000.00 Date: February 2, 2015

For value received, the undersigned Kazi Foods, Inc. located at 3671 Sunswept Drive, Studio City, CA 91604 United States of America(the "Borrower"), at Los Angeles, California, promise to pay to the order of SBK Holdings USA, Inc. (c/o Pillar Law Group, APLC 150 S. Rodeo Dr. Suite 260, Beverly Hills, CA 90212) (the "Lender"), at (or at such other place as the Lender may designate in writing), the sum of $12,000,000.00 , in United States Currency (USD) with interest as set forth below.

### I. TERMS OF REPAYMENT

#### A. Payments

Commencing December 15, 2014, and each consecutive month thereafter for five years, Plaintiffs shall pay seventy thousand dollars ($70,000.00) interest-only payments (constituting seven percent (7%) interest per annum) each month in lawful money of the United States by either a (i) bank wire sent to; or (ii) a certified or cashier's check drawn to the order of Lender and Pillar Law Group, APLC Attorney-Client Trust Account. Borrowers shall pay off the entire principal balance of the loan no later than December 15, 2019 (the "Due Date").

#### B. Acceleration of Debt

If any payment obligation under this Note is not paid when due, the remaining unpaid principal balance and any accrued interest shall become due immediately at the option of the Lender. The Borrower shall have a payment cure period of thirty (30) days. Not action shall be taken by the Lender unless said payment is not made within this cure period.

### II. SECURITY

This Note is secured by a Security Agreement. The Lender is not required to rely on the above security instrument and the assets secured therein for the payment of this Note in the case of default, but may proceed directly against the Borrower.

### III. PREPAYMENT

The Borrower reserves the right to prepay this Note (in whole or in part) prior to the Due Date with no prepayment penalty.

GOVERNMENT EXHIBIT
26-22
2:18-CR-00365 JNP
PENGAD 800-631-6989

## IV. COLLECTION COSTS

If any payment obligation under this Note is not paid when due, the Borrower promises to pay all costs of collection, including reasonable attorney's fees, whether or not a lawsuit is commenced as part of the collection process.

## V. DEFAULT

If any of the following events of default occur, this Note and any other obligations of the Borrower to the Lender, shall become due immediately, without demand or notice:

1) the failure of the Borrower to pay the principal and any accrued interest in full on or before the Due Date;

2) the death of the Borrower or Lender;

3) the filing of bankruptcy proceedings involving the Borrower as a debtor;

4) the application for the appointment of a receiver for the Borrower;

5) the making of a general assignment for the benefit of the Borrower's creditors;

6) the insolvency of the Borrower.

In addition, the Borrower shall be in default if there is a sale, transfer, assignment, or any other disposition of any real estate pledged as collateral for the payment of this Note, or if there is a default in any security agreement which secures this Note.

## VI. SEVERABILITY OF PROVISIONS

If any one or more of the provisions of this Note are determined to be unenforceable, in whole or in part, for any reason, the remaining provisions shall remain fully operative.

## VII. MISCELLANEOUS

All payments of principal and interest on this Note shall be paid in the legal currency of the United States. The Borrower waives presentment for payment, protest, and notice of protest and nonpayment of this Note.

No renewal or extension of this Note, delay in enforcing any right of the Lender under this Note, or assignment by Lender of this Note shall affect the liability or the obligations of the Borrower. All rights of the Lender under this Note are cumulative and may be exercised concurrently or consecutively at the Lender's option.

**VIII. GOVERNING LAW**

This Note shall be construed in accordance with the laws of the State of California.

**IN WITNESS WHEREOF,** this Agreement has been executed and delivered in the manner prescribed by law as of the date first written above.
Signed this 4 day of February, 2015, at Studio City, California.

Borrower:
**Kazi Foods Inc.**

By:____________________
Zubair Kazi
Title: President

Lender:
**SBK Holdings USA, Inc.**

By:____________________
Name:
Title:

EXHIBIT B

# SECURITY AGREEMENT

**Signed Concurrently with Promissory Note Between Kazi Foods, Inc. and SBK Holdings USA, Inc. on February 2, 2015**

THIS SECURITY AGREEMENT ("Agreement") is made and dated as of February 2, 2015 by and between Kazi Foods, Inc. located at 3671 Sunswept Drive, Studio City, CA 91604 , United States of America(the "Debtor"), at Los Angeles, California, and SBK Holdings USA, Inc. (150 S. Rodeo Dr., Suite 260, Beverly Hills, CA 90212) ("Secured Party").

## RECITALS

A. Debtor has executed and delivered that certain $12,000,000.00 Secured Promissory Note in favor of Secured Party, dated concurrently herewith (the "Note"), representing certain indebtedness of Debtor to Secured Party which was incurred in connection with Debtor's borrowing above-mentioned sum from the Secured Party. All terms not otherwise defined herein are used with the same meaning as set forth in the Note.

B. As security for the payment and performance of its obligations to Secured Party under the Note, it is the intent of Debtor to grant to Secured Party and to create a security interest in all personal property of Debtor, and proceeds thereof, as hereinafter provided.

## AGREEMENT

IN CONSIDERATION of the foregoing recitals and for other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged, Secured Party and Debtor hereby agree as follows:

SECTION 1. Grant of Security Interest. Debtor hereby grants to Secured Party a security interest in the property described in Section 2 below (collectively and severally, the "Collateral") to secure payment and performance of the obligations of Debtor to Secured Party described in Section 3 below (collectively and severally, the "Obligations").

SECTION 2. Collateral. The Collateral shall consist of all of the following businesses attached to this agreement as Exhibit A and as shall include the following:

(a) all other equipment, goods, inventory, and other personal property and trade names, trademarks and intellectual property in which Debtor has or hereafter acquires rights, and all products thereof, and all substitutions, replacements, additions, or accessions therefor and thereto, except to that property that has been financed or will require financing to purchase or construct during the term of this Agreement; and

(b) all present and future accessories, additions, attachments, replacements, substitutions, proceeds, products, offspring, rents, or profits of the foregoing Collateral. For purposes of this Agreement, the term "proceeds" includes whatever is receivable or received



GOVERNMENT EXHIBIT 3-22 2:18-CR-00365 JNP



WASH-0373115-096

when Collateral or proceeds is sold, collected, exchanged or otherwise disposed of, whether such disposition is voluntary or involuntary, and includes, without limitation, all rights to payment, including returned premiums, with respect to any insurance relating thereto.

Notwithstanding anything in this Agreement to the contrary, the term "Collateral" shall not include any fee simple absolute interest in real property ("real property" for the purposes hereof of having the same meaning as such term has as used in section 726 of the California Code of Civil Procedure).

SECTION 3. Obligations. The Obligations of Debtor secured by this Agreement shall consist of the following:

(a) Repayment of any and all indebtedness of Debtor to Secured Party, whether now existing or hereafter created, voluntary or involuntary, whether or not jointly owed with others, direct or indirect, absolute or contingent, liquidated or unliquidated, determined or undetermined, whether or not from time to time decreased or extinguished and later increased, created or incurred, arising under the Note or this Agreement (or any and all amendments, modifications, renewals or extensions of the foregoing including those which are evidenced by new or additional documents or which change the rate of interest on any of the obligations secured hereby), or under open account or otherwise and all interest that accrues after the commencement of any bankruptcy or insolvency proceeding by or against Debtor;

(b) Performance of each agreement of Debtor contained herein or in the Note; and

(c) Payment of any and all costs and expenses incurred by Secured Party pursuant to Section 13 below.

SECTION 4. Representations and Warranties; Covenants of Debtor.

4.1 Representation and Warranties. Debtor hereby represents and warrants to Secured Party that: (i) Debtor is a California corporation authorized to transact business in Los Angeles, California; and (ii) Debtor has good and marketable title to the Collateral listed on Exhibit A , free and clear of any liens, encumbrances or other security interests.

4.2 Covenants. Debtor hereby agrees:

(a) To do all acts that may be necessary to maintain, preserve and protect the Collateral;

(b) Not to use or permit any Collateral to be used unlawfully or in violation of any provision of this Agreement or any applicable statute, regulation or ordinance or any policy of insurance covering the Collateral;

(c) To pay promptly when due all taxes, assessments, charges, encumbrances

and liens now or hereafter imposed upon or affecting any Collateral;

(d) To procure, execute and deliver from time to time any endorsements, assignments, financing statements and other writings (and pay promptly all related filing fees, stamp taxes or similar costs and expenses) deemed necessary or appropriate by Secured Party to perfect, maintain and protect the security interest created hereunder and the priority thereof;

(e) To deliver promptly to Secured Party all originals of Collateral or proceeds consisting of chattel paper or instruments;

(f) To appear in and defend any action or proceeding which may affect its title to or Secured Party's interest in the Collateral;

(g) If Secured Party gives value to enable Debtor to acquire rights in or the use of any Collateral, to use such value for such purpose; and

(h) To keep separate, accurate and complete records of the Collateral and to provide Secured Party promptly with such records and such other reports and information relating to the Collateral as Secured Party may request from time to time.

4.3 <u>Negative Covenants</u>. Debtor shall not without the prior written consent of Secured Party (which shall not be unreasonably withheld):

(a) Merge, consolidate, or dissolve and liquidate;

(b) Guarantee any obligation of persons or entities other than Debtor;

(c) Make distributions, repurchase or redeem membership interests; or

(d) Sell or transfer any Collateral (except for the sale of finished inventory in the ordinary course of business and not in satisfaction of any debt) for less than reasonably equivalent value.

SECTION 5. <u>Authorized Action by Secured Party</u>. Debtor hereby irrevocably appoints Secured Party as its attorney-in-fact, which power of attorney shall be irrevocable and coupled with an interest, to do (but Secured Party shall not be obligated to do and shall incur no liability to Debtor or any third party for failure so to do) any act which Debtor is obligated by this Agreement to do, and to exercise such rights and powers as Debtor might exercise with respect to the Collateral, including, without limitation, the right to take the following actions:

(a) Collect by legal proceedings or otherwise and endorse, receive and acknowledge receipt for all interest, payments, proceeds and other sums and property now or hereafter payable on or on account of the Collateral;

(b) Execute in the Debtor's name and file any financing statements and other

documents necessary to perfect and maintain the security interest granted herein;

(c) Enter into any extension, reorganization, deposit, merger, consolidation or other agreement pertaining to, or deposit, surrender, accept, hold or apply other property in exchange for, the Collateral;

(d) Process and preserve the Collateral;

(e) Transfer the Collateral to its own or its nominee's name;

(f) Make any compromise or settlement, and take any action it deems advisable, with respect to the Collateral;

(g) To receive, open, and dispose of all mail addressed to Debtor and relating to the Collateral and to notify postal authorities to change the address for delivery of mail to such address as Secured Party may designate; and

(h) Execute invoices, proofs of claim in bankruptcy of account debtors, and mechanic's lien notices and claims.

Debtor agrees that the original or a copy of this Agreement may be filed as a financing statement; provided, however, that the amount of the debt is redacted. Debtor further agrees that such care as Secured Party gives to the safekeeping of its own property of like kind shall constitute reasonable care of the Collateral when in Secured Party's possession; provided, however, that Secured Party shall not be required to make any presentment, demand or protest, or give any notice and need not take any action to preserve any rights against any prior party or any other person in connection with the Obligations or with respect to the Collateral.

SECTION 6. Default and Remedies. Debtor shall be deemed in default under this Agreement upon the occurrence of one or more of the following described events which, if curable, remains uncured by Debtor for thirty (30) days after written notice thereof from Secured Party ("Event of Default") and upon the occurrence of an uncured Event of Default, Secured Party shall have the right, exercisable by written notice to Debtor, to accelerate and declare all Obligations immediately due and payable and to exercise all rights and remedies of Secured Party under this Agreement:

(a) Failure by the Debtor to perform any of the Obligations;

(b) Failure by the Debtor to keep or perform any of the terms or provisions of this Agreement;

(c) The occurrence of a default under the Note; or

(d) Breach of any representation or warranty contained in this Agreement or the Note.

Upon the occurrence and during the continuance of an Event of Default, Secured Party shall have, in any jurisdiction where enforcement hereof is sought, in addition to all other rights and remedies that Secured Party may have under applicable law or in equity or under this Agreement or under the Note, all rights and remedies of a secured party under the Uniform Commercial Code as enacted in any jurisdiction, and, in addition, the following rights and remedies, all of which are cumulative and may be exercised with or without notice to Debtor (except as required under California Uniform Commercial Code section 9504) and without affecting the obligations of Debtor hereunder or under the Note, or the enforceability of the security interests created hereby:

(i) To foreclose the liens and security interests created hereunder or under any other agreement relating to any Collateral by sale of the Collateral in the manner prescribed by the California Uniform Commercial Code (to the extent consistent with this Agreement);

(ii) To enter any premises where any Collateral may be located for the purpose of securing, protecting, inventorying, appraising, inspecting, repairing, completing, preserving, storing, preparing, processing, taking possession of or removing the same;

(iii) To sell, assign, lease or otherwise dispose of any Collateral or any part thereof, either at public or private sale or at any broker's board, in lot or in bulk, for cash, on credit or otherwise, with or without representations or warranties and upon such terms as shall be acceptable to Secured Party;

(iv) To notify obligors on the Collateral that the Collateral has been assigned to Secured Party and that all payments thereon are to be made directly and exclusively to Secured Party;

(v) To collect by legal proceedings or otherwise all interest, principal or other sums now or hereafter payable upon or on account of the Collateral;

(vi) To enter into any extension or other agreement relating to or affecting the Collateral, and in connection therewith Secured Party may deposit or surrender control of the Collateral and/or accept other property in exchange for the Collateral;

(vii) To settle, compromise or release, on terms acceptable to Secured Party in the exercise of its sold discretion, in whole or in part, any amounts owing on the Collateral and/or any disputes with respect thereto;

(viii) To extend the time of payment, make allowances and adjustments and issue credits in connection with the Collateral in the name of Secured Party or in the name of Debtor;

(ix) To enforce payment and prosecute any action or proceeding with respect to any or all of the Collateral and take or bring, in the name of Secured Party or in the name of

Debtor, any and all steps, actions, suits or proceedings deemed by Secured Party necessary or desirable to effect collection of or to realize upon the Collateral, including, without limitation, any judicial or nonjudicial foreclosure thereof or thereon, and Debtor specifically consents to any nonjudicial foreclosure of any or all of the Collateral or any other action taken by Secured Party which may release any obligor from personal liability on any of the Collateral; and any money or other property received by Secured Party in exchange for or on account of the Collateral, whether representing collections or proceeds of Collateral, and whether resulting from voluntary payments or foreclosure proceedings or other legal action taken by Secured Party or Debtor may be applied by Secured Party without notice to Debtor to the Secured Obligations in such order and manner as Secured Party in its sole discretion shall determine;

(x) To insure, process and preserve the Collateral;

(xi) To exercise all rights, remedies, powers or privileges provided under the Note;

(xii) To remove, from the premises where the same may be located, the Collateral and any and all documents, instruments, files and records, and any receptacles and cabinets containing the same, relating to the Collateral, and Secured Party may, at the cost and expense of Debtor, use such of its supplies, equipment, facilities and space at such premises as may be necessary or appropriate to properly administer, process, store, control, prepare for sale or disposition and/or sell or dispose of the portion of the Collateral owned by Debtor or to properly administer and control the handling of collections and realizations thereon, and Secured Party shall be deemed to have a rent-free tenancy of any such premises of Debtor for such purposes and for such periods of time as reasonably required by Secured Party;

(xiii) To exercise all other rights, powers, privileges and remedies of an owner of the Collateral; all at Secured Party's sole option and as Secured Party in its sole discretion may deem advisable; and

(xiv) To require Debtor to assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party.

Upon the occurrence and during the continuance of an Event of Default, Secured Party also shall have the right, without notice or demand, either in person, by agent or by a receiver to be appointed by a court (and Debtor hereby expressly consents upon the occurrence and during the continuance of an Event of Default to the appointment of such a receiver), and without regard to the adequacy of any security for the Obligations, to take possession of the Collateral or any part thereof and to collect and receive the rents, issues, profits, income and proceeds thereof. Taking possession of the Collateral shall not cure or waive any Event of Default or notice thereof or invalidate any act done pursuant to such notice. The rights, remedies and powers of any receiver appointed by a court shall be as ordered by said court.

Any public or private sale or other disposition of the Collateral may be held at the premises where such Collateral is located or at any other place permitted by applicable law, and

without the necessity of the Collateral's being within the view of prospective purchasers. Secured Party may direct the order and manner of sale of the Collateral, or portions thereof, as it in its sole and absolute discretion may determine, and Debtor expressly waives any right to direct the order and manner of sale of any Collateral. Secured Party or any person on Secured Party's behalf may bid and purchase at any public sale or other disposition pursuant to applicable laws. Subject to applicable law, Debtor and any other person or entity then obligated therefor shall pay to Secured Party on demand any deficiency with regard thereto which may remain after such sale, disposition, collection or liquidation of the Collateral.

Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Secured Party will send or otherwise make available to Debtor reasonable notice of the time and place of any public sale thereof or of the time on or after which any private sale thereof is to be made. The requirement of sending reasonable notice conclusively shall be met if such notice is mailed, first class mail, postage prepaid, to Debtor at its address set forth in Section 14 below, or delivered or otherwise sent to Debtor, at least five (5) days before the date of the sale.

The net cash proceeds resulting from the collection, liquidation, sale, lease or other disposition of the Collateral shall be applied first to the expenses (including reasonable attorneys' fees and costs) or retaking, holding, storing, processing, completing and preparing for sale, selling, collecting, liquidating, and the like and then to the satisfaction of all Obligations. Such proceeds shall be applied to particular obligations and indebtedness, or against principal and interest, in Secured Party's sole discretion.

Upon consummation of any sale of Collateral hereunder, Secured Party shall have the right to assign, transfer and deliver to the purchaser or purchasers thereof the Collateral so sold. Each such purchaser at any such sale shall hold the Collateral so sold absolutely free from any claim or right upon the part of Debtor or any other person, and Debtor hereby waives all rights of redemption, stay, and appraisal which it now has, or may at any time in the future have, under any rule of law or statute now existing or hereafter enacted. If the sale of all or any part of the Collateral is made on credit or for future delivery, Secured Party shall not be required to apply any portion of the sale price to the Obligations until such amount actually is received by Secured Party, and any Collateral so sold may be retained by Secured Party until the sale price is paid in full by the purchaser or purchasers thereof. Secured Party shall not incur any liability in case any such purchaser or purchasers shall fail to pay for the Collateral so sold, and, in case of any such failure, the Collateral may be sold again.

SECTION 7. Cumulative Rights. The rights, powers and remedies of Secured Party under this Agreement shall be in addition to all rights, powers and remedies given to Secured Party by virtue of any statute or rule of law, the Note or any other agreement between Debtor and Secured Party, all of which rights, powers and remedies shall be cumulative and may be exercised successively or concurrently without impairing Secured Party's security interest in the Collateral.

SECTION 8. Waiver. Any forbearance, failure or delay by Secured Party in exercising

any right, power or remedy shall not preclude the further exercise thereof, and every right, power or remedy of Secured Party shall continue in full force and effect until such right, power or remedy is specifically waived in a writing executed by Secured Party. Debtor waives any right to require Secured Party:

(a) To proceed against any person, firm or corporation;

(b) To exhaust any Collateral it may hold at any time;

(c) To apply any Collateral in any order;

(d) To pursue any other remedy whatsoever in Secured Party's power; or

(e) To obtain any bond under claim and delivery proceedings or retain possession of and not dispose of any Collateral taken under claim and delivery proceedings until after trial or final judgment.

Debtor further waives, to the full extent permitted by law, all rights to notice or a judicial hearing prior to the time Secured Party takes possession or disposes of the Collateral upon default as provided in Section 6 hereof.

SECTION 9. Setoff. Debtor agrees that Secured Party may exercise its rights of setoff with respect to the Obligations in the same manner as if the Obligations were unsecured.

SECTION 10. Binding Upon Successors. All rights of Secured Party under this Agreement shall inure to the benefit of its successors and assigns, and all obligations of Debtor shall bind its heirs, executors, administrators, successors and assigns.

SECTION 11. Entire Agreement; Severability; Days. This Agreement and the Note constitute a final written expression of all of the terms of the agreement between Secured Party and Debtor regarding the subject matter of this Agreement and the Note, are a complete and exclusive statement of those terms, and supersedes all prior and contemporaneous agreements, understandings and representations between the parties. If any of the provisions of this Agreement shall be held invalid or unenforceable, this Agreement shall be construed as if not containing those provisions and the rights and obligations of the parties hereto shall be construed and enforced accordingly. For purposes of this Agreement, all references to "days" shall be to calendar days.

SECTION 12. Choice of Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California, without giving effect to such state's principles of conflict of laws, and, where applicable and except as otherwise defined herein, terms used herein shall have the meanings given them in the California Commercial Code.

SECTION 13. Expenses. Debtor shall pay to Secured Party the amount of all reasonable by Secured Party under and pursuant to this Agreement, or any other agreement

contemplated hereby, or in connection with any transaction contemplated by this Agreement, or any other agreement contemplated hereby, or with respect to the Collateral or the defense or enforcement of Secured Party's interests (whether or not Secured Party files a lawsuit against Debtor) if Secured Party retains counsel, or incurs costs in order to: obtain legal advice, enforce or seek to enforce any of its rights; commence, intervene in, respond to, or defend any action or proceeding; file or prosecute a claim in any action or proceeding (including, without limitation, any probate claim, bankruptcy claim, third party claim, secured creditor claim, or reclamation complaint); protect, obtain possession of, lease, dispose or, or otherwise enforce any security interest or lien on the Collateral; or represent Secured Party in any litigation with respect to Debtor's affairs if such representation is necessary to protect Secured Party's interests solely as a secured party and not as a member of Debtor. If either Secured Party or Debtor files any lawsuit against the other predicated on a breach of this Agreement, the prevailing party in such action shall be entitled to recover its reasonable attorneys' fees and costs. All attorneys' fees and costs to which Secured Party may be entitled pursuant to this paragraph shall immediately become secured by the lien of this Agreement.

Notwithstanding the foregoing, Secured Party and Debtor shall each bear their own attorneys' fees and costs incurred in connection with the preparation, review, negotiation and/or execution of this Agreement and the Note.

SECTION 14. Notice. All notices, consents or other communications provided for in this Agreement or otherwise required by law shall be in writing and may be given to or made upon the respective parties hereto at the following addresses:

Debtor: Kazi Foods, Inc. located at:
3671 Sunswept Drive
Studio City, CA 91604

Secured Party: SBK Holdings USA, Inc.
c/o Pillar Law Group APLC,
150 S. Rodeo Dr. Suite 260
Beverly Hills, CA 90212

Such addresses and facsimile numbers may be changed by notice given as provided herein. Notices shall be effective upon the date of receipt, provided that notices (other than a notice of a change of address) sent by certified or registered U.S. mail, with postage prepaid, shall be presumed received no later than three (3) business days following the date of sending.

SECTION 15. Amendment. This Agreement may not be modified except in a writing signed by Secured Party and Debtor. This Agreement may not be modified by an oral agreement, even if supported by new consideration.

SECTION 16. Termination and Release of Collateral. Secured Party shall be under no

obligation to return any collateral, terminate any financing statement or otherwise release the security interest granted hereunder unless and until Debtor, if requested by Secured Party, has delivered a general release to Secured Party with respect to any and all claims involving or otherwise related to this Agreement or the Obligations.

SECTION 17. Waiver of Jury Trial. **DEBTOR AND SECURED PARTY EACH HEREBY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, ARISING OUT OF, OR IN ANY WAY RELATING TO (I) THIS AGREEMENT, (ii) THE NOTE, (ii) ANY OTHER PRESENT OR FUTURE INSTRUMENT OR AGREEMENT BETWEEN DEBTOR AND SECURED PARTY REGARDING THE SUBJECT MATTER HEREOF, (iv) ANY CONDUCT, ACTS OR OMISSIONS OF SECURED PARTY OR DEBTOR OR ANY OF THEIR RESPECTIVE DIRECTORS, OFFICERS, EMPLOYEES, AGENTS, ATTORNEYS OR ANY OTHER PERSONS AFFILIATED WITH SECURED PARTY OR DEBTOR, IN EACH CASE ARISING OUT OF THE SUBJECT MATTER HEREOF; IN EACH OF THE FOREGOING CASES, WHETHER SOUNDING IN CONTRACT OR TORT OR OTHERWISE.**

THIS AGREEMENT is executed in Los Angeles, California as of the day first above written.

**Kazi Foods, Inc**

DEBTOR: By: ______________

Zubair Kazi
Title: President

Date: February 2, 2015

**SBK HOLDINGS USA, INC.**

SECURED PARTY: ______________

NAME:
TITLE:

February 2, 2015





WASH-0373115-105