IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

JACOB ORTELL KINGSTON,
ISAIAH ELDEN KINGSTON,
RACHEL ANN KINGSTON,
SALLY LOUISE KINGSTON, and
LEV ASLAN DERMEN,

Defendants.

Case No. 2:18-cr-00365-JNP

**PETITIONER ZUBAIR KAZI'S POST-FORFEITURE HEARING BRIEF**

Third-Party Petitioner ZUBAIR KAZI ("Petitioner"), through his counsel, respectfully submits this brief following the forfeiture hearing that took place on September 9, 2026. On or about June 18, 2026, Petitioner paid the Government $4 million. Petitioner respectfully submits that considering evidence produced at the hearing, the totality of the circumstances, and the interests of justice, Petitioner should pay the Government approximately $5,345,603.71 more within six months of the Court's order, for a total of approximately $9,345,603.71.

**PRELIMINARY STATEMENT**

1. On or about August 1, 2018, the United States Government asked the grand jury to return an indictment against Defendant Lev Aslan Dermen ("Dermen") (Dkt. #1, **Exhibit N**) [1] that alleges at paragraph 21 that "[o]n or about February 4, 2015, [Dermen] executed and caused

[1] Exhibits referenced herein are purposefully out of order. Petitioner has previously submitted these exhibits to the Court at **Dkt.# 1848-1** and is maintaining prior markings to avoid confusion.

[Petitioner] to execute, a **promissory note** for $12,000,000 to document the loan [of $11,226,211] to [Petitioner], which made the loan payable to SBK Holdings USA, Inc. instead of Washakie, the source of the loan ... **disguis[ing] the criminally derived proceeds** …" (emphasis added). Petitioner asserts that the Promissory Note (**Exhibit E**) is an instrumentality of the crime for which Dermen was convicted and therefore is not the correct starting point for an analysis of the amount that the Petitioner should forfeit to the Government. Because the Promissory Note was employed to disguise the criminally derived proceeds, it is purposely deficient in that it reflects the incorrect parties, an incorrect principal, and an incorrect interest rate – just as Dermen intended.

2. Contrary to the position that the Government now maintains regarding the total amount that should be forfeited by the Petitioner, at trial on February 25, 2020, the Government elicited testimony from Petitioner (then a Government witness) that the loan was for $11.2 million, not $12 million, and that Dermen strong-armed Petitioner into signing the Promissory Note to release liens that Dermen placed on his properties. **Exhibit Q** at 105-111, Petitioner's Testimony Transcript of February 25, 2020 ("Agree to this and I will make sure your properties are released."). During the forfeiture hearing, the Court observed that "in order to perpetrate his money laundering scheme, [Dermen] was engaged in a shakedown of Mr. Kazi." Transcript at page 20.

3. Years later, notwithstanding the fact that the Promissory Note was an instrument of Dermen's crimes (*see* Exhibit N, Counts 10 thru 12 [Money Laundering]) and the fact that Dermen forced Petitioner to enter the agreement under duress (*see* **Exhibit I**),[2] the Government aggressively advocates for enforcement of the Note's fraudulent terms.

---

[2] "[W]e believe that Mr. Kazi may have been the subject of a form of physical intimidation by Termendzhayan. Termendzhayan is known to law enforcement to be a leader of an Armenian organized crime group which employs such tactics to perpetuate its ongoing criminal activities."

4. Simply stated, the Government's position here is inconsistent and an unjust overreach targeting a key witness in the trial leading to Dermen's conviction, and the Court should reject it.

## THE KAZI LOAN

5. On or about June 20, 2013, Petitioner was compelled by court order to pay $11,226,211.21 to G.E. Capital, within 24 hours in full satisfaction of a judgment, or alternativity, transfer company stock in satisfaction of the G.E. Capital judgment. Petitioner did not have $11,226,211.21. Consequently, Petitioner arranged for his former friend, Dermen, to transfer $11,226,211.21 to Petitioner's counsel in that matter to be paid directly to the judgment lienholder.[3]

6. Dermen directed the $11,226,211.21 transfer to go through Washakie Renewable Energy LLC ("Washakie"). Petitioner believed Washakie to be controlled by Defendant Jacob Kingston ("Kingston"), whom Petitioner knew to be Dermen's de facto business partner.

7. On or about June 21, 2013, Washakie wired $11,226,211.21 to Petitioner's counsel in that matter (**Exhibit K**) to be conveyed to G.E. Capital in full satisfaction of the judgment.[4] At the time of the Kazi Loan, no formal loan document was created, but Petitioner acknowledges that the $11,226,211.21 was intended to be a loan.

---

[3] Petitioner had previously personally guaranteed a loan originally offered by Citicorp Leasing but later succeeded by G.E. Capital. G.E. Capital sued to enforce the personal guarantee and on June 20, 2013, Petitioner was required to pay $11,226,211.21 or surrender stock.

[4] Petitioner did not know that the $11,226,211.21 was sourced by Washakie via ill-gotten gains, and clearly the Government agrees or Petitioner would have been a codefendant.

**THE PROMISSORY NOTE**

8. Shortly after the Kazi Loan, Kingston demanded that Petitioner provide collateral. Accordingly, to secure the Kazi Loan, Washakie and Lion's Aviation LLC ("Lion's"), a company Petitioner understood Dermen to control, placed liens on nine of Petitioner's real estate assets.

9. When Petitioner later asked Dermen to direct Washakie and Lion's to release the liens so that he could sell some of these nine properties, Dermen required Petitioner to agree to open a joint bank account that allowed Dermen to control the deposits as security for the balance due. Petitioner and Dermen opened a joint account (account ending 3140) with Bank of America on or about August 27, 2013. In October 2013, Petitioner deposited $2 million into account ending 3140 at Dermen's insistence. *See* **Exhibit B**.

10. Washakie and Lion's never released the liens placed on Petitioner's nine properties and, in fact, in or about August 2014, Washakie and Lion's attempted to foreclose on those liens. In response, on August 15, 2014, Petitioner filed a lawsuit against, among other defendants, Washakie and Lion's to prevent foreclosure, in part, because Petitioner's family lived in one of these properties.

11. This litigation settled via a Confidential Settlement and General Release Agreement (**Exhibit D**, "Agreement") in February 2015. The Agreement required that Washakie and Lion's release the nine subject liens in exchange for a Promissory Note from Kazi Foods Inc. to SBK Holdings USA that would serve as substitute collateral, replacing the real property liens that previously secured the loan. The Promissory Note was dated February 2, 2015, and executed February 4, 2015 (**Exhibit E**). Notwithstanding the fact that the original amount of the Kazi Loan was $11,226,211.21, and Petitioner already made a $1 million payment in June 2014 (*see* ¶18, *infra*), the Promissory Note inexplicably reflected a principal balance of $12 million.

12. Notably, the Promissory Note identifies the Borrower as "Kazi Foods, Inc."– not Petitioner Zubair Kazi - because the Promissory Note was an instrument of Dermen's money laundering.

13. Disturbingly, the Government has been attempting to enforce the Promissory Note knowing it is an instrument of Dermen's money laundering scheme. In attempting to enforce the Note, the Government here seeks the corpus, namely, the "Kazi loan receivable," plus approximately $750,000 to $800,000 in proceeds from Dermen's laundering scheme. At the hearing, the Government attempted to justify the approximately $750,000 to $800,000 increase as accrued interest on the original principal of the Kazi Loan, but as testimony during the hearing revealed, the Government's wishful calculations are based upon pure speculation – there is no testimony to support the Government's logic. *See* hearing Transcript at page 81. The Court should not allow it.

**PETITIONER RECEIVED NOTICE OF THE GOVERNMENT'S INTENT TO COLLECT THE "KAZI LOAN RECEIVABLE" – NOT THE NOTE**

14. On or about April 6, 2023, Petitioner received a Notice of Order of Forfeiture & Rights in the matter of *United States v. Jacob Ortell Kingston, et al.*, Case No. 2:18-cr-00365-JNP (**Exhibit A**), which purportedly put him on notice of his right to claim an interest in the "'Kazi loan receivable' identified as the outstanding amount of principal and interest due on June 21, 2013, loan to Zubair Kazi in the amount of $11,226,211.21."

15. In the body of the email (**Exhibit M**) that attached the Notice of Order of Forfeiture & Rights, Asset Forfeiture Paralegal Specialist Heather Godfrey wrote, "Our records indicate you are a representative of Zubair Kazi, who may have an interest in the following asset listed in our order of forfeiture: 'Kazi loan receivable' identified as the outstanding amount of principal and

interest due on June 21, 2013, loan to Zubair Kazi in the amount of $11,226,211.21." Tellingly, Ms. Godfrey's email made no reference to the Promissory Note as the subject asset.

16. Approximately two weeks later, on April 19, 2023, AUSA Travis Elder sent an email to Petitioner's counsel (**Exhibit L**) stating, "It appears that *only* [sic] potential property interest of Mr. Kazi that I am aware of is the following asset: O. 'Kazi loan receivable' identified as the outstanding amount of principal and interest due on June 21, 2013, loan to Zubair Kazi in the amount of $11,226,211.21." (emphasis added). Like Ms. Godfrey, AUSA Elder made no reference to the Promissory Note.

17. Nevertheless, out of greed and vindictiveness, and after Petitioner filed his petition, the Government has been asserting that the Promissory Note should now be deemed the subject asset, and the corpus here is $12 million, not the $11,226,211.21 of "Kazi loan receivable" of which the Government originally provided notice. The Court should not allow it.

**PETITIONER PAID $3,300,000 PRIOR TO JULY 14, 2016**

18. On or about June 4, 2014, Dermen withdrew $1 million from account ending 3140. *See* **Exhibit C**

19. On or before, February 20, 2015, Petitioner, via Kazi Foods, made an initial payment of $210,000 (i.e., the Payable Sum plus $70,000) pursuant to the terms of the Agreement. **Exhibit F.**

20. On or about April 23, 2015, Dermen withdrew another $1 million from account ending 3140 (*see* **Exhibit G**). So, in less than one year, Dermen withdrew the same $2 million from the account ending 3140 that Dermen insisted that the Petitioner deposit in October 2013 (*see* ¶9, *infra*). These withdrawals were not contemplated by the Agreement or Promissory Note. Logically, if they were considered by the Agreement or Promissory Note, the principal amount of

the Promissory Note should have been no more than $10 million, not $12 million as maintained by the Government.

21. Petitioner made other payments as shown in **Government Exhibit 3-28.** In total, Petitioner and Kazi Foods paid Dermen $3,330,000.00 on or before July 14, 2016. This sum includes Dermen's two $1 million withdrawals of June 4, 2014, and April 23, 2015, respectively.

22. The Government has previously acknowledged that Petitioner has repaid more than $3 million of the Kazi Loan in the Santiago Garcia Gutierrez indictment (**Exhibit O, ¶** 20). And during the Dermen trial, the Government elicited testimony from Petitioner that he repaid "3.3 million" "on this $11.2 million [loan.]" Indeed, in inquiring about the balance remaining, AUSA Ewenczyk asked, "Did you still owe about $8 million?" and Petitioner responded, "Approximately." **Exhibit R**.

23. It seems as though when the Government needed Petitioner to be a cooperating witness, (in both the case against Dermen and in the prosecution of Garcia Gutierrez) he owed approximately $8 million in principal, but now that he is no longer useful to the Government and has filed a petition, he owes substantially more. *See* **GE 3.** The Government's conduct here is unjust.

**INTEREST RATE**

24. On February 25, 2020, Petitioner testified that he and Dermen verbally agreed to an interest rate of 3 or 4%, and that no interest would accrue until after the G.E. settlement referenced above. **Exhibit S** at 184-85. Accordingly, Petitioner submits that the applicable interest rate here should be what Petitioner testified to under oath during the Dermen trial, ( 3% or 4%) not the 7% rate that Dermen embedded in the phony Promissory Note, which is now being requested by the Government.

**PETITIONERS OFFER IN COMPROMISE**

25. As set forth herein, the Promissory Note was employed by Dermen to further disguise the proceeds of his criminal activities. The illegitimate nature of the Promissory Note is further underscored by the inflated principal amount, the identity of the borrower, and an interest rate to which the Petitioner testified at trial he did not agree - he felt coerced into signing the Note.

26. During the hearing, the Government could not adequately explain why the principal amount of the Promissory Note was $12 million. Special Agent Washburn testified that the $12 million represented the original Kazi Loan amount of $11,226,211.21 plus extrapolated interest of roughly $750,000 to $800,000. No evidence was offered at the hearing to support the extrapolated interest calculation, but more importantly, the Government's reliance on $12 million being the principal amount owed ignores that Dermen withdrew $1 million months *before* the Promissory Note and another $1 million shortly *after* the date of the Promissory Note.

27. The Government attempted to reconcile the payment of $2 million in its presentation to the Court but this reconciliation does not cure the phony nature of the Promissory Note that arbitrarily claimed the principal was $12 million on top of which the Government also seeks interest.

28. The correct starting principal amount cannot be any more than the crime proceeds that Dermen sent to the Petitioner in 2013, to wit $11,226,211.21, but the $2 million swept by Dermen from the joint account should be deducted from the Kazi Loan amount, leaving a balance due of $9,226,221.21.

29. The Government, at the hearing, conceded that it was seeking interest for only the five-year period between February 2015 and December 2019, when, during the hearing, the Government asserted that it is "not asking for any additional interest to be applied since December

15th, 2019 …" Transcript at page 76. Nonetheless, Petitioner challenges the 7% interest rate embedded in the Promissory Note, which was an instrumentality of the crime.

30. Exhibit 1, attached hereto, is Petitioner's recommended calculation, which incorporates the payments reflected on Government Exhibit, 3-28 but is based on the starting principal amount of $11,226,211.21. Exhibit 1 also accounts for the impact of the two $1 million payments, and applies a 3.5% interest rate - the middle value of what Petitioner testified to at trial when he indicated what he thought the interest rate was on the Kazi Loan, and accepts the interest calculation period proposed by the Government at the hearing (see paragraph 29 above).

31. Petitioner has always asserted that he owed $11,226,221.21, but has always contested the terms of the Promissory Note. In an effort to propose a reasonable and just resolution, which is consistent with the totality of the record of this case, the Petitioner offers to pay interest of 3.5% on the outstanding balance of the Kazi Loan while accounting for the two $1 million withdrawals from February 2015 through December 2019.

32. The attached calculation results in a total of due of $9,345,603.71. As state above, Petitioner already paid $4 in June 2026.

33. WHEREFORE, Petitioner respectfully recommends that the Court order an additional payment of $5,345,603.71 within six months to allow Petitioner sufficient time to liquidate assets to satisfy the Court's Order.

Executed this 5th day
of October 2026.

Respectfully submitted,

DENNIS C. VACCO